# EXHIBIT  2

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**DECEMBER 2024**   **02765**

E-Filing Number: 2412051470

| | |
|---|---|
| **PLAINTIFF'S NAME**<br>JAMES SULLIVAN JR. | **DEFENDANT'S NAME**<br>META PLATFORMS, INC., ALIAS: F/K/A FACEBOOK, INC. |
| **PLAINTIFF'S ADDRESS**<br>619 EDGLEY AVENUE<br>GLENSIDE PA 19038 | **DEFENDANT'S ADDRESS**<br>1 HACKER WAY<br>MENLO PARK CA 94025 |
| **PLAINTIFF'S NAME**<br>ESTATE OF JOHN MICHAEL SULLIVAN | **DEFENDANT'S NAME**<br>FACEBOOK HOLDINGS, LLC |
| **PLAINTIFF'S ADDRESS**<br>619 EDGLEY AVENUE<br>GLENSIDE PA 19038 | **DEFENDANT'S ADDRESS**<br>1 HACKER WAY<br>MENLO PARK CA 94025 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>FACEBOOK OPERATIONS, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>1 HACKER WAY<br>MENLO PARK CA 94025 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 20 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal<br>[ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

**CASE TYPE AND CODE**
2P - PRODUCT LIABILITY

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES** (LIST BY CASE CAPTION AND DOCKET NUMBER)

FILED
PRO PROTHY
DEC 23 2024
L. BREWINGTON

IS CASE SUBJECT TO COORDINATION ORDER?   YES   NO

**TO THE PROTHONOTARY:**
Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: JAMES SULLIVAN JR., ESTATE OF JOHN MICHAEL SULLIVAN
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>KEVIN PATRICK. OBRIEN | ADDRESS<br>500 COTTMAN AVE.<br>CHELTENHAM PA 19012 |
|---|---|
| PHONE NUMBER<br>(215)663-0400 | FAX NUMBER<br>(215)663-9112 | |
| SUPREME COURT IDENTIFICATION NO.<br>313081 | E-MAIL ADDRESS<br>kobrien@stamponelaw.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*KEVIN OBRIEN* | DATE SUBMITTED<br>Monday, December 23, 2024, 03:17 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**STAMPONE O'BRIEN DILSHEIMER LAW**
BY: Kevin P. O'Brien, Esquire
ID No.: 313081
BY: Tyler Stampone, Esquire
ID No.: 324400
500 Cottman Avenue
Cheltenham, PA 19012
(215)663-0400



Filed and Attested by the
Office of Judicial Records
23 ... pm

**DICELLO LEVITT**
BY:    Diandra Debrosse, Esquire *(pro hac vice forthcoming)*
       Eli Hare, Esquire *(pro hac vice forthcoming)*
       Grant Patterson, Esquire *(pro hac vice forthcoming)*
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
*Attorneys for Plaintiff*

THIS IS A MAJOR JURY MATTER

---

James Sullivan, Jr. Administrator
of the Estate of John Michael Sullivan
619 Edgley Avenue
Glenside, PA 19038

vs.

META PLATFORMS, INC. f/k/a
FACEBOOK, INC.
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK HOLDINGS, LLC
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK OPERATIONS, LLC
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK PAYMENTS, INC.
1 Hacker Way
Menlo Park, California 94025

AND

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

DECEMBER TERM, 2024

NO.:

Case ID: 241202765

FACEBOOK TECHNOLOGIES, LLC
1 Hacker Way
Menlo Park, California 94025

AND

INSTGRAM, LLC
1 Hacker Way
Menlo Park, California 94025

AND

SNAP, INC.
2772 Donald Douglass Loop North
Santa Monica, CA 90405

AND

JOHN DOE INC. 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN DOE CORP 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

SOUTHEASTERN PENNSYLVANIA
TRANSIT AUTHORITY A/K/A
SEPTA
1234 Market Street
Philadelphia, PA, 19107

AND

ROBERT MILSON
1234 Market Street
Philadelphia, PA, 19107

AND

BRYNER CHEVROLET, INC. d/b/a
BRYNER CHEVROLET
1750 The Fairway
Jenkintown, PA 19046

Case ID: 241202765

AND

DBP PARTNERS, LP
1750 The Fairway
Jenkintown, PA 19046

AND

DB Pete, Inc.,
1750 The Fairway
Jenkintown, PA 19046

AND

JOHN DOE, INC., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN KENNEDY FORD OF JENKINTOWN
1650 The Fairway
Jenkintown, PA 19046

AND

HOPKINS FORD, INC.,
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES, LP
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES
MANAGEMENT, LLC
620 Bustleton Pike
Feasterville Trevose, PA 19053

AND

JOHN DOE CORP., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

## PLAINTIFF'S COMPLAINT IN A CIVIL ACTION

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance person-ally or by attorney and filing in writing with the court your defense objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, PA  19107
(215) 238-1701

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea a visado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede pere dinero o sus propiedades u otros derechos importantes para usted.

Lleva esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion de Licenciados
de Filadelfia
Servicio de Referencia e
Informacion Legal
One Reading Center
Filadelfia, PA  19107
(215) 238-1701

Case ID: 241202765

**STAMPONE O'BRIEN DILSHEIMER LAW**
BY: Kevin P. O'Brien, Esquire
ID No.: 313081
BY: Tyler Stampone, Esquire
ID No.: 324400
500 Cottman Avenue
Cheltenham, PA 19012
(215)663-0400

**DICELLO LEVITT**
BY:    Diandra Debrosse, Esquire *(pro hac vice forthcoming)*
       Eli Hare, Esquire *(pro hac vice forthcoming)*
       Grant Patterson, Esquire *(pro hac vice forthcoming)*
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
*Attorneys for Plaintiff*                                THIS IS A MAJOR JURY MATTER

---

| | |
|---|---|
| James Sullivan, Jr. Administrator of the Estate of John Michael Sullivan 619 Edgley Avenue Glenside, PA 19038 | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| vs. | |
| META PLATFORMS, INC. f/k/a FACEBOOK, INC. 1 Hacker Way Menlo Park, California 94025 | DECEMBER TERM, 2024 |
| AND | NO.: |
| FACEBOOK HOLDINGS, LLC 1 Hacker Way Menlo Park, California 94025 | |

AND

FACEBOOK OPERATIONS, LLC
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK PAYMENTS, INC.
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK TECHNOLOGIES, LLC
1 Hacker Way
Menlo Park, California 94025

AND

INSTGRAM, LLC
1 Hacker Way
Menlo Park, California 94025

AND

SNAP, INC.
2772 Donald Douglass Loop North
Santa Monica, CA 90405

AND

JOHN DOE INC. 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN DOE CORP 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

SOUTHEASTERN PENNSYLVANIA
TRANSIT AUTHORITY A/K/A
SEPTA
1234 Market Street
Philadelphia, PA, 19107

AND

ROBERT MILSON
1234 Market Street
Philadelphia, PA, 19107

AND

BRYNER CHEVROLET, INC. d/b/a
BRYNER CHEVROLET

2

1750 The Fairway
Jenkintown, PA 19046

AND

DBP PARTNERS, LP
1750 The Fairway
Jenkintown, PA 19046

AND

DB Pete, Inc.,
1750 The Fairway
Jenkintown, PA 19046

AND

JOHN DOE, INC., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN KENNEDY FORD OF JENKINTOWN
1650 The Fairway
Jenkintown, PA 19046

AND

HOPKINS FORD, INC.,
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES, LP
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES
MANAGEMENT, LLC
620 Bustleton Pike
Feasterville Trevose, PA 19053

AND

3

JOHN DOE CORP., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

## PLAINTIFF'S COMPLAINT IN A CIVIL ACTION

1.      Plaintiff's decedent John Michael Sullivan was an individual and citizen of the Commonwealth of Pennsylvania, who suffered a wrongful death on or about January 4, 2023.

2.      Plaintiff, James Sullivan, Jr., was appointed Administrator of the Estate of John Michael Sullivan on April 10th, 2023.  Said estate has a mailing address of 619 Edgley Ave, Glenside, PA 19038.  A copy of the Letters of Administration are attached hereto as Exhibit "A".

3.      Plaintiffs Kathleen Sullivan and James Sullivan, Jr., are adult individuals with a service address of 619 Edgley Ave, Glenside, PA 19038 and who were at all times relevant hereto the parents and natural guardians of Plaintiff's Decedent John Michael Sullivan.

### THE SOCIAL MEDIA DEFENDANTS

4.      Defendant, Meta Platforms, Inc., f/k/a Facebook, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware licensed to transact business in the Commonwealth of Pennsylvania, with a principal place of business and/or a service address located at 1 Hacker Way, Menlo Park, California.

5.      Defendant, Facebook Holdings, LLC is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

4

Case ID: 241202765

6.      Defendant, Facebook Operations, LLC is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

7.      Defendant, Facebook Technologies, LLC, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

8.      Defendant, Instagram, LLC is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

9.      Defendant, SNAP, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal organized under the laws of the State of Delaware, with a principal place of business and/or a service address located at 2772 Donald Douglass Loop North, Santa Monica, CA 90405.

10.     Defendant, JOHN DOE Inc., 1-5 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity which has not been able to be identified despite significant investigation, but who was in charge of, or had responsibility for overseeing the design, coding, safety, testing, engineering, warnings, of the Social Media Applications Instagram and Facebook and is identified pursuant to Pa. R.C.P. 2005.

11.     Defendant, JOHN DOE Corp 1-5 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity

5

Case ID: 241202765

which has not been able to be identified despite significant investigation, but who was in charge

of, or had responsibility for overseeing the design, coding, safety, testing, engineering, warnings,

of the Social Media Application SnapChat and is identified pursuant to Pa. R.C.P. 2005.

12.    These Defendants may be referred to throughout this Complaint as "The Social

Media Defendants."

## THE SEPTA DEFENDANTS

13.    Defendant, Southeastern Pennsylvania Transit Authority a/k/a SEPTA (and

referred to herein as "SEPTA") is a municipal corporation, political subdivision and/or other

Commonwealth Agency/entity organized and existing under the laws of the Commonwealth of

Pennsylvania, with its principal place of business or address for service located at 1234 Market

Street, Philadelphia, PA 19107.

14.    Defendant Robert Milson, is identified as the engineer and/or operator who was in

control of the movement of the train and who was at all times within the course and scope of his

employment with SEPTA which struck the Plaintiff's Decedent and who has a place of business

or address for service located at 1234 Market Street, Philadelphia, PA 19107.

15.    These Defendants may be referred to herein as the "SEPTA Defendants."

## THE PREMISES LIABILITY DEFENDANTS

16.    Defendant, Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, is a corporation,

partnership, limited partnership, limited liability partnership, limited liability company, fictitious

name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania,

with a principal place of business or a service address located at 1750 The Fairway, Jenkintown,

PA 19046.

17.    Defendant, DBP Partners, LP, is a corporation, partnership, limited partnership,

limited liability partnership, limited liability company, fictitious name and/or other legal entity

6

Case ID: 241202765

organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1750 The Fairway, Jenkintown, PA 19046.

18.    Defendant, DB Pete, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1750 The Fairway, Jenkintown, PA 19046.

19.    Defendant, JOHN DOE Inc., 5-10 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity which has not been able to be identified despite significant investigation, but who was in charge of, or had responsibility for overseeing the management, maintenance, operations, security, cameras and which was otherwise in control of Bryner Chevrolet located at 1750 The Fairway, Jenkintown, PA 19046 and is identified pursuant to Pa. R.C.P. 2005

20.    Defendant, John Kennedy Ford of Jenkintown, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1650 The Fairway, Jenkintown, PA 19046.

21.    Defendant, Hopkins Ford, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1650 The Fairway, Jenkintown, PA 19046.

22.    Defendant, Kennedy Real Estate Associates, L.P., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or

Case ID: 241202765

other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1650 The Fairway, Jenkintown, PA 19046.

23.    Defendant, Kennedy Real Estate Management Associates, LLC, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 620 Bustleton Pike, Feasterville Trevose, PA 19053.

24.    Defendant, JOHN DOE Corp 5-10 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity which has not been able to be identified despite significant investigation, but who was in charge of, or had responsibility for overseeing the management, maintenance, operations, security, cameras and which was otherwise in control of Kennedy Ford located at 1650 The Fairway, Jenkintown, PA 19046 and is identified pursuant to Pa. R.C.P. 2005.

25.    These Defendants may be referred to as the "Premises Liability Defendants."

26.    Venue is proper in Philadelphia County as one or more of the Defendants regularly conduct business in Philadelphia County. In particular, and without limitation to other Defendants, the Social Media Defendants have millions of users in Philadelphia County.

27.    Venue is proper in Philadelphia County as SEPTA is a Commonwealth Party and because the local and principal office of SEPTA is located in Philadelphia County at 1234 Market Street, Philadelphia, PA 19107.

## FACTS COMMON TO ALL COUNTS

28.    Social media applications are products. They are designed, coded, engineered, manufactured, produced, assembled, and placed into the stream of commerce. They were designed to be used or consumed by the public as part of the regular business of social media companies,

8

including the Social Media Defendants. They are mass-marketed, designed to be used by billions of consumers, and designed and advertised in such a way to appeal to the general public and, in particular, adolescents.

29.    Social media apps are akin to tangible products. When installed or used on devices, they have a definite appearance and location and are operated by a series of gestures, clicks, swipes, and user-interface actions. They are both personal, moveable, and downloadable.

30.    According to Tristen Harris, a former Google Design Ethicist, social media product designers maximize capitalizing on user attention by "play[ing] your psychological vulnerabilities (consciously and unconsciously) against you in the race to grab your attention."[1]

31.    Algorithms play a vital role in the race for attention-using machine learning and data science to generate content based on the likelihood that the user will want to see the suggested content.[2]

32.    Social media apps are designed to be addictive. Based upon their design, interactions with the apps can release large amounts of dopamine into a user's brain's reward pathway—much like highly-addictive substances.[3]

---

[1]    Tristan Harris, *How Technology is Hijacking Your Mind – from a Magician and Google Design Ethicist*, MEDIUM (May 18, 2016) https://medium.com/thrive-global/how-technology-hijacks-peoples-minds-from-a-magician-and-google-s-design-ethicist-56d62ef5edf3), https://medium.com/thrive-global/how-technology-hijacks-peoples-minds-from-a-magician-and-google-s-design-ethicist-56d62ef5edf3.

[2]    Brent Barnhart, *Everything you need to know about social media algorithms*, SPROUT SOCIAL (Mar. 26, 2021), https://sproutsocial.com/insights/social-media-algorithms/.

[3]    Jim Zhao, *et al.*, *Risk Factors Associated with Social Media Addiction: An Exploratory Study*, FRONTIERS IN PSYCHOLOGY (Apr. 14, 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9046602/; Bruce Goldman, *Addictive potential of social media, explained*, STANFORD MEDICINE SCOPE (Oct. 29, 2021), https://scopeblog.stanford.edu/2021/10/29/addictive-potential-of-social-media-explained/; Jena Hilliard, *New Study Suggests Excessive Social Media Use Is Comparable to Drug Addiction*, ADDICTION CENTER (Sept. 4, 2019), https://www.addictioncenter.com/news/2019/09/excessive-social-media-use/; Sherri Gordon,

33.    Perhaps most tellingly about the negative effects that social media has on children, tech moguls do not let their children use social media.[4]

34.    Addiction to social media is by design: the more an individual interacts with an app, the more money the social media company makes. This is because each interaction with a user allows more opportunities to monetize that user's interactions to sell advertising access.[5]

35.    The addictive quality of social media usage is further increased when users engage in mental rituals like following certain accounts or posting frequently to stay in touch with friends.[6] social media increasingly replaces physical human interactions, leading to feelings of isolation, loneliness, and fear.[7]

36.    Young people are particularly susceptible to social media addiction than older adults, and young people aged 16 to 25 have the highest rates of social media-related mental illness.[8]

---

*Excessive Social Media Use Comparable to Drug Addiction*, VERYWELLMIND (updated July 17, 2019), https://www.verywellmind.com/excessive-social-media-use-4690882.

[4]    Kristin Conrad, *The Real Reason Tech Moguls Don't Let Their Kids on Social Media*, THE LIST (Dec. 6, 2021, 9:07 AM EST), https://www.thelist.com/677684/the-real-reason-tech-moguls-dont-let-their-kids-on-social-media/.

[5]    Catherine Price, *Trapped—the secret ways social media is built to be addictive (and what you can do to fight back)*, BBC SCIENCE FOCUS MAGAZINE (Oct. 29, 2018), https://www.sciencefocus.com/future-technology/trapped-the-secret-ways-social-media-is-built-to-be-addictive-and-what-you-can-do-to-fight-back/.

[6]    Werner Geyser, *The Real Social Media Addiction Stats for 2023*, INFLUENCER MARKETING HUB (updated Dec. 14, 2022), https://influencermarketinghub.com/social-media-addiction-stats/.

[7]    Alice G. Walton, *Social Media May Make You Feel Socially Isolated: Study*, FORBES (Mar. 6, 2017, 2:06 PM EST), https://www.forbes.com/sites/alicegwalton/2017/03/06/social-media-and-social-isolation-go-hand-in-hand-but-which-comes-first/?sh=23dcc79d1785.

[8]    Michael Simon, *The Alarming Reality of Social Media Addiction Statistics in 2023*, TECHREPORT (May 16, 2023, 3:02 AM), https://techreport.com/statistics/social-media-addiction-statistics/.

Case ID: 241202765

37.    Chris Said, who has a Ph.D. in psychology from Princeton University and who has worked at both Facebook and Twitter, noted that "[s]ocial media was like a nuclear bomb on teen social life . . . . I don't think there's anything in recent memory, or even distant history, that has changed the way teens socialize as much as social media."[9]

38.    Adolescents spend between five to seven hours per day on social media, and roughly half of them believe that they spend "too much time" on social media.[10]

39.    Social media companies, including the Social Media Defendants, know all of this.

40.    In a Harvard Business Review article discussing social media addiction, for example,

> [P]sychologist Nicholas Kardaras explains that the people behind Facebook and Instagram not only designed their platforms to be wildly addictive but have kept them that way even amid mounting evidence that social media overuse has a horrible effect on people's mental and physical well-being. (The same is true for Twitter, YouTube, TikTok, and most other social media.)[11]

41.    Social media companies, including the social media Defendants, specifically designed the platforms to be addictive.

42.    In fact, Facebook's founding president, Sean Parker, "said publicly that the company set out to consume as much user time as possible. He claimed it was 'exploiting a

---

[9]    Michaeleen Doucleff, *The truth about teens, social media and the mental health crisis*, NPR (Apr. 25, 2023, 9:28 AM ET), https://www.npr.org/sections/health-shots/2023/04/25/1171773181/social-media-teens-mental-health.

[10]    Tonya Mosley and Serena McMahon, *Social Media Use Linked to Anxiety, Depression Among Teens, New Study Finds*, WBUR (Jan. 9, 2020), https://www.wbur.org/hereandnow/2020/01/09/social-media-anxiety-depression-teens.

[11]    Kelsey Gripenstraw, *Our Social Media Addiction*, HARVARD BUSINESS REVIEW (Nov.-Dec. 2022), https://hbr.org/2022/11/our-social-media-addiction.

11

vulnerability in human psychology.' 'The inventors,' he said, 'understood this consciously and we did it anyway.'"[12]

43.    And social media apps like Snapchat are known as "ranked among the worst social media for mental health."[13]

44.    Social Media Defendants have known for a long time that their products—not only designed to be addictive—*are* addictive.

45.    Former Facebook employee Sandy Parakilas, for example, described social media as "'very similar to a slot machine,'" after he tried to stop using the service following leaving the company in 2012.[14]    Notably, he said "'[i]t literally felt like I was quitting cigarettes.'"[15] Furthermore,

> [D]uring his year and five months at Facebook, he said, others had also recognized this risk.
>
> "There was definitely an awareness of the fact that the product was habit-forming and addictive," he said.
>
> "You have a business model designed to engage you and get you to basically suck as much time out of your life as possible and then selling that attention to advertisers."[16]

---

[12]    Hilary Andersson, *Social media apps are 'deliberately' addictive to users*, BBC NEWS (July 4, 2018), HTTPS://WWW.BBC.COM/NEWS/TECHNOLOGY-44640959.

[13]    *Snapchat Addiction: The Darkside of a Popular Worldwide App*, SOLSTICE (Oct. 26, 2017), https://solsticertc.com/snapchat-addiction-darkside-popular-worldwide-app/ (stating that "Snapchat ranked among the worst social media for mental health"). *See also* Julie Kelly, *Confronting my daughter's addiction. To Snapchat.*, HUFFINGTON POST (updated Feb. 2, 2017), https://www.huffpost.com/entry/confronting-my-daughters_b_9138986.

[14]    Andersson, *supra* note 88.

[15]    *Id.*

[16]    *Id.*

Case ID: 241202765

46.     The addictive nature of the applications and platforms is especially damaging for teens and young people.  MRI brain studies show that students who use social media more frequently had increased activation points of their brain, "possibly making them more prone to peer feedback and hypersensitivity and possibly leading to changes in impulse control and regulation, according to ABC News chief medical correspondence Dr. Jennifer Ashton."[17]

47.     ***Social media usage's dopamine rush impacts the ventral striatum.***  Between the ages of ten and twelve, changes in the brain make social rewards—compliments on clothing or positive feedback—start to feel more satisfying.  Specifically, receptors for oxytocin and dopamine multiply in a part of the brain called the ventral striatum, making preteens extra sensitive to attention and admiration from others.[18]

48.     Social media provides a mechanism to experience these "social rewards," giving the ventral striatum "a dopamine and oxytocin rush whenever we experience social rewards."[19]  And, "[r]ight next door to the ventral striatum lies the ventral pallidum, a region of the brain key for motivating action.  These structures, which lie beneath the more recently evolved cortex, are older parts of the brain that drive instinctual behaviors."[20]

---

[17]     Haley Yamada and Katie Kindelan, *Social media use linked to brain changes in teens, study finds*, ABC NEWS (Jan. 5, 2023, 10:55 AM), https://digital.abcaudio.com/news/social-media-use-linked-brain-changes-teens-study-finds.

[18]     Zara Abrams, *Why young brains are especially vulnerable to social media*, AMERICAN PSYCHOLOGICAL ASSOCIATION (updated Aug. 25, 2022), https://www.apa.org/news/apa/2022/social-media-children-teens.

[19]     *Id.*

[20]     *Id.*

13

Case ID: 241202765

49.    Teens continue to seek out approval and acceptance via these "social rewards" on social media and, if they do not receive them, become isolated and feel lonelier.[21]

50.    ***Social media usage creates pressure and negative emotions, and can hinder healthy development of the prefrontal cortex.*** Social media platforms often promote a culture of comparison, where teenagers constantly compare themselves to their peers in terms of appearance, achievements, and social status. This continuous exposure to idealized and curated representations of others' lives can lead to feelings of inadequacy, low self-esteem, and increased social anxiety. The prefrontal cortex, involved in self-reflection and emotional regulation, can be impacted by the constant pressure and negative emotions resulting from social comparison, potentially hindering healthy brain development.[22]

51.    ***Social media usage leads to impulsive decision-making and risk-taking behavior.*** The prefrontal cortex is responsible for regulating impulsive behaviors and assessing risks. Social media platforms often encourage instant gratification, impulsive reactions, and seeking novelty. This can contribute to a greater inclination towards impulsive decision-making and risk-taking behavior, as teenagers may engage in potentially harmful activities driven by the desire for social validation or the need to conform to online trends. Such behavior can negatively impact the

---

[21]    Cory Turner, *10 things to know about how social media affects teens' brains*, NPR (Feb. 16, 2023, 12:01 PM ET), https://www.npr.org/2023/02/16/1157180971/10-things-to-know-about-how-social-media-affects-teens-brains; *Written Testimony of Mitch Prinstein, Ph.D., ABPP, Chief Science Officer, American Psychological Association, Protective Our Children Online*, U.S. SENATE COMMITTEE ON JUDICIARY (Feb. 14, 2023), https://www.judiciary.senate.gov/imo/media/doc/2023-02-14%20-%20Testimony%20-%20Prinstein.pdf.

[22]    Michelle Achterberg, *et al.*, *Longitudinal associations between social media use, mental well-being and structural brain development across adolescence*, DEVELOPMENTAL COGNITIVE NEUROSCIENCE (Apr. 2022), https://www.sciencedirect.com/science/article/pii/S1878929322000329?via%3Dihub; Eveline A. Crone and Emily A. Konijn, *Media use and brain development during adolescence*, NATURE COMMUNICATIONS (Feb. 21, 2018), https://www.nature.com/articles/s41467-018-03126-x.

14

development of the frontal cortex, which is responsible for evaluating consequences and exercising self-control.[23]

52.     ***Social media usage reduces face-to-face interactions, retarding the development of social skills.*** Excessive reliance on social media for social interactions can reduce face-to-face interactions, which are crucial for the development of social skills and emotional intelligence. The prefrontal cortex is involved in understanding and navigating social dynamics, including interpreting facial expressions, body language, and non-verbal cues. Reduced face-to-face interactions may limit opportunities for teenagers to develop and refine these social skills, potentially affecting the maturation of the frontal cortex, and possibly leading to the development of narcissistic tendencies.[24]

### The Known Prevalence of Sextortion on the Defendant's Social Media Application Products

53.     The use of the Social Media Defendant's products by criminals and predators to target minors and teenagers is well documented and known. There has never been a larger pool of victims at the fingertips of these predators that through the use of the Defendant's products.

54.     The victims themselves are often addicted and consumed by the product's use, and spend upwards of 8 hours a day on these products which makes them easy targets who are available at all times to be targeted by sexual scammers and extortionists.

---

[23]     *Screen Addiction Affects Physical and Mental Health*, PREMIER HEALTH (May 11, 2023), https://www.premierhealth.com/your-health/articles/health-topics/screen-addiction-affects-physical-and-mental-health.

[24]     Anthony Silard, Ph.D., *The Role of Social Media in Our Empathy Crisis*, PSYCHOLOGY TODAY (July 11, 2022), https://www.psychologytoday.com/us/blog/the-art-living-free/202207/the-role-social-media-in-our-empathy-crisis; Yamila Lezcano LHMC, *How Social Media Affects Mental Health in Adolescents*, PSYCHOLOGY TODAY (Aug. 25, 2021), https://www.psychologytoday.com/us/blog/becoming-resilient/202108/how-social-media-affects-mental-health-in-adolescents.

15

55.     The FBI has warned in reports that "financial sextortion . . . mainly occurs on the digital platforms where children are already spending their screen time, like social med, gaming websites, or video chat applications.  On these platforms, predators often pose as girls of a similar age and use fake accounts to target young boys, deceiving them into sending explicit photos or videos.  The predator then threatens to release the compromising materials unless the victim sends payment."[25]

56.     This is precisely what happened to the Plaintiff's Decedent in the instant case.

57.     Defendants have facilitated and exacerbated the risk of sextortion in the design of their product and its warnings by implementing defective product features that help sexual predators connect with adolescents, teenagers, children, and young people such as the Plaintiff's Decedent, including the lack of meaningful mechanisms to prevent sham accounts (or warn users of the existence of such accounts and scams), default-public profiles, matching and recommending connections between people with no known connection, from high risk areas for criminal activity such as, in this case, Nigeria, and promoting unsolicited messages and interactions from individuals from such areas, or individuals with numerous accounts under the same name, IP address, stock photos, re-used photos and/or images from other numerous other profiles, mass messages from accounts with these characteristics, particularly messages to diverse and far away geographic areas including those which are associated with children, adolescent and young people such as the Plaintiff's Decedent (in this case college campuses), messages from an unconnected

---

[25] International Law Enforcement Agencies Issue Joint Warning about global financial sextortion crisis, FBI (2023), https://www.fbi.gov/news/press-releases/international-law-enforcementagencies-issue-joint-warning-about-global-financial-sextortion-crisis

Case ID: 241202765

account from such high-risk areas, and other features which easily identify the accounts as sham accounts indicative of criminal activity, sextortion at the top of that list.

58.    Further, Defendant's applications do nothing to prevent, or even warn users about the dangers or risks of interacting with these accounts, or the dangers of sending nude pictures to such accounts which are suspicious for fraudulent activity, and provide no (or at least no easily accessible) design or warning mechanism to report such an account after a scam is initiated.

59.    These individuals, criminals, and organizations have used the Social Media Defendants' applications for this very reason – their design which renders them dangerous and defective, and the lack of warnings or other reasonable safety measures associated with these products provide the perfect conduit and opportunity to engage in sextortion and other fraudulent criminal schemes.

60.    The practice of sextortion and fraudulent activities is well known to the Defendants.

61.    Despite knowledge of the pervasiveness of this problem and the existence of mass numbers of sham accounts being used for sextortion well in advance of the Plaintiff's Decedent's death, it was not until July of 2024, Meta deleted over 60,000 accounts operated by Nigerians which were linked to financial sextortion scams, and other crimes.[26]

62.    Meta identified these accounts, and disabled them using "a combination of new technical signals we've developed to help identify sextorters. . . the majority of these accounts had already been detected and disabled by our enforcement systems and this investigation allowed us

---

[26] https://www.bloomberg.com/news/articles/2024-07-24/meta-removes-63-000-accounts-linked-to-sextortion-scammers?embedded-checkout=true

17

to remove the remaining accounts and understand more about the techniques being used to improve our automated detection."[27]

63.     These "technical signals" were economically and technologically feasible and should have been implemented by the Social Media Defendants well in advance of the Plaintiff's Decedent's sextortion and death.

64.     In simple terms, the Social Media Defendants have known for years about the prevalence of sextortion on their social media applications, yet have taken insufficient steps to design their product with safety features and/or warnings which would protect their users, including those such as the Plaintiff's Decedent who was a prototypical victim for these individuals, a young adult male who was a regular user of the Social Media Defendants' products.

65.     There was nothing preventing these measures, design changes, and/or reasonable warnings from being implemented and integrated into the application products well in advance of January 4, 2023 as they were both technologically available, feasible, and necessary to make these products reasonably safe for use by adolescents, teens, children, and young people such as the Plaintiff's Decedent.

66.     Without these measures, and other reasonable design changes and warnings to the users, the products were unreasonably dangerous and defective under Pennsylvania Law.

67.     The failure to design their applications with sufficient protections which would prevent users from engaging in such pervasive and obviously illegal and fraudulent behavior was a substantial contributing factor and caused the Plaintiff's Decedent's wrongful death.

---

[27] https://about.fb.com/news/2024/07/combating-financial-sextortion-scams-from-nigeria/

Case ID: 241202765

**Plaintiff's Decedent's Use of the Social Media Application Products**

68.    Plaintiff's Decedent has been a social media user for many years, in particular, Instagram, and SnapChat.

69.    He spent much of his spare time interacting online, as described generally above.

70.    In January of 2023 the Plaintiff's Decedent was contacted by a third party through the Instagram app.

71.    This third party was a scammer from Nigeria who was part of an organized criminal operation which targeted teenagers – often minors – through mass Instagram messages in an attempt to get them to "bite" at the bait they sent.

72.    Upon information and belief, Plaintiff's Decedent was targeted based upon his location at a college campus – Kutztown University – where he was a college student.

73.    This conversation began when the Plaintiff's Decedent was targeted by an account from this Nigerian criminal group who were regular "Yahoo Boys", a loosely affiliated criminal group who made their living running these sextortion scams primarily through Instagram, Facebook and Snap.

74.    This first contact made through Instagram Direct Message was one of thousands of messages sent out by the sextortionists, a common and well known tactic to the Social Media Defendants which is highly suspicious for illegal and fraudulent activity.

75.    The Plaintiff's Decedent took the "bait" and responded to the scammers under the pretense that he was conversing with a young woman of his age who was looking to establish a relationship, and asking him for compromising photos of himself, which he eventually sent.

76.    After the scam bait was laid on Instagram, the sextortionists suggested moving the conversation to Snap, where additional compromising photographs of the Plaintiff's Decedent were sent.

19

77.    The reason the sextortionists moved the conversation to Snap was because of their knowledge of the defective and dangerous design of Snap where messages "disappear" and the lack of sufficient warnings to users such as the Plaintiff's Decedent that the messages contain nudity and the application lacks a nudity filter which would warn the user that they are sending messages to an account in an area suspicious and associated with criminal activity, scams, outside of the United States, or other warnings to the user of the prevalence of such scams so that the user may be warned about the information in the Social Media Defendants' possession that these photos may be used as part of a scam.

78.    The conversation immediately turned to extortion upon receipt of the compromising photos, with the criminals incessantly threatening to release the photos to the Plaintiff's Decedent's college board on Facebook, harm the Plaintiff's family, and more.

79.    The Plaintiff's Decedent attempted to send the money the sextortionists were requesting, but these attempts were stifled as the transfers were identified as fraudulent, so the Decedent could only send about $2,800 (which itself was spread across 6 or 7 transactions) and the sextortionists were asking for more.

80.    When the Plaintiff's Decedent could not send them further funds, these criminals used the Social Media Defendants' products to threaten Plaintiff's Decedent and his family, including threats to physically harm him, physically harm his family, and release the sensitive photos to Plaintiff's Decedent's family, friends and school.

81.    After these further and unyielding threats from the sextortionists, the Plaintiff's Decedent went to a nearby SEPTA train track, where he was killed by a SEPTA train.

82.    This action was the direct consequence of the horrible pressure, negative emotions, impulsive decision making, and the impact on the social development, emotions, mind and psyche

20

of the Plaintiff's Decedent as a result of the design of the Social Media Defendants' algorithms and addictive intention and design.

83.    The Plaintiff's Decedent, a social media user for many years since his early adolescent age, including specifically Instagram, Facebook, and SnapChat, was deeply and negatively impacted by the design of these social media applications which were designed to maximize the amount of time a user is on the application in order to maximize their profits from each user.

84.    Were it not for the impact the Social Media Defendants' application had on the Plaintiff's Decedent's social development, emotions, mind and psyche by way of its addictive design, and lack of warnings about these impacts, the Plaintiff's Decedent would not have suffered the harm he did as set forth herein.

**<u>Plaintiff's Decedent is Killed on SEPTA Tracks, by a SEPTA Train</u>**

85.    The Plaintiff's Decedent then went to the train tracks which are owned and operated by the Defendant, SEPTA where he was killed by a train which was owned, operated and under the control of SEPTA and their engineer.

86.    The train was travelling towards Noble Station in Jenkintown, where, upon information and belief, the train intended to stop just several hundred feet away from where the Plaintiff's Decedent was killed, and therefore should have, if the engineer had been operating the train carefully, been able to sound the horn, or otherwise stop the train in order to avoid striking the Plaintiff's Decedent.

87.    He accessed these tracks by traversing the properties of John Kennedy Ford of Jenkintown and Bryner Chevrolet of Jenkintown located at 1650 and 1750 The Fairway, Jenkintown, PA.

Case ID: 241202765

88.     These properties are owned, managed, controlled maintained by one or more of the Premises Liability Defendants.

89.     Because of the circumstances set forth above, the cause of death is in effect, a homicide.

90.     Upon information and belief, the tracks were accessible by the Plaintiff's Decedent as a result of the failure to maintain and/or fence the area surrounding the tracks.

91.     This area is known to be accessible by pedestrians as it is in the area of a high pedestrian area, a shopping center, several businesses, a residential neighborhood, and a commuter train station.

92.     Upon information and belief there have been numerous complaints and near misses related to potential collisions involving SEPTA trains and pedestrians.

93.     For example, on February 8, 2013, a 20-year-old Ardsley man was struck by a SEPTA commuter train in this area[28].

94.     Again, on April 7, 2014, a 20-year-old man from Jenkintown was struck and killed in and/or about the area of the tracks in this area.[29]

95.     Again, on October 20, 2017, a pedestrian was struck and killed by a SEPTA train at or near the Jenkintown train station.[30]

96.     As there is a high degree of pedestrian activity in the area of the location where this incident occurred, Defendant SEPTA knew or should have known about this activity and should have taken reasonable steps to prevent access to this area of tracks, which they failed to do.

---

[28] https://www.abingtonpd.org/pedestrian-struck-by-train/

[29] https://www.abingtonpd.org/pedestrian-struck-by-train-2/

[30] https://6abc.com/pennsylvania-news-jenkintown-septa-person-hit-by-train/2553315/

Case ID: 241202765

97.    In fact, the incident is, upon information and belief, depicted on video of not only SEPTA, but also one or more of the Premises Liability Defendants who, at the time of the incident and for a sufficient time leading up to it, had one of their employees, agents, workman, and/or contractors watching the Plaintiff's Decedent in real time on surveillance video acting erratically, in an obviously distressed manner in the area of the train tracks, while still on the Premises Liability Defendant's property, yet did nothing while making these observations, did not call the police, go to the Plaintiff's Decedent to discuss his purpose for being there in the area of the tracks, or prevent him from accessing the tracks.

98.    Further, the engineer in charge of the train had a duty to observe and be cautions of pedestrians in the area, to signal his horn and to reduce his speed and apply his brakes in order to avoid posing a harm to pedestrians who were known to be and who were in fact present on and in the area of the tracks.

99.    Additionally, the engineer in charge of the train had a duty to refrain from the negligent, careless, reckless, willful and wanton operation of the train in order to avoid contact with pedestrians in the area of the train and tracks.

100.    SEPTA, acting through their agents and/or employees, including their engineer failed to do so, which caused and/or contributed to the Plaintiff's Decedent's wrongful death.

101.    This Plaintiff's Decedent's wrongful death resulted solely from the negligent, careless, reckless, willful, and/or wanton conduct of the SEPTA Defendants, and/or the negligent, careless, reckless, and outrageous conduct, and the other liability producing conduct, including but not limited to the strict liability of the Social Media Defendants acting jointly and/or severally and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

102.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, Plaintiff's decedent John Michael Sullivan died on January 4, 2023.

103.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, the Plaintiff's Decedent suffered great conscious physical pain and suffering, trauma, mental anguish, embarrassment and humiliation prior to her death and did suffer consciously for several days prior to her wrongful death.

104.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, Plaintiff's Decedent's daily activities, occupation and usual life's pleasures were forever extinguished.

105.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, Plaintiff's Decedent's earnings, earning capacity and employment opportunities were terminated.

106.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, the Estate of John Michael Sullivan incurred liability for medical services, funeral and household expenses.

<div align="center">

**COUNT I**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. META PLATFORMS, INC., F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE, INC., 1-5 AND JOHN DOE CORP., 1-5**
**NEGLIGENCE**

</div>

107.    Plaintiff incorporates by reference the preceding as if the same were set forth fully herein.

108.    The negligence and carelessness of the Social Media Defendants, their agents, servants, workmen, and/or employees, consists of, but is not limited to, the following:

      a.    Failure to design, manufacture, fabricate, assemble, sell and install appropriate safety systems on the Defendant's social media applications;

<div align="center">24</div>

b.  Failure to warn users of these products (i.e., Instagram and Snap) that social media is addictive;

c.  Failure to warn users of these products (i.e., Instagram and Snap) of the dangers of contact by unknown users through the direct messaging component of the application including sextortion;

d.  Failure to warn users of these products (i.e., Instagram and Snap) of the existence and prevalence of sextortion on their application through the direct messaging component of the application;

e.  Failure to implement "technical signals" to identify sextorters and their accounts to prevent these sextorters from opening and operating accounts solely for the purpose of conduction illegal sextortion activity;

f.  Failure to warn users that sextortion accounts had been regularly identified and shut down on the application;

g.  Failure to warn users of the characteristics of a sextortion scam message including "highly stylized photos" and "people who exceptionally good looking" or who have "never sent you a message before" despite knowledge that such account characteristics are associated with sextortion activity;

h.  Failure to conduct sufficient investigation into the creation and operation of accounts originated in suspicious locations, including but not limited to Nigeria, which had characteristics of fraudulent or illegal accounts such as; new users sending mass messages to "many, many" users outside of their country or geographic area, "highly stylized photos" and "people who exceptionally good looking" or who have "never sent you a message before"; have little to no followers, comments on their photos, likes on their photos and/or posts; and/or other classic indicators of fraudulent account creation;

i.  Failure to monitor or prevent the creation of accounts with such characteristics as addressed above, or to prevent the operation of same;

j.  Failure to monitor or prevent the creation of, or prevent the operation of accounts of individuals, IP addresses, or other characteristics which the Defendants knew or should have known had previously been associated with account activity which was identified, or should have been identified as fraudulent;

k.  Allowing the creation of numerous and/or countless accounts by individuals or groups of individuals which can only be used for fraudulent or criminal activity;

25

Case ID: 241202765

l.  Otherwise require verification from the account creator and/or operator that would ensure the account is being created by a real person for a non-criminal and/or fraudulent purpose when creating an account with the characteristics set forth above in these sub-paragraphs;

m.  Failure to design and/or implement warnings before a user is permitted to send compromising images, including reminders and/or warnings to users that, among other things, the recipient user may not be who they say they are; may be a criminal; may use the images for sextortion; may forward the images or publish them without your consent and/or knowledge; and that the users profile and account should be viewed carefully in case they're not who they say they are;

n.  Failure to otherwise design and/or implement other reasonable nudity protection measures and/or warnings;

o.  Failure to provide a quick dedicated option for help and/or immediate resource to an individual who has been contacted through the application with threats to share private images;

p.  Failure to warn users when receiving messages from accounts with characteristics identified herein and with other characteristics suspicious for fraudulent/ criminal activity that such accounts may be associated with fraudulent activity, originate outside the country and/or from suspicious areas;

q.  Failure to warn users using geofencing of the location of direct messages;

r.  Failure to reasonably restrict the sharing of nude images;

s.  Failure to supply and/or post adequate notices or warnings of the risks and dangers of the product in the materials which describe the operation and use of the products and in the applications themselves;

t.  Failure to place or install warning notices in an obvious and/or conspicuous place in the application;

u.  Failure to manufacture, fabricate, assemble, sell and distribute products with adequate safety materials, manuals, instructions, markings, signs, warnings and safety devices;

v.  Failure to design algorithms to limit addictive engagement;

w.  Failure to warn of the health effects of use and extended use of the application;

26

Case ID: 241202765

x.     Failure to implement default protective limits regarding the time and length and frequency of use;

y.     Failure to implement opt-in restrictions to the length and frequency of use;

z.     Failure to implement self-limiting tools, including but not limited to session time notifications warnings, or reports;

aa.    Failure to create a beginning and end to a user's feed;

bb.    Failure to implement appropriate geofencing that would warn users when messages were coming from out of the country, or from specific suspicious areas;

cc.    Distributing defective products to the general public;

dd.    Advertising a defective product to the general public;

ee.    Failure to assemble the products so as to prevent injuries to the Plaintiff's Decedent and other users;

ff.    Failure to design a product with adequate materials and safety devices;

gg.    Failure to inspect said products prior to the sale, distribution or purchase of said product.

109.   Prior to placing these products (i.e., Instagram and Snap) into the stream of commerce, Defendants knew or should have known with adequate design, inspection and/or testing that these products (i.e., Instagram and Snap) were in a defective and dangerous condition and that because of these defects, these products (i.e., Instagram and Snap) could not be used safely for the purposes for which they were intended. Defendants also knew that continued offering and use of these products (i.e., Instagram and Snap) would result in further injuries to persons such as Plaintiff's Decedent.

110.   The negligence, carelessness, recklessness and outrageous conduct of the Social Media Defendants its agents, servants, workmen, and/or employees, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff's Decedent and expenses incurred as set forth above.

27

Case ID: 241202765

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5, and John Doe Corp 1-5 jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

## COUNT II
### JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. META PLATFORMS, INC., F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE, INC., 1-5 AND JOHN DOE CORP., 1-5
### STRICT LIABILITY

111. Plaintiff incorporates by reference the preceding as if the same were set forth fully at length herein.

112. At all times relevant hereto, the Defendants' social media applications, Instagram and Snap were advertised, marketed, manufactured, designed, fabricated, assembled, sold, distributed and/or otherwise placed into the stream of commerce by the Social Media Defendants during and in the ordinary course of their business.

113. These social media application products as well as their components (including their algorithms and any associated warnings) did reach the Plaintiff's Decedent, an intended foreseeable user and cause injuries and the wrongful death in a condition substantially unchanged from that in which they were advertised, marketed, manufactured, designed, fabricated, assembled, sold, distributed and/or otherwise placed into the stream of commerce.

114. The injuries, damages and wrongful death sustained by the Plaintiff's Decedent as set forth above, were the direct result of the defective and dangerous conditions existing at the time

28

of the advertising, marketing, design, manufacture, fabrication, assembly, sale and/or distribution by the Social Media Defendants, including without limitation that the social media application products did not contain an adequate sufficient design protections to prevent individuals such as the sextortionists from Nigeria from utilizing these applications to widely target victims such as the Plaintiff's Decedent and many others with mass automated messages targeted by their age, location around schools and other vulnerable areas from another country known to be associated with high degrees of illegal and fraudulent criminal extortion activity and/or otherwise warn users about these dangers which were known to the Defendants for a sufficient period of time in advance of the incident involving the Plaintiff's Decedent.

115.    Defendants are strictly liable pursuant to Section 402(a) of the Restatement of Torts, Second as said products were defective and unreasonably dangerous at the time they were distributed and Defendants failed to warn Plaintiff's Decedent, and other foreseeable users of the aforementioned defects and dangers.

116.    Prior to the incident involving the Plaintiff's Decedent and/or the use of social media application products, the Social Media Defendants knew or should have known with adequate design, inspection and/or testing that the products were in a defective and dangerous condition and that because of the defects, the products could not be used safely for the purposes for which they were intended. Defendants also knew that continued offering for use of the products would result in further injuries to persons such as Plaintiff.

117.    The social media application products, as advertised, marketed, manufactured, designed, fabricated, assembled, sold, distributed, and/or otherwise placed into the stream of commerce by the Social Media Defendants also failed to contain proper warnings and instructions regarding the use of and all dangers associated with the use and operation of these products.

Case ID: 241202765

118.   The social media application products were also defective due to inadequate warnings or instructions because, after the manufacturer knew or should have known of the risk of injury (including the risk of exposure to the highly pervasive fraudulent criminal activity, scams, and/or sextortion) to users and/or persons similarly situated as the Plaintiff, Defendants failed to provide adequate warnings to users and persons subjected to these products (i.e., Instagram and Snap) as set forth at length above regarding the risks of sextortion for the reasons set forth at length above and herein, and continued to advertise, market, manufacture, design, fabricate, assemble, sell, distribute and/or otherwise place into the stream of commerce these products, i.e., Instagram and Snap.

119.   The dangers of these products (i.e., Instagram and Snap) that caused and/or contributed to Plaintiff's Decedent's death were unknowable and unacceptable to the average or ordinary consumer, and therefore they failed to satisfy the Customer Expectation Test.

120.   A reasonable person would conclude the probability and seriousness of the harms caused by the defectiveness of these products (i.e., Instagram and Snap) as set forth above, outweighed the burden or costs of taking precautions, and therefore they failed to satisfy the Risk-Utility test.

121.   As a result of the aforementioned defects, and/or other dangerous propensities of the products, including improper warnings and instructions on these products (i.e., Instagram and Snap) and in the operations/use manuals, the Plaintiff's Decedent was caused to sustain severe injuries, damages and suffer a wrongful death as set forth herein.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5, and John Doe Corp 1-5

30

Case ID: 241202765

jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

<div align="center">

**COUNT III**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL
SULLIVAN VS. META PLATFORMS, INC., F/K/A FACEBOOK, INC., FACEBOOK
HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC.,
FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE,
INC., 1-5 AND JOHN DOE CORP., 1-5
BREACH OF WARRANTY**

</div>

122.    Plaintiff incorporates by reference the preceding as if the same were set forth fully herein.

123.    The Social Media Defendants expressly and impliedly warranted the product was safe and fit for the particular purpose for which they were made.

124.    The Social Media Defendants' breach of contract/warranty consisted, *inter alia*, of selling defective and dangerous products.

125.    Plaintiff's Decedent relied on the skill, judgment, representations, and foregoing implied and express warranties of the Social Media Defendants.    Said warranties and representations were false in that the aforementioned these products (i.e., Instagram and Snap) were not safe; were un-merchantable; and were unfit for the ordinary purpose and uses for which they were intended and caused Plaintiff's injuries.

126.    Prior to the time the these products (i.e., Instagram and Snap) were used by Plaintiff's Decedent, the Social Media Defendants had implied warranted to the general public that said these products (i.e., Instagram and Snap) were of merchantable quality and safe and fit for the use for which they were intended.

127.    The general public, Plaintiff's Decedent are unskilled in the research, manufacture, design, fabrications, assembly, sale and/or distribution of the aforementioned these products (i.e.,

<div align="center">31</div>

Instagram and Snap) and reasonably relied on the skill, judgment and implied warranty of the Social Media Defendants in using the aforementioned these products (i.e., Instagram and Snap).

128.    These products (i.e., Instagram and Snap) were neither safe for their intended use nor of merchantable quality as warranted by the Social Media Defendants, in that they had dangerous propensities when put to their intended use and would cause severe injuries to the users.

129.    The aforementioned breach of warranty was the proximate cause of the injuries and damages sustained by the Plaintiff's Decedent as set forth herein.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5, and John Doe Corp 1-5 jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

## COUNT IV
### JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. SEPTA AND ROBERT MILSON
### NEGLIGENCE, RECKLESSNESS, AND WILLFUL/WANTON CONDUCT

130.    Plaintiff reavers and incorporates the preceding paragraphs as though set forth at length.

131.    Defendants were aware that these train tracks established an attractive nuisance to individuals in the area and/or proximity.

132.    Defendants were aware of the existence of numerous other pedestrian strikes on the tracks by trains in this vicinity, yet did nothing to obstruct access to the tracks on their property or safely control the movement of the train despite this knowledge.

Case ID: 241202765

133.    The negligence, carelessness, recklessness and/or willful/ wanton conduct of Defendants consisted of, but it not limited to:

    a.  Failure to exercise reasonable care to eliminate the danger or otherwise to protect Plaintiff's Decedent.

    b.  failure of its employees, agents, ostensible agents and servants to conduct and operate the train in a safe manner, including traveling at speeds in excess of speed limits in place by law;

    c.  failure of its employees, agents, ostensible agents and servants to monitor the safety of pedestrians and train passengers in and around the tracks where this incident occurred;

    d.  failure of its employees, agents, ostensible agents and servants to observe pedestrians on the tracks;

    e.  failure of its employees, agents, ostensible agents and servants to observe pedestrians on the tracks in a reasonable time;

    f.  failure to apply speed limiting devices including but not limited to brakes in sufficient time so as to avoid striking the Plaintiff's Decedent;

    g.  failure to brakes apply speed limiting devices including but not limited to brakes in sufficient time so as to provide the Plaintiff's Decedent reasonable opportunity to take evasive action and avoid being struck;

    h.  failure to slow the train down after its employee(s), agents and/or ostensible agents witnessed Plaintiff's Decedent on the tracks in the foreground as the train approached the location of the incident;

    i.  failure to stop the train in time to avoid striking Plaintiff's Decedent;

    j.  failure to blow the whistle of the train to warn Plaintiff's Decedent of impending danger;

    k.  failure to install any kind of barriers and/or fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

    l.  failure to repair the dangerous condition of the lack of fencing surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

33

Case ID: 241202765

m. failure to post warning signs along the train tracks;

n. failure to repair holes in fences surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

o. failure to install fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

p. creating a dangerous condition;

q. creating an attractive nuisance;

r. operating the train at too great of a speed approaching the tracks where the incident occurred despite knowledge of the risks of pedestrians on the tracks;

s. failing to exercise ordinary care to avoid injuring others;

t. failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on the risks associated with pedestrians on the tracks;

u. failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on how to safely observe pedestrians on the train tracks;

v. failure to warn its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor of the existence of prior complaints or knowledge on behalf of SEPTA of pedestrians on the train tracks in the vicinity of the location of the incident;

w. failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on how to use horns and/or audio warning devices; and

x. failure to inspect the condition of the fences in the area of the tracks where the incident occurred.

34

Case ID: 241202765

41.    The negligence and/or carelessness of the Defendants as set forth herein was a proximate and sole cause of the injuries and damages to Plaintiff's Decedent, John Michael Sullivan and the expenses incurred as set forth above.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants SEPTA, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, costs and such other further relief the court shall deem appropriate.

### COUNT V
### JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. BRYNER CHEVROLET, INC., D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC., 5-10, KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE MANAGEMENT ASSOCIATES, LLC, JOHN DOE CORP., 5-10
### NEGLIGENCE, RECKLESSNESS, AND WILLFUL/WANTON CONDUCT

134.    Plaintiff reavers and incorporates the preceding paragraphs as though set forth at length.

135.    It is alleged and therefore averred that prior to January 4, 2023, Defendants had actual knowledge of the dangers associated with the proximity of their property and business to the exposed and unfenced train tracks adjacent to their property.

136.    Defendants were aware that these train tracks established an attractive nuisance to individuals in the area and/or proximity.

137.    Defendants were aware of the existence of numerous other pedestrian strikes on the tracks by trains yet did nothing to obstruct access to the tracks on their property.

138.    Defendants were aware of the presence of the Plaintiff's Decedent on their property for a sufficient period of time in which they observed him wandering in a distressed fashion in the

35

Case ID: 241202765

area of the train tracks to take reasonable steps to intervene and prevent him from being struck by the train.

139.    The negligence, carelessness, recklessness and/or willful/ wanton conduct of Defendants consisted of, but it not limited to:

    a.  Failure to exercise reasonable care to eliminate the danger or otherwise to protect Plaintiff's Decedent.

    b.  failure of its employees, agents, ostensible agents and servants to monitor the safety of pedestrians in and around the tracks where this incident occurred;

    c.  failure of its employees, agents, ostensible agents and servants to observe pedestrians in the area of the train tracks;

    d.  failure of its employees, agents, ostensible agents and servants to observe pedestrians in and around the tracks in a reasonable time;

    e.  failure to install any kind of barriers and/or fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

    f.  failure to repair the dangerous condition of the lack of fencing surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

    g.  failure to post warning signs along the train tracks;

    h.  failure to install fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

    i.  failure to monitor surveillance cameras;

    j.  failure to intervene with the Plaintiff's Decedent;

    k.  failure to restrict Plaintiff's Decedent from accessing the tracks;

    l.  failure to remove the Plaintiff's Decedent from the area of the tracks;

    m.  failure to take reasonable steps to protect the Plaintiff's Decedent from the hazard associated with the unfenced tracks;

Case ID: 241202765

n. creating a dangerous condition;

o. creating an attractive nuisance;

p. observing the Plaintiff's Decedent on their property, acting nervously, scared, and distressed in the area of the train tracks for a significant period of time before he was struck and failing to intervene, call the police, or make contact with the Plaintiff's Decedent;

q. failing to exercise ordinary care to avoid injuring others;

r. failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on the risks associated with pedestrians on the tracks;

s. failure to warn its employees, agents, ostensible agents and servants, of the existence of prior complaints or knowledge of pedestrians on the train tracks in the vicinity of the location of the incident; and

t. failure to inspect the condition of the fences in the area of the tracks where the incident occurred.

42.    The negligence and/or carelessness of the Defendants as set forth herein was a proximate and sole cause of the injuries and damages to Plaintiff's Decedent, John Michael Sullivan and the expenses incurred as set forth above.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, DBP Partners, LP., DB Pete Inc., John Doe Inc., 5-10, John Kennedy Ford of Jenkintown, Hopkins Ford, Inc., Kennedy Real Estate Associates, LP, Kennedy Real Estate Management Associates, LLC, John Doe Corp 5-10, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, costs and such other further relief the court shall deem appropriate.

## COUNT VI
### JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. ALL DEFENDANTS
#### WRONGFUL DEATH

37

Case ID: 241202765

50.     Plaintiff reavers and incorporates the preceding paragraphs as though set forth herein at length.

51.     Plaintiff brings this action pursuant to the Wrongful Death Act 42 Pa. C.S.A. Section 8301 and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

52.     The names and last known addresses of all persons who may be entitled by law to recover damages, as well as their relationship to Decedent John Michael Sullivan are as follows:

        a.     James Sullivan, Jr., father
             619 Edgley Avenue
             Glenside, PA 19038

        b.     Kathleen Sullivan, mother
             619 Edgley Avenue
             Glenside, PA 19038

53.     As a direct and proximate result of the foregoing, the Decedent's Wrongful Death beneficiaries have been, continue to be, and will in the future be deprived of his counsel, services, companionship and society.

54.     As a direct and proximate result of the Defendants' liability producing conduct as set forth above, which is incorporated herein, John Michael Sullivan's Wrongful Death beneficiaries suffered, are suffering and will, for an indefinite period of time in the future, suffer damages, injuries and losses, including but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from him, including monies which he would have provided for items such as clothing, food, shelter, medical care, education and entertainment, recreation and gifts

55.     As a direct and proximate result of the Defendants' negligent and/or careless conduct as set forth above, which is incorporated herein, John Michael Sullivan's Wrongful Death beneficiaries have been caused to incur and pay various expenses from medical treatment, hospital

Case ID: 241202765

care, custodial care, nursing care and medications, and funeral and other expenses related to his death.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5 and John Doe Corp., 1-5, SEPTA, Robert Milson, Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, DBP Partners, LP., DB Pete Inc., John Doe Inc., 5-10, John Kennedy Ford of Jenkintown, Hopkins Ford, Inc., Kennedy Real Estate Associates, LP, Kennedy Real Estate Management Associates, LLC, and John Doe Corp 5-10, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

<div align="center">

**COUNT VII**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. ALL DEFENDANTS**
**SURVIVAL ACTION**

</div>

56.    Plaintiff reavers and incorporates the preceding paragraphs as though set forth herein at length.

57.    Plaintiff brings this action on behalf of the Estate of John Michael Sullivan, by virtue of the Survival Act, 42 Pa.C.S.A. §8302, and claims all benefits of the Survival Act on behalf of John Michael Sullivan's Estate and other persons entitled to recover under law.

58.    As a direct and proximate result of the Defendants' liability producing conduct as set forth above, which is incorporated herein, Plaintiff claims on behalf of the Estate of John Michael Sullivan, all damages suffered by the Estate by reason of the death of John Michael Sullivan, including without limit the generality of the following:  the severe injuries to John

<div align="center">39</div>

Michael Sullivan which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other tangible losses which John Michael Sullivan suffered prior to his death, the loss of past, present, and future earning capacity suffered by John Michael Sullivan from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained; expenses for medical care, the loss and total limitation and deprivation of his normal activities until the time of his death.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5 and John Doe Corp., 1-5, SEPTA, Robert Milson, Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, DBP Partners, LP., DB Pete Inc., John Doe Inc., 5-10, John Kennedy Ford of Jenkintown, Hopkins Ford, Inc., Kennedy Real Estate Associates, LP, Kennedy Real Estate Management Associates, LLC, and John Doe Corp. 5-10, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

Respectfully submitted,

**STAMPONE O'BRIEN DILSHEIMER LAW**

BY:_____/s/_____
KEVIN P. O'BRIEN, ESQUIRE
TYLER STAMPONE, ESQUIRE
Attorneys for Plaintiff

**DICELLO LEVITT**

BY:_____/s/_____
DIANDRA DEBROSSE, ESQUIRE
ELI HARE, ESQUIRE

40

# VERIFICATION

James Sullivan, Jr., Administrator of the Estate of John Michael Sullivan states that he is the Plaintiff

herein, that he is acquainted with the facts set forth in the foregoing pleading, that the same are true

and correct to the best of his information, knowledge and belief and that this statement is made subject

to the penalties of 18 Pa.C.S.A. Section 4904 relating to unsworn falsifications to authorities.

DocuSigned by:

*Jim Sullivan*

F5FC8F8E905B4A5...

James Sullivan, Jr., Administrator of the
Estate of John Michael Sullivan

Dated_____12/20/2024_____

Case ID: 241202765

EXHIBIT A

### SHORT CERTIFICATE
### COMMONWEALTH OF PENNSYLVANIA
### COUNTY OF MONTGOMERY

I, D. Bruce Hanes, Register of Wills in the County of Montgomery, in the Commonwealth of Pennsylvania, DO HEREBY CERTIFY that on the 10th day of April 2023 Letters of Administration on the Estate of JOHN MICHAEL SULLIVAN ,

deceased, were granted to
**JAMES SULLIVAN JR**

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record in my office.

File number: 46-2023-X1168

Date of Death: 1/4/2023

Social Security Number: 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

Given under my hand and seal of office this
**10th day of April 2023**

_____
Montgomery County Register of Wills

Case ID: 241202765

**AFFIDAVIT OF SERVICE**

| Case:<br>241202765 | Court:<br>Pennsylvania Court of Common Pleas | County:<br>Philadelphia | *Filed and Attested by the Office of Judicial Records 31 DEC 2024 09:29 am S. GILLIAM* |
|---|---|---|---|
| Plaintiff / Petitioner:<br>James Sullivan, Jr., et al | | Defendant / Respondent:<br>SEPTA, et al | |
| Received by:<br>Legal-Ease Enterprises | | For:<br>Stampone O'Brien Dilsheimer Law | |
| To be served upon:<br>SEPTA | | | |

I, Joselynn Cook, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| | |
|---|---|
| **Recipient Name / Address:** | SEPTA, VIA EMAIL TO: Claimsintake@septa.org |
| **Manner of Service:** | Authorized, Dec 30, 2024, 11:46 am EST |
| **Documents:** | Complaint |

**Additional Comments:**
1) Successful Attempt: Dec 30, 2024, 11:46 am EST at VIA EMAIL TO: Claimsintake@septa.org.
Legal Department. Due to COVID closures all service is being accepted via email. Confirmation email attached.

_____                    12/30/2024
_____
Joselynn Cook                                     **Date**

Legal-Ease Enterprises
2424 E York Street, Suite 321
Philadelphia, PA 19125



**Legal-Ease Enterprises, Inc. <info@legaleasepa.com>**

---

## FW: Service of Complaint: James Sullivan, Jr., et al
1 message

**Melody Hill** <MHill@septa.org>      Mon, Dec 30, 2024 at 11:46 AM
To: "Legal-Ease Enterprises, Inc." <info@legaleasepa.com>
Cc: Claims Intake <ClaimsIntake@septa.org>, Samuel Friedman <SFriedman@septa.org>, Stephen Vedro
<SVedro@septa.org>

Good Morning,

Septa hereby accepts service on the attached complaint for Sullivan vs Septa and Septa operator on
December 30, 2024

Thank You

---

**From:** Legal-Ease Enterprises, Inc. <info@legaleasepa.com>
**Sent:** Friday, December 27, 2024 11:29 AM
**To:** Claims Intake <ClaimsIntake@septa.org>
**Subject:** Service of Complaint: James Sullivan, Jr., et al

Good morning,

    Attached is a complaint for service on SEPTA and Robert Milson C/O SEPTA. Please confirm acceptance of service.

Thank you,

Joselynn

Case: 241202765
Plaintiff: James Sullivan, Jr., et al
Defendant: SEPTA, et al
Court: Pennsylvania Court of Common Pleas
County: Philadelphia



**Legal-Ease Enterprises**

📞 215-535-1532
🌐 www.LegalEasePA.com
📍 2424 E. York St., Suite 321
    Philadelphia, PA 19125

Case ID: 241202765

12/30/24, 11:49 AM
Case 2:25-cv-00456-KBH   Document 1-4   Filed 01/27/25   Page 51 of 172
Legal Ease Enterprises Mail - FW: Service of Complaint - James Salvar et al

**Leave us a review** on Google and get your next Philadelphia service FREE!

---

📄 **ACFrOgDgYLCInwjaUM6ER_On3f81sabkYOxLA8rYmFlIFj5ZV7AooRdcqGhPrMdwqb6120YtGxMzxQXq4Y
wZUjl71FE5APdZdqFahlpf6RLIC6_8okGgGT_sSP2d5pxxlrk1nm6Bkuq_yOZzB4Cy.pdf**
764K

Case ID: 241202765

## AFFIDAVIT OF SERVICE

| Case:<br>241202765 | Court:<br>Pennsylvania Court of Common Pleas | County:<br>Philadelphia | |
|---|---|---|---|
| Plaintiff / Petitioner:<br>James Sullivan, Jr., et al | | Defendant / Respondent:<br>SEPTA, et al | |
| Received by:<br>Legal-Ease Enterprises | | For:<br>Stampone O'Brien Dilsheimer Law | |
| To be served upon:<br>Robert Milson | | | |

*Filed and Attested by the Office of Judicial Records 31 DEC 2024 09:40 am E. GILLIAM*

I, Joselynn Cook, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**     Robert Milson , VIA EMAIL TO: Claimsintake@septa.org

**Manner of Service:**     Authorized, Dec 30, 2024, 11:46 am EST

**Documents:**     Complaint

**Additional Comments:**
1) Successful Attempt: Dec 30, 2024, 11:46 am EST at VIA EMAIL TO: Claimsintake@septa.org.
Legal Department. Due to COVID closures all service is being accepted via email. Confirmation email attached.


_____          12/30/2024
Joselynn Cook                                                **Date**

Legal-Ease Enterprises
2424 E York Street, Suite 321
Philadelphia, PA 19125



**Legal-Ease Enterprises, Inc. <info@legaleasepa.com>**

---

## FW: Service of Complaint: James Sullivan, Jr., et al
1 message

**Melody Hill** <MHill@septa.org>                                    Mon, Dec 30, 2024 at 11:46 AM
To: "Legal-Ease Enterprises, Inc." <info@legaleasepa.com>
Cc: Claims Intake <ClaimsIntake@septa.org>, Samuel Friedman <SFriedman@septa.org>, Stephen Vedro
<SVedro@septa.org>

Good Morning,

Septa hereby accepts service on the attached complaint for Sullivan vs Septa and Septa operator on
December 30, 2024

Thank You

---

**From:** Legal-Ease Enterprises, Inc. <info@legaleasepa.com>
**Sent:** Friday, December 27, 2024 11:29 AM
**To:** Claims Intake <ClaimsIntake@septa.org>
**Subject:** Service of Complaint: James Sullivan, Jr., et al

Good morning,

   Attached is a complaint for service on SEPTA and Robert Milson C/O SEPTA. Please confirm acceptance of service.

Thank you,

Joselynn

Case: 241202765
Plaintiff: James Sullivan, Jr., et al
Defendant: SEPTA, et al
Court: Pennsylvania Court of Common Pleas
County: Philadelphia



**Legal-Ease Enterprises**

📞 215-535-1532
🌐 www.LegalEasePA.com
📍 2424 E. York St., Suite 321
   Philadelphia, PA 19125

<span style="color:red">Case ID: 241202765</span>

**Leave us a review** on Google and get your next Philadelphia service FREE!

---

**ACFrOgDgYLClnwjaUM6ER_On3f81sabkYOxLA8rYmFllFj5ZV7AooRdcqGhPrMdwqb6120YtGxMzxQXq4Y wZUjl71FE5APdZdqFahlpf6RLlC6_8okGgGT_sSP2d5pxxlrk1nm6Bkuq_yOZzB4Cy.pdf**
764K

Case ID: 241202765

LEGAL-EASE ENTERPRISES, INC.
2424 E. York Street, Suite 321
Philadelphia, PA 19125

NAPPS

Pennsylvania Association of
Professional Process Servers

## AFFIDAVIT OF SERVICE

Filed and Attested by the
Office of Judicial Records
03 JAN 2025 02:19 pm
K. KALOGRIAS

| | |
|---|---|
| PLAINTIFF(s): James Sullivan, Jr., et al | COURT TERM & NO.: 241202765 |
| DEFENDANT(s): Kennedy Real Estate Associates, LP | Job Number: 12411239 |

SERVE BY: 01/22/2025

| | | |
|---|---|---|
| SERVE AT: 1650 The Fairway Jenkintown, PA 19046 | XX Civil Action - Compl. ○ Summons ○ Writ | ○ Subpoena ○ Notice of Real Estate Sale ○ Other_____ |

SPECIAL INSTRUCTIONS:

**LAST DAY FOR SERVICE:** 1/22/2025
$375.00

Served and made known to _Steven Jonet_
On the __2__ day of __1__, 20 _25_ at __07:50__ o'clock __A__ .M.,
At _above address_, County of _mont_,
Commonwealth of Pennsylvania, In the manner described below:
- ○ Defendant(s) personally served.
- ○ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ○ Adult in charge of Defendant's residence who refused to give name or relationship.
- ○ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ✓ Agent or person in charge of Defendant's office or usual place of business.
- ○ _____ an officer of said Defendant company.
- ○ Other_____

DESCRIPTION:
AGE:        HEIGHT:        WEIGHT:        RACE:        SEX:        OTHER:

On the _____ day of _____, 20_____, at _____ o'clock_____.M..
Defendant not found because: ☐ Moved    ☐ Unknown    ☐ No Answer    ☐ Vacant    ☐ Other
Other: _____

NAME OF SERVER
_____ being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this
_____ day of _____ 20___

Process Server/Competent Adult _____    Sheriff _Caffrey_

Now, this _____ day of _____, 20_____, I do hereby deputize the Sheriff of _____ County,
To serve this ☐Summons    ☐Complaint    ☐Other_____ and make return thereof and according to Law.
By (Competent Adult): _____    County Sheriff's Check $_____

| | |
|---|---|
| Law Firm: Kevin P. O'Brien, Esquire C/O Legal-Ease Enterprises, Inc. Attorney's Name: Same as above    For: Plaintiff Address: 2424 E. York Street, Suite 321 Philadelphia, PA 19125 Telephone: 215-535-1532    Identification: 313081 | ATTEST:    FILED: _____ PRO PROTHY___ December 23rd, 2024 DATE |

Case ID: 241202765

AL-EASE ENTERPRISES, INC.
, E. York Street, Suite 321
Philadelphia, PA 19125

**NARPS**

Philadelphia Association of
Professional Process Servers

## AFFIDAVIT OF SERVICE

*Filed and Attested by the
Office of Judicial Records
09 JAN 2025 02:15 pm
K. PALOGRIAS*

24013914

| PLAINTIFF(s): nes Sullivan, Jr., et al | COURT TERM & NO.: 241202765 |  |
|---|---|---|
| DEFENDANT(s): Hopkins Ford, Inc. | Job Number: 12411239 | SERVE BY: 01/22/2025 |
| SERVE AT: 1650 The Fairway Jenkintown, PA 19046 | XX Civil Action - Compl. ○ Summons ○ Writ | ○ Subpoena ○ Notice of Real Estate Sal ○ Other_____ |

SPECIAL INSTRUCTIONS: 

LAST DAY FOR SERVICE: _1/22/2025_
Paid *

Served and made known to __Steven Jenet__
On the __2__ day of _____, 20 __24__ at __07:50__ o'clock __A__.M.,
At __above address__, County of __Mont.__
Commonwealth of Pennsylvania, In the manner described below:
- ○ Defendant(s) personally served.
- ○ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ○ Adult in charge of Defendant's residence who refused to give name or relationship.
- ○ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ✓ Agent or person in charge of Defendant's office or usual place of business.
- ○ _____ an officer of said Defendant company.
- ○ Other_____

### DESCRIPTION:
AGE:        HEIGHT:        WEIGHT:        RACE:        SEX:        OTHER:

On the _____ day of _____, 20_____, at _____ o'clock_____.M..
Defendant not found because: ☐ Moved    ☐ Unknown    ☐ No Answer    ☐ Vacant    ☐ Other
Other: _____

NAME OF SERVER
_____ being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this
_____ day of _____ 20___

RECV'D MCSO 2024 DEC 30 PM 3:08

Process Server/Competent Adult _____        Sheriff _Caffrey_

Now, this _____ day of _____, 20_____, I do hereby deputize the Sheriff of _____ County,
To serve this ☐Summons    ☐Complaint    ☐Other_____ and make return thereof and according to Law.
By (Competent Adult): _____        County Sheriff's Check $_____

| Law Firm: Kevin P. O'Brien, Esquire C/O Legal-Ease Enterprises, Inc. | ATTEST: _____ |
|---|---|
| Attorney's Name: Same as above    For: Plaintiff | FILED: PRO PROTHY |
| Address: 2424 E. York Street, Suite 321 Philadelphia, PA 19125 | December 23rd, 2024 DATE |
| Telephone: 215-535-1532    Identification: 313081 | |

Case ID: 241202765

LEGAL-EASE ... Association of
2424 E. York Street, Suite 321          Professional Process Servers
Philadelphia, PA 19125

240131

**NACPS**

# AFFIDAVIT OF SERVICE

Filed and Attested by the
Office of Judicial Records
03 JAN 2025 02:14 pm
K. KALOGRIAS

| PLAINTIFF(s): James Sullivan, Jr., et al | COURT TERM & NO.: 241202765 | Philadelphia | |
|---|---|---|---|
| DEFENDANT(s): John Kennedy Ford of Jenkintown | Job Number: 12411239 | | SERVE BY: 01/22/2025 |
| SERVE AT: 1650 The Fairway Jenkintown, PA 19046 | XX Civil Action - Compl. ○ Summons ○ Writ | ○ Subpoena ○ Notice of Real Estate Sale ○ Other_____ | |

SPECIAL INSTRUCTIONS:

LAST DAY FOR SERVICE: 1/22/2025
Paid

Served and made known to _Steven Jenet_
On the _2_ day of _1_____, 20 _24_ at _07:50_ o'clock _A_.M.,
At _above address_, County of _Mont._,
Commonwealth of Pennsylvania, In the manner described below:
- ○ Defendant(s) personally served.
- ○ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ○ Adult in charge of Defendant's residence who refused to give name or relationship.
- ○ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ✓ Agent or person in charge of Defendant's office or usual place of business.
- ○ _____ an officer of said Defendant company.
- ○ Other_____

DESCRIPTION:
AGE:          HEIGHT:          WEIGHT:          RACE:          SEX:          OTHER:

On the _____ day of _____, 20_____, at _____ o'clock_____.M..
Defendant not found because: □ Moved   □ Unknown   □ No Answer   □ Vacant   □ Other
Other: _____

NAME OF SERVER
_____ being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this
_____ day of _____ 20___

Process Server/Competent Adult _____          Sheriff _Caffrey_

RECV'D MCSO ... 2024 DEC 30 ... PA

Now, this _____ day of _____, 20_____, I do hereby deputize the Sheriff of _____ County,
To serve this □Summons   □Complaint   □Other_____ and make return thereof and according to Law.
By (Competent Adult): _____          County Sheriff's Check $_____

| Law Firm: Kevin P. O'Brien, Esquire C/O Legal-Ease Enterprises, Inc. | ATTEST: | FILED: |
|---|---|---|
| Attorney's Name: Same as above   For: Plaintiff | | PRO PROTHY |
| Address: 2424 E. York Street, Suite 321 Philadelphia, PA 19125 | | December 23rd, 2024 |
| Telephone: 215-535-1532   Identification: 313081 | | DATE |

Case ID: 241202765

ENTERPRISES INC
2424 E. York Street, Suite 321
Philadelphia, PA 19125

**NAPPS**

National Association of
Professional Process Servers

# AFFIDAVIT OF SERVICE

Filed and Attested by the
Office of Judicial Records
02 JAN 2025 03:19 pm
K. KALOGRIAS

| PLAINTIFF(s): James Sullivan, Jr., et al | COURT TERM & NO.: 241202765 | | Philadelphia |
|---|---|---|---|
| DEFENDANT(s): DB Pete, Inc. | Job Number: 12411239 | | SERVE BY: 01/22/2025 |
| SERVE AT: 1650 The Fairway Jenkintown, PA 19046 | XX Civil Action - Compl. ○ Summons ○ Writ _____ | | ○ Subpoena ○ Notice of Real Estate Sale ○ Other _____ |

SPECIAL INSTRUCTIONS:

LAST DAY FOR SERVICE: 1/22/2025
Paid

Served and made known to ___Steven Jenet___
On the __2__ day of __1__, 20 _25_ at _07:50_ o'clock __A__.M.,
At ___above address___, County of _Mont._,
Commonwealth of Pennsylvania, In the manner described below:

- ○ Defendant(s) personally served.
- ○ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ○ Adult in charge of Defendant's residence who refused to give name or relationship.
- ○ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ✓ Agent or person in charge of Defendant's office or usual place of business.
- ○ _____ an officer of said Defendant company.
- ○ Other_____

## DESCRIPTION:
AGE:          HEIGHT:          WEIGHT:          RACE:          SEX:          OTHER:

On the _____ day of _____, 20____, at _____ o'clock_____.M..
Defendant not found because: ☐ Moved   ☐ Unknown   ☐ No Answer   ☐ Vacant   ☐ Other
Other: _____

NAME OF SERVER
_____ being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this
_____ day of _____ 20___

Process Server/Competent Adult _____          Sheriff _Caffrey_

RECV'D MCSO HPG
2024 DEC 30

Now, this _____ day of _____, 20_____, I do hereby deputize the Sheriff of _____ County,
To serve this ☐Summons   ☐Complaint   ☐Other_____ and make return thereof and according to Law.
By (Competent Adult): _____ County Sheriff's Check $_____

| Law Firm: Kevin P. O'Brien, Esquire C/O Legal-Ease Enterprises, Inc. | ATTEST: |
|---|---|
| Attorney's Name: Same as above   For: Plaintiff | FILED: |
| Address: 2424 E. York Street, Suite 321 | PRO PROTHY |
| Philadelphia, PA 19125 | December 23rd, 2024 |
| Telephone: 215-535-1532   Identification: 313081 | DATE |

Case ID: 241202765

LEGAL-EASE ENTERPRISES, INC.
2424 E. York Street, Suite 321
Philadelphia, PA 19125

NAPPS

National Association of
Professional Process Servers

## AFFIDAVIT OF SERVICE

*Filed and Attested by the Office of Judicial Records 09 JAN 2025 03:47 pm K. KALOGRIAS*

| PLAINTIFF(s): James Sullivan, Jr., et al | COURT TERM & NO.: 241202765 | Philadelphia | |
|---|---|---|---|
| DEFENDANT(s): DBP Partners, LP | Job Number: 12411239 | | SERVE BY: 01/22/2025 |
| SERVE AT: 1650 The Fairway Jenkintown, PA 19046 | XX Civil Action - Compl. ○ Summons ○ Writ _____ | | ○ Subpoena ○ Notice of Real Estate Sale ○ Other_____ |

SPECIAL INSTRUCTIONS:                    LAST DAY FOR SERVICE: 1/22/2025
                                         Paid

Served and made known to Steven Jenct
On the 2 day of 1 , 20 25 at 0750 o'clock A .M.,
At above address , County of mont. ,
Commonwealth of Pennsylvania, In the manner described below:
- ○ Defendant(s) personally served.
- ○ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ○ Adult in charge of Defendant's residence who refused to give name or relationship.
- ○ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ✓ Agent or person in charge of Defendant's office or usual place of business.
- ○ _____ an officer of said Defendant company.
- ○ Other_____

DESCRIPTION:
AGE:        HEIGHT:        WEIGHT:        RACE:        SEX:        OTHER:

On the _____ day of _____, 20_____, at _____ o'clock_____.M..
Defendant not found because: ☐ Moved   ☐ Unknown   ☐ No Answer   ☐ Vacant   ☐ Other
Other: _____

NAME OF SERVER
_____ being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this
_____ day of _____ 20___

RECV'D MCSO MONTCO PA
2024 DEC 30 P 2:09

Process Server/Competent Adult _____   Sheriff  Caffrey

Now, this _____ day of _____, 20_____, I do hereby deputize the Sheriff of _____ County,
To serve this ☐Summons   ☐Complaint   ☐Other_____ and make return thereof and according to Law.
By (Competent Adult): _____   County Sheriff's Check $_____

| Law Firm: Kevin P. O'Brien, Esquire C/O Legal-Ease Enterprises, Inc. Attorney's Name: Same as above For: Plaintiff Address: 2424 E. York Street, Suite 321 Philadelphia, PA 19125 Telephone: 215-535-1532 Identification: 313081 | ATTEST: FILED: PRO PROTHY December 23rd, 2024 DATE |
|---|---|

24 E. York Street, Suite 321
Philadelphia, PA 19125

NAPPS

National Association of
Professional Process Servers

Filed and Attested by the
Office of Judicial Records
02 JAN 2025 02:57 pm
K. KALOGRIAS

# AFFIDAVIT OF SERVICE

| PLAINTIFF(s): James Sullivan, Jr., et al | COURT TERM & NO.: 241202765 |  |
|---|---|---|
| DEFENDANT(s): Bryner Chevrolet, Inc. | Job Number: 12411239 | SERVE BY: 01/22/2025 |

| SERVE AT: 1650 The Fairway Jenkintown, PA 19046 | XX Civil Action - Compl. ○ Summons ○ Writ _____ | ○ Subpoena ○ Notice of Real Estate Sale ○ Other _____ |

SPECIAL INSTRUCTIONS:  LAST DAY FOR SERVICE: 1/22/2025  Paid

Served and made known to ED Brunton
On the 7 day of 1 , 20 25 at 0800 o'clock A .M.,
At above address , County of Mont. ,
Commonwealth of Pennsylvania, In the manner described below:

- ○ Defendant(s) personally served.
- ○ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ○ Adult in charge of Defendant's residence who refused to give name or relationship.
- ○ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ☒ Agent or person in charge of Defendant's office or usual place of business.
- ○ _____ an officer of said Defendant company.
- ○ Other_____

DESCRIPTION:
AGE:          HEIGHT:          WEIGHT:          RACE:          SEX:          OTHER:

On the _____ day of _____, 20_____, at _____ o'clock_____.M..
Defendant not found because: ☐ Moved   ☐ Unknown   ☐ No Answer   ☐ Vacant   ☐ Other
Other: _____

NAME OF SERVER
_____ being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this
_____ day of _____ 20___

Process Server/Competent Adult _____   Sheriff  Caffrey

Now, this _____ day of _____, 20_____, I do hereby deputize the Sheriff of _____ County,
To serve this  ☐ Summons   ☐ Complaint   ☐ Other_____ and make return thereof and according to Law.
By (Competent Adult): _____County Sheriff's Check $_____

| Law Firm: Kevin P. O'Brien, Esquire C/O Legal-Ease Enterprises, Inc. Attorney's Name: Same as above  For: Plaintiff Address: 2424 E. York Street, Suite 321 Philadelphia, PA 19125 Telephone: 215-535-1532   Identification: 313081 | ATTEST: | FILED: PRO PROTHY December 23rd, 2024 DATE |



LEGAL-EASE ENTERPRISES, INC.
2424 E. York Street, Suite 321
Philadelphia, PA 19125

## AFFIDAVIT OF SERVICE

*Filed and Attested by the
Office of Judicial Records
14 JAN 2025 02:55 pm
C. SMITH*

| PLAINTIFF(s): James Sullivan, Jr., et al | COURT TERM & NO.: 241202765 | |
|---|---|---|
| DEFENDANT(s): Kennedy Real Estate Associates Management, LLC | Job Number: 12411248 | SERVE BY: 01/22/2025 |
| SERVE AT: 620 Bustleton Pike Feasterville Trevose, PA 19053 | XX Civil Action - Compl. ○ Summons ○ Writ _____ | ○ Subpoena ○ Notice of Real Estate Sale ○ Other _____ |

SPECIAL INSTRUCTIONS:

Served and made known to _____, 20___ at ___.M.,
On the _____ day of _____
At _____
Commonwealth of Pennsylvania, In the manner described below:

- ○ Defendant(s) personally served.
- ○ Adult family member with whom said Defendant(s) reside(s). Relationship is _____
- ○ Adult in charge of Defendant's residence who refused to give name or relationship.
- ○ Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- ○ Agent or person in charge of Defendant's office or usual place of business.
- ○ _____ an officer of said Defendant company.
- ○ Other _____

DESCRIPTION:
AGE: _____  HEIGHT: _____  WEIGHT: _____  RACE: _____  SEX: _____  OTHER: _____

On the _____ day of _____, 20___, at _____ o'clock_____.M..
Defendant not found because: ☐ Moved  ☐ Unknown  ☐ No Answer  ☐ Vacant  ☐ Other
Other: _____

NAME OF SERVER _____ being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this
_____ day of _____ 20___
_____

Process Server/Competent Adult _____  Sheriff _____

Now, this __23rd__ day of __December__, 20 __24__, I do hereby deputize the Sheriff of __Bucks__ County,
To serve this ☐ Summons  XX Complaint  ☐ Other _____, and make return thereof and according to Law.
By (Competent Adult): __Joselynn Cook__  County Sheriff's Check $ __110.00__

| Law Firm: Kevin P. O'Brien, Esquire C/O Legal-Ease Enterprises, Inc. Attorney's Name: Same as above  For: Plaintiff Address: 2424 E. York Street, Suite 321 Philadelphia, PA 19125 Telephone: 215-535-1532  Identification: 313081 | ATTEST: | FILED: PRO PROTHY December 23rd, 2024 DATE |
|---|---|---|

Case ID: 241202765

# BUCKS SHERIFF'S RETURN

Case #:         **2025-91023**
Commenced: **12/23/2024**
Caption:        **SULLIVAN JR, JAMES**
                **vs.**
                **KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT LLC**

## SERVICE REQUEST

Request #:          **57748 (1 of 1)**
Request Type:       **Out of County   COMPLAINT**
Entered:            **1/7/2025 by COB\jlsommers**
Requested By:       **JAMES SULLIVAN JR**
                    **UNKNOWN**

Special Instructions:
Service To:         **KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT LLC**

Zone:        **2**
Address:     **620 BUSTLETON PIKE**
             **FEASTERVILLE TREVOSE, PA 19053**
Municipality: **LowerSouthampton TOWNSHIP**
             **Pick Up** on **1/8/2025 7:17 AM** by deputy **Deputy John Baran**

             **Served** on **1/8/2025 10:36 AM** by deputy **Deputy John Baran**

             • **Person in Charge of Business (A)(2)(iii)**

             Served To: **Ken Nixon**

Case ID: 241202765

# BUCKS SHERIFF'S RETURN



Case #:       **2025-91023**
Commenced: **12/23/2024**
Caption:      **SULLIVAN JR, JAMES**
              **vs.**
              **KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT LLC**



S57748                                    S57748

## SERVICE REQUEST

Request #:          **57748 (1 of 1)**
Request Type:       **Out of County   COMPLAINT**
Entered:            **1/7/2025 by COB\jlsommers**
Due by:             **1/22/2025**
Requested By:       **JAMES SULLIVAN JR**
                    **UNKNOWN**

Special Instructions:
Service To:         **KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT LLC**

Zone:     **2**
Address: **620 BUSTLETON PIKE**
         **FEASTERVILLE TREVOSE, PA 19053**

1/8 @ 1034 HRS
KEN
NIXON

**STAMPONE O'BRIEN DILSHEIMER HOLLOWAY**
Kevin P. O'Brien, Esquire
ID No.: 313081
500 Cottman Avenue
Cheltenham, PA 19012
(215) 663-0400
Attorney for Plaintiff



Filed and Attested by the
Office of Judicial Records
16 JAN 2025 02:48 pm
E. SMITH

---

| | |
|---|---|
| James Sullivan, Jr. Administrator of the Estate of John Michael Sullivan | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| vs. | DECEMBER TERM, 2024 |
| META PLATFORMS, INC., et al | No.: 02765 |

<u>**AFFIDAVIT OF SERVICE**</u>

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF MONTGOMERY

    I, Kevin P. O'Brien, Esquire hereby certify that I did cause a true and correct copy of Plaintiff's Complaint to be served upon the following Defendants on January 4, 2025 via US Postal First Class Certified Mail.

    Facebook Payments Inc.
    Facebook Holdings LLc
    Instagram LLC
    Meta Platforms Inc.
    Facebook Technologies LLC
    Facebook Operations LLC

    Said Green Cards and print out from the USPS Tracking are attached hereto.

_____
KEVIN P. O'BRIEN, ESQUIRE

Sworn to and Subscribed
Before me this 16th day
Of January, 2025.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
LAUREN BOFFA-TAYLOR - Notary Public
Montgomery County
My Commission Expires February 17, 2026
Commission Number 1262161

Case ID: 241202765

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Facebook Operations LLC
1 Hacker Way
Menlo Park CA
94025

9590 9402 8705 3310 8788 42

2. Article Number *(Transfer from service label)*

9589 0710 5270 0283 4494 49

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

Michi

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☑ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☑ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Facebook Technologies LLC
1 Hacker Way
Menlo Park, CA 94025

9590 9402 8705 3310 9488 80

2. Article Number *(Transfer from service label)*

9589 0710 5270 0283 4494 56

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____ ☐ Agent
                   ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

Case ID: 241202765

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Meta Platforms Inc
F/K/A Facebook Inc
1 Hacker Way
Menlo Park, CA 94025

9590 9402 8705 3310 9490 09

2. Article Number (Transfer from service label)

9589 0710 5270 0283 4494 70

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Michael

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053                Domestic Return Receipt

Case ID: 241202765

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Instagram LLC
1 Hacker Way
Menlo Park, CA 94025

9590 9402 8705 3310 8792 90

2. Article Number (Transfer from service label)

9589 0710 5270 0283 4495 00

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Michael_  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Michael

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ all Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

Case ID: 241202765

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Facebook Holdings LLC
1 Hacker Way
Menlo Park, CA 94025

9590 9402 8705 3310 9490 30

2. Article Number (Transfer from service label)

9589 0710 5270 0283 4494 63

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

M. Clon

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:           ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...il Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053     Domestic Return Receipt

Case ID: 241202765

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Facebook Payments Inc
1 Hacker Way
Menlo Park, CA 94025

9590 9402 8705 3310 9489 96

2. Article Number (Transfer from service label)

9589 0710 5270 0283 4494 87

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

McClee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Case ID: 241202765

**Tracking Number:**

## 9589071052700283449463

 Copy     Add to Informed Delivery

### Latest Update

Your item has been delivered to an agent. The item was picked up at USPS at 8:00 am on January 4, 2025 in MENLO PARK, CA 94025.

Get More Out of USPS Tracking:

 USPS Tracking Plus®

### ✓ Delivered to Agent
**Delivered to Agent, Picked up at USPS**

MENLO PARK, CA 94025
January 4, 2025, 8:00 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**

Case ID: 241202765

Remo

**Tracking Number:**

# 9589071052700283449449

 Copy     Add to Informed Delivery

## Latest Update

Your item has been delivered to an agent. The item was picked up at USPS at 8:11 am on January 4, 2025 in MENLO PARK, CA 94025.

Get More Out of USPS Tracking:

USPS Tracking Plus®

 **Delivered to Agent**
**Delivered to Agent, Picked up at USPS**

MENLO PARK, CA 94025
January 4, 2025, 8:11 am

See All Tracking History

**What Do USPS Tracking Statuses Mean?**

Case ID: 241202765

**Tracking Number:**

# 9589071052700283449487

 Copy    Add to Informed Delivery

## Latest Update

Your item has been delivered to an agent. The item was picked up at USPS at 8:01 am on January 4, 2025 in MENLO PARK, CA 94025.

**Get More Out of USPS Tracking:**

 USPS Tracking Plus®

 **Delivered to Agent**
**Delivered to Agent, Picked up at USPS**

MENLO PARK, CA 94025
January 4, 2025, 8:01 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**

Case ID: 241202765

Tracking Number:

# 9589071052700283449500

 Copy     Add to Informed Delivery

## Latest Update

Your item has been delivered to an agent. The item was picked up at USPS at 8:01 am on January 4, 2025 in MENLO PARK, CA 94025.

---

**Get More Out of USPS Tracking:**

 USPS Tracking Plus®

 **Delivered to Agent**
**Delivered to Agent, Picked up at USPS**

MENLO PARK, CA 94025
January 4, 2025, 8:01 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**

Case ID: 241202765

Tracking Number:

# 9589071052700283449470

Copy Add to Informed Delivery

Rem

## Latest Update

Your item has been delivered to an agent. The item was picked up at USPS at 8:01 am on January 4, 2025 in MENLO PARK, CA 94025.

---

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

## Delivered to Agent

**Delivered to Agent, Picked up at USPS**

MENLO PARK, CA 94025
January 4, 2025, 8:01 am

See All Tracking History

**What Do USPS Tracking Statuses Mean?**

Case ID: 241202765

Tracking Number:

# 9589071052700283449456

 Copy     Add to Informed Delivery

## Latest Update

Your item has been delivered to an agent. The item was picked up at USPS at 8:00 am on January 4, 2025 in MENLO PARK, CA 94025.

---

**Get More Out of USPS Tracking:**

 USPS Tracking Plus®



**⊘ Delivered to Agent**
**Delivered to Agent, Picked up at USPS**

MENLO PARK, CA 94025
January 4, 2025, 8:00 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?**

Case ID: 241202765

**THOMAS, THOMAS & HAFER LLP**
**By: Benjamin C. Frommer, Esquire**
**Attorney Identification No. 319993**
**By: Chelsea A. Williams, Esquire**
**Attorney Identification No. 329562**
**1600 JFK Boulevard**
**Four Penn Center, Suite 1060**
**Philadelphia, PA 19103**
**(267) 861-7585 / (267) 861-7599**
bfrommer@tthlaw.com / cwilliams@tthlaw.com

**Attorney for Defendant,**
**Bryner Chevrolet, Inc. d/b/a Bryner**
**Bryner Chevrolet**

Filed and Attested by the
Office of Judicial Records
21 JAN 2025 01:40 pm
S. GILLIAM

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
| Defendants. | |

## ENTRY OF APPEARANCE

Please enter the appearances of Benjamin C. Frommer,  Esquire and Chelsea A. Williams, Esquire, as attorneys for Defendant, Bryner Chevrolet, Inc. d/b/a Bryner Chevrolet, in the above-captioned matter.

**THOMAS, THOMAS & HAFER LLP**

Dated: 01/21/2025                    By:     /s/ *Benjamin C. Frommer*
                                            Benjamin C. Frommer, Esquire
                                            Attorney for Defendant
                                            Bryner Chevrolet, Inc. d/b/a Bryner
                                            Chevrolet

**THOMAS, THOMAS & HAFER LLP**   **Attorney for Defendant,**
**By: Benjamin C. Frommer, Esquire**  **Bryner Chevrolet, Inc. d/b/a**
**Attorney Identification No. 319993**   **Bryner Chevrolet**
**By: Chelsea A. Williams, Esquire**
**Attorney Identification No. 329562**
**1600 JFK Boulevard**
**Four Penn Center, Suite 1060**
**Philadelphia, PA 19103**
**(267) 861-7585 / (267) 861-7599**
**bfrommer@tthlaw.com / cwilliams@tthlaw.com**

---

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
|     Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
|     Defendants. | |

---

## CERTIFICATE OF SERVICE

---

Case ID: 241202765

I, Benjamin C. Frommer, Esquire, do hereby certify that a true and correct copy of the foregoing Entry of Appearance was filed this date via the Philadelphia County Court of Common Pleas E-Filing System and thereby deemed served on all counsel of record pursuant to the Pennsylvania Rules of Civil Procedure and Philadelphia County Local Rules.

**THOMAS, THOMAS & HAFER LLP**

Dated:  01/21/2025                    By:    _/s/ Benjamin C. Frommer_____
                                              Benjamin C. Frommer, Esquire
                                              Attorney for Defendant
                                              Bryner Chevrolet, Inc. d/b/a Bryner
                                              Chevrolet

**THOMAS, THOMAS & HAFER LLP**
**By: Benjamin C. Frommer, Esquire**
**Attorney Identification No. 319993**
**By: Chelsea A. Williams, Esquire**
**Attorney Identification No. 329562**
**1600 JFK Boulevard**
**Four Penn Center, Suite 1060**
**Philadelphia, PA 19103**
**(267) 861-7585 / (267) 861-7599**
bfrommer@tthlaw.com / cwilliams@tthlaw.com

**Attorney for Defendants,**
**Bryner Chevrolet, Inc. d/b/a Bryner**
**Bryner Chevrolet and**
**DBP Partners, LP**



Filed and Attested by the
Office of Judicial Records
22 JAN 2025 09:41 pm
S. GILLIAM

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
| Defendants. | |

---

**ENTRY OF APPEARANCE**

---

Please enter the appearances of Benjamin C. Frommer,  Esquire and Chelsea A. Williams,

Esquire, as attorneys for Defendant, DBP Partners, LP, in the above-captioned matter.

<div align="center">

**THOMAS, THOMAS & HAFER LLP**

</div>

Dated: 01/22/2025                  By:    /s/ *Benjamin C. Frommer*

Benjamin C. Frommer, Esquire
Attorney for Defendants,
Bryner Chevrolet, Inc. d/b/a Bryner
Chevrolet and DBP Partners, LP


By:    /s/ *Chelsea A. Williams*

Benjamin C. Frommer, Esquire
Attorney for Defendants,
Bryner Chevrolet, Inc. d/b/a Bryner
Chevrolet and DBP Partners, LP

Case ID: 241202765

**THOMAS, THOMAS & HAFER LLP**      **Attorney for Defendants,**
**By: Benjamin C. Frommer, Esquire**     **Bryner Chevrolet, Inc. d/b/a**
**Attorney Identification No. 319993**    **Bryner Chevrolet and**
**By: Chelsea A. Williams, Esquire**      **DBP Partners, LP**
**Attorney Identification No. 329562**
**1600 JFK Boulevard**
**Four Penn Center, Suite 1060**
**Philadelphia, PA 19103**
**(267) 861-7585 / (267) 861-7599**
**bfrommer@tthlaw.com / cwilliams@tthlaw.com**

---

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
| Defendants. | |

---

## CERTIFICATE OF SERVICE

---

Case ID: 241202765

I, Benjamin C. Frommer, Esquire, do hereby certify that a true and correct copy of the foregoing Entry of Appearance was filed this date via the Philadelphia County Court of Common Pleas E-Filing System and thereby deemed served on all counsel of record pursuant to the Pennsylvania Rules of Civil Procedure and Philadelphia County Local Rules.

**THOMAS, THOMAS & HAFER LLP**

Dated:  01/22/2025                    By:    _/s/ Benjamin C. Frommer_
                                             Benjamin C. Frommer, Esquire
                                             Attorney for Defendants,
                                             Bryner Chevrolet, Inc. d/b/a Bryner
                                             Chevrolet and DBP Partners, LP

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY
By:  Tara G. Nalencz, Esquire
Identification No.   94064
Office of General Counsel – Legal Division
1234 Market Street, Fifth Floor
Philadelphia, PA. 19107
Phone:   (215) 580-7565
E-Mail:   tnalencz@septa.org

Attorney for Defendants, SEPTA and
Robert Millison

Sealed and Attested by the
Office of Judicial Records
24 JAN 2025 02:40 pm
G. IMPERATO

SEPTA File No.:  C-2023-1913-001

| | |
|---|---|
| JAMES SULLIVAN, JR. ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN<br>　　　　　　Plaintiff<br><br>　　　vs.<br><br>META PLATFORMS, INC. f/k/a FACEBOOK, INC. and FACEBOOK HOLDINGS, LLC and FACEBOOK OPERATIONS, LLC and FACEBOOK PAYMENTS, INC. and FACEBOOK TECHNOLOGIES, LLC and INSTGRAM, LLC and SNAP, INC. JOHN DOE INC. 1-5 and JOHN DOE CORP 1-5 and SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA and ROBERT MILSON and BRYNER CHEVROLET, INC. d/b/a BRYNER CHEVROLET and DBP PARTNERS, LP and DB Pete, Inc. and JOHN DOE, INC., 5-10 and JOHN KENNEDY FORD OF JENKINTOWN and HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP and KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE CORP., 5-10<br>　　　　　　Defendants | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION<br><br>DECEMBER TERM, 2024<br><br>NO.: 02765 |

## ENTRY OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly enter my appearance for the Defendants, Southeastern Pennsylvania

Transportation Authority ("SEPTA") and Robert Milson (operator) in the above case.


/s/     *Tara G. Nalencz*
TARA G. NALENCZ, ESQUIRE
Attorney for Defendants, SEPTA and
Dated: January 23, 2025                     Robert Millison

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
| Defendants. | |

Filed and Attested by the
Office of Judicial Records
TY JAN 2025 09:41 am
S. GILLIAM

## ORDER

**AND NOW,** this _____ day of _____, 2025, upon consideration of the

Preliminary Objections to Plaintiff's Complaint by the Moving Defendants, Bryner Chevrolet, Inc.

d/b/a Bryner Chevrolet and DBP Partners, LP and any and all responses thereto, the Preliminary

Objections are hereby **SUSTAINED**. It is further ordered that:

Any and all claims within Plaintiff's Complaint as to Bryner Chevrolet, Inc. d/b/a Bryner

Chevrolet and DBP Partners, LP are dismissed, with prejudice;

*Alternatively*

(1) Any allegations of "attractive nuisance" are stricken from Counts V, VI, and VII, as

they pertain to Moving Defendants, are stricken with prejudice; and

(2) Any and all allegations of recklessness, reckless, and wanton/willful conduct are stricken from Count V, VI, and VII, as they pertain to Moving Defendants, are stricken with prejudice.

**BY THE COURT:**

_____, J.

Case ID: 241202765
Control No.: 25015411

**THOMAS, THOMAS & HAFER LLP**
**By: Benjamin C. Frommer, Esquire**
**Attorney Identification No. 319993**
**By: Chelsea A. Williams, Esquire**
**Attorney Identification No. 329562**
**1600 JFK Boulevard**
**Four Penn Center, Suite 1060**
**Philadelphia, PA 19103**
**(267) 861-7585 / (267) 861-7599**
bfrommer@tthlaw.com / cwilliams@tthlaw.com

**Attorney for Defendant,**
**Bryner Chevrolet, Inc. d/b/a**
**Bryner Chevrolet and DBP Partners, LP**

---

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
| Defendants. | |

---

**DEFENDANTS BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET AND DBP PARTNERS LP'S PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT**

---

Defendants Byner Chevrolet, Inc. d/b/a Bryner Chevrolet and DBP Partners LP, by and through their counsel Thomas, & Hafer, hereby files the within Preliminary Objections to Plaintiff's Complaint and aver the following in support thereof:

Case ID: 241202765
Control No.: 25015411

I.    **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

1.    Plaintiff, James Sullivan, Jr. as administrator of the Estate of John Micheal Sullivan, commenced this action, seeking recovery for the damages allegedly incurred as a result of decedent tragically stepping onto train tracks and being struck by a SEPTA train on January 4, 2023, in Jenkintown, Pennsylvania. A true and correct copy of Plaintiff's Complaint is attached hereto as "Exhibit A."

2.    Plaintiff further avers that prior to this incident, decent was unfortunately involved in a sextortion plot where he was being threatened to pay unknown sums of money to a group from Nigeria, so explicit photographs would not be released to schoolmates, his family, and the public in general. See Exhibit A at ¶ 70-80.

3.    Plaintiff complaint then described that after "unyielding threats from the sextortionists, the Plaintiff's Decedent went to a nearby SEPTA train track, where was killed by a SEPTA train." See Id. at ¶ 81.

4.    Objecting Defendant Bryner Chevrolet, Inc. d/b/a Byner Chevrolet is a car dealership that occupies the property located at 1750 the Fairway in Jenkintown, Pennsyvania.

5.    Defendant DBP Partners, LP owns the premises located at 1750 the Fairway in Jenkintown, Pennsylvania.

6.    The property owned and maintained by Objecting Defendants abuts train tracks that are used and operated by Amtrack and Septa.

7.    Plaintiff alleges that Decedent crossed through Objecting Defendant's property in order to access the SEPTA train tracks were he ultimately died. See Id. at ¶ 87.

8.    Plaintiff has deemed the decedent's death as a homicide. See Id. at ¶ 88.

Case ID: 241202765
Control No.: 25015411

9.      However, Plaintiff's complaint claims that Objecting Defendants observed the decedent "wandering in a distressed fashion in the area of the train tracks." See Id. at ¶ 138.

10.     Plaintiff further alleges Observing Defendants were negligent and reckless by observing the Decedent on their property, acting nervously, scared, and distressed in the area of the train tracks before he was struck and did not intervene or call the police. See Id. at ¶ 138 (p).

11.     While the Objecting Defendants are held to the restraints of the fact averred in Plaintiff's complaint, it is Objecting Defendants understanding and belief that Decedent's death was ruled a suicide.[1]

12.     Plaintiff seek recovery under the theories of negligence, recklessness, and willful/wanton conduct (Count V), wrongful death (Count VI), and survival action (Count VII) alleging that the Objecting Defendant breached a purported duty of care owed to the decedent to erect fencing, disallowing access to the train tracks. See Exhibit A ¶ 139 (e, f, and h).

13.     The Complaint further alleges that Objecting Defendant was aware the train tracks created an attractive nuisance to individuals in the area and/or proximity. Id. at ¶136.

14.     Objecting Defendants now submit these Preliminary Objections, as they had no duty of care under Pennsylvania law to affirmatively erect fencing to disallow access to train tracks adjacent to their property, nor can they be held liable for an "attractive nuisance" created by another party and owned, managed, and/or maintained by another party (i.e. SEPTA and/or Amtrak).

## II.    ARGUMENT

### A. LEGAL STANDARD

---

[1] If Plaintiff Decedent's death is a suicide, under McPeake v. William T. Cannon, Esquire, P.C., Plaintiff decdents's death by suicide cannot occasion a wrongful death recovery against Objecting Defendants. See McPeake v. William T. Cannon, Esquire, P.C., 381 Pa. Super. 227.

Case ID: 241202765
Control No.: 25015411

15.    Pa.R.C.P. 1028(a)(4) permits a party to object to a pleading based on legal insufficiency in the nature of a demurrer.

16.    The Pennsylvania Supreme Court has stated,

"[A] demurrer tests the legal sufficiency of the complaint. A trial court may sustain a demurrer, and thereby dismiss a claim, only when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. In determining the merits of a demurrer, all well-pleaded, material facts set forth in the complaint and all inferences fairly deducible from those facts are considered admitted and are accepted by the trial court as true; conclusions of law are neither deemed admitted nor deemed true."

Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006) (citations omitted).

(Followed by Commonwealth v. UPMC, 208 A.3d 898, 908 (Pa. 2019)).

17.    In Counts V, VI, and VII, of the Complaint, Plaintiffs attempt to assert liability claims against Objecting Defendants for negligence, wrongful death and survival.

18.    To succeed on a negligence claim, a plaintiff must prove four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's breach of duty and the plaintiff's injury; and (4) actual injury. Cooper v. Frankford Health Sys., Inc., 2008 PA Super 248, 960 A.2d 134, 140 n.2 (Pa. Super. Ct. 2008); see also R.W. v. Manzek, 585 Pa. 335, 888 A.2d 740, 746 (Pa. 2005).

19.    The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." Mistick Inc. v. Northwestern Nat'lCas. Co., 2002 PA Super 267, 806 A.2d 39, 42 (Pa. Super. 2002) (citation omitted).

20.    Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. (citation omitted),

Case ID: 241202765
Control No.: 25015411

Cooper v. Frankford Health Care System, Inc., 2008 PA Super 248, 960 A.2d 134, 2008 WL 4615714, 6 (Pa.Super.) (Pa.Super.,2008).

**Preliminary Objection in the Nature of a Motion to Dismiss and/or Strike
Plaintiff's Complaint due based upon failure to state a valid claim of negligence**

21.    "To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff." Harkins v. Zamichieli, 266 Pa. Super. 401, 405 A.2d 495, 497 (Pa. Super. 1979)(quoting Schott v. Westinghouse Electric Corporation, 436 Pa. 279, 259 A.2d 443, 445 (Pa. 1969).

22.    The sustaining of a demurrer results in the denial of a claim or the dismissal of a suit should therefore be sustained only in cases that are clear and free from doubt. R.W. v. Manzek, 585 Pa. 335, 888 A.2d 740, 749 (Pa. 2005); Bourke v. Kazaras, 2000 PA Super 29, 746 A.2d 642, 643 (Pa.Super.Ct.2000).

**a. Objecting Defendants had no duty to erect fences or barriers on its property because of its proximity to train tracks**

23.    Plaintiff avers that decedent walked through the "Premises Defendants'" properties in order to gain access train tracks which abut both properties. See Exhibit A at 87.

24.    Further, Plaintiff avers that Objecting Defendants were negligent, reckless, and/or careless by virtue of their failure to install barriers that prevented pedestrians to gain access to the train tracks, failing to install fencing along the tracks, and/or failing to repair the lack of fencing around the train tracks. See Exhibit A at 139.

25.    In short: all of Plaintiff's claims against Objecting Defendants hinge on the assertion that Defendants had a duty of care to prevent persons from crossing their property and accessing the adjacent train tracks.

26.     However, no such duty of care exists under Pennsylvania law. The Pennsylvania Commonwealth Court established in Scarborough v Scarborough, that "**it is well settled that the law imposes no duty upon a possessor of adjacent land to erect fencing or provide warnings so as to deter persons from entering a third party's property on which there exists a dangerous condition not created or maintained by the landowner and over which the landowner has no control**." Kearns v. Rollins Outdoor Advertising, Inc., 89 Pa.Commw. 596, (1985); Magner v. Baptist Church, supra; Heller v. Consolidated Rail Corporation, 576 F. Supp. 6 (E.D. Pa.1982), aff'd 720 F.2d 662 (3d Cir.1983); Cousins v. Yaeger, 394 F. Supp. 595 (E.D.Pa.1975) (emphasis added).

27.     The Court went on to state:

"…[I]t would be incongruous to impose **such a duty upon landowners adjacent to a railroad right-of-way when it long has been held that a railroad has no duty to erect fences on its right-of-way to deter trespassers**." Dugan v. Pennsylvania Railroad Company, 387 Pa. 25, 127 (1956); Malischewski v. Pennsylvania Railroad Company, supra. Cousins, 394 F. Supp. at 605. See also Lynch v. National Railroad Passenger Corporation, supra.

28.     As noted above, Objecting Defendants have no legal duty to erect fences or provide warnings to deter a person from entering  train tracks which Plaintiff acknowledges in the Complaint are not located on Objecting Defendants' property and which Objecting Defendants have no control over.

29.     While Objecting Defendants have great sympathy for Plaintiff and recognize that Plaintiff may have a cognizable claim under the entirely separate theories posited against the so-called "Social Media Defendants," Objecting Defendants nonetheless aver that this Court should not establish a new and novel theory of liability against every landowner in Pennsylvania whose property happens to abut a railroad track.

Case ID: 241202765
Control No.: 25015411

30.    Indeed – and quite to the contrary – the Courts in this Commonwealth have routinely and uniformly held that there is *no such duty*. See Scarborough, supra.

31.    Simply put: Plaintiff's Complaint fails to state a legally cognizable claim because the underlying factual basis for the claims – that Objecting Defendants failed to erect a fence along the adjacent railroad tracks – is not sufficient to establish a duty of care. to the decedent, let alone claim a duty had been breached.

32.    Absent such facts, Plaintiffs' liability claims against Objection Defendants are legally insufficient and should be dismissed pursuant to Pa.R.Civ.P. 1028(a)(4).

**b. Preliminary Objection Pursuant to Pa.R.C.P. (a)(4): Plaintiff Attempts to Allege the Application of the Attractive Nuisance Doctrine Even though it is Not Applicable to the Facts of the Case**

33.    Plaintiff alternatively claims that Objecting Defendants were aware that the train tracks, posed an attractive nuisance to individuals in the area. See Complaint at ¶ 136..

34.    Under the "attractive nuisance" doctrine, landowners have been held responsible for injuries to children caused by dangerous conditions on the land when children were to be anticipated, and the burden of making the place safe was comparatively slight in view of the serious risk involved.

35.    The Supreme Court has adopted the definition of attractive nuisance from the Restatement of the Law of Torts specifically at is applies to children.

36.    The term has been defined as follows:

A possessor of land is subject to liability for bodily harm to **young children** trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

Case ID: 241202765
Control No.: 25015411

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

See Bartleson v. Glen Alden Coal Co., 361 Pa. 519 (Pa. 1949).

37.    Plaintiff is attempting to make the claim that Objecting Defendants were aware of the "attractive nuisance" the train tracks create and thus had a duty to protect against that nuisance.

38.    However, there is no information within the Complaint that alleges Decedent was a minor at the time of the incident and upon information and belief Decedent had reached the age of majority.

39.    At a minimum, allegations related to "attractive nuisance" should be stricken without prejudice for insufficient specificity of pleading (to the extent the age of the Decedent is arguably unclear).

40.    However, to the extent that Plaintiff failed to specifically aver that the Decedent was a minor, it can be fairly assumed for purposes of the pleadings that he had reached the age of majority and, as a result, the doctrine of attractive nuisance does not apply to this case.

41.    Finally, and setting aside the application of the attractive nuisance doctrine based upon Plaintiff's age, it should further be noted that Plaintiff has specifically averred the train track reside on Defendant SEPTA's property. See Exhibit A at ¶ 123.

42.    Consequently, Plaintiff has not, and will not be able to establish, that the train tracks were a condition maintained on Objecting Defendant's property, which is a condition precedent to any attractive nuisance claim.

**WHEREFORE**, Defendants Bryner Chevrolet, Inc. d/b/a Bryner Chevrolet and DPB Partners, LP, respectfully request that this Honorable Court sustain their Preliminary Objections

Case ID: 241202765
Control No.: 25015411

to Plaintiff's Complaint and dismiss Plaintiffs' claims of negligence, wrongful death and survival with prejudice.

### Preliminary Objection in The Nature Of A Motion To Dismiss And/or Strike Plaintiffs' Allegation Of Recklessness And Willful/Wanton Conduct Including Any Future Claim Of Punitive Damages Pa.R.C.P. NO. 1028(a)(2)-(4)

43.    In support of their negligence claims against Objecting Defendants, Plaintiff inadequately avers that, the aforesaid incident was caused by the recklessness and willful/wanton conduct of the Objecting Defendants.  See Exhibit A at ¶ 139.

44.    [An] actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. United Servs. Auto. Ass'n v. Elitzky, 517 A.2d 982, 989-90 (Pa. Super. Ct. 1986) (citing Restatement (Second) of Torts § 500).

45.    "Reckless indifference to the interests of others", or as it is sometimes referred to, "wanton misconduct", means that "the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." McClellan v. HMO, 604 A.2d 1053, 1061 (Pa. Super. Ct. 1992) (citations omitted).

46.    Under Pennsylvania law, recklessness or wantonness requires a showing that the actor knew or had reason to know of facts which created a high degree of risk of physical harm to another and that the actor deliberately proceeded to act, or failed to act, in conscious disregard of, or indifference to, that risk.  SHV Coal, Inc. v. Cont'l Grain Co., 587 A.2d 702, 704 (Pa. 1991)

Case ID: 241202765
Control No.: 25015411

(discussing the type of recklessness that must be shown for a finding of punitive damages under Pennsylvania law).

47.    In the instant case, Plaintiff's Complaint is devoid of facts demonstrating that Objecting Defendants knew or had reason to know that their conduct created an unreasonable risk of physical harm to another or that such risk was substantially greater than that which is necessary to make its conduct negligent.

48.    Further, Plaintiff failed to aver facts tending to show that Objecting Defendants had the state of mind required for a finding of recklessness and gross negligence in that Plaintiff failed to aver any facts tending to show that Objecting Defendants deliberately acted, or failed to act, in conscious disregard of a known high risk of harm to another.

49.    Thus, even when read in the light most favorable to Plaintiff, the factual allegations set forth in Plaintiff's Complaint support no more than a claim for ordinary negligence.

50.    Moreover, while Plaintiff's Complaint avers Objecting Defendants acted recklessly, it does not set forth a claim for punitive damages. ***Yet, the failure to do so is not necessarily fatal to a future claim.***

51.    A plaintiff may amend a complaint to include a claim for punitive damages after the expiration of the two-year statute of limitations where the complaint states a basis for the same. Willett v. Evergreen Homes, Inc., 595 A.2d 164 (Pa. Super. Ct. 1991); 5 Std. Pa. Prac. 2d § 24:71 (October 2010). See Pl.'s Compl. Emphasis added.

52.    "Gross negligence, as defined by the courts for the purpose of certain statutory provisions, is insufficient as a matter of law to sustain a claim of punitive damages.

53.    A showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed." Phillips v. Cricket Lighters, 584 Pa. 179, 883

A.2d 439, 445 (2005) citing SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 705 (1991).

54.    To establish the imposition of punitive damages, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to "intentional, willful, wanton or reckless conduct...." *Id.* at 704 (citation omitted).

55.    From SHV Coal and Phillips, the Pennsylvania Supreme Court has clearly made a distinction between negligence and punitive damages claims, with a plaintiff being required to meet a far lesser burden to establish a negligence claim than that which is imposed in connection with a punitive damages claim. This distinction is an important one.

56.    Damages awarded in a negligence action compensate a plaintiff for his or her losses. Punitive damages,  in contrast, are not awarded to compensate the plaintiff for her damages but rather to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious. G.J.D. by G.J.D. v. Johnson, 552 Pa. 169, 713 A.2d 1127, 1129 (1998).

57.    Such a punishment should not be meted out to every defendant who is found to have acted negligently; rather, it should be reserved for those cases in which the defendant has acted in a particularly outrageous fashion.

58.    Accordingly, since Plaintiff failed to plead any facts which would support its allegation that Objecting Defendants were reckless, said allegation of recklessness and gross negligence should be stricken from Plaintiff's Complaint so that Plaintiffs cannot assert a future claim for punitive damages.

**WHEREFORE**, it is respectfully requested that this Honorable Court strike and/or dismiss the allegations of recklessness and wanton/willful conduct against Defendant Bryner Chevrolet

d/b/a Byner Chevrolet and DBP Partners, LP from Plaintiff's Complaint and any future claims of punitive damages with prejudice.

## III.    CONCLUSION

59.    Again: the underlying factual averment against Objecting Defendants is that they failed to erect a fence to obstruct access to the adjacent railroad tracks, property which Plaintiff alleges was owned by SEPTA.

60.    Pennsylvania law imposes no duty upon Defendants to erect such a fence. Moreover, Plaintiff's Complaint acknowledges that the Decedent crossed Objecting Defendants' property and entered onto the SEPTA-owned tracks of his own accord and volition.

61.    While the Complaint stops short of averring that the Decedent intentionally took his own life, the allegations against the "Social Media Defendants" makes clear that the Decedent's behavior that day was not caused by any act or omission of Objecting Defendants.

62.    Simply put: Objecting Defendant cannot and should be held liable for an act which occurred on another party's property (SEPTA) merely because the Decedent happened to cross Objecting Defendants' property in order to get to those tracks.

63.    Plaintiff's Complaint is legally insufficient to support a valid cause of action against Objecting Defendants.

64.    Additionally and alternatively, this Court should strike the insufficiently pled allegations against Objecting Defendants relating to any alleged "attractive nuisance" since (a) the Decedent is not alleged to be a minor at the time of the incident and (b) the incident did not allegedly occur on Objecting Defendants' property.

65.    Finally, Objecting Defendants maintain that, at a minimum, there is no valid basis for claims of willful, wanton, or reckless conduct, and those claims should be stricken.

WHEREFORE, Objection Defendants respectfully request that this Court sustain these Preliminary Objections and enter an Order as Proposed, dismissing Plaintiff's Claims against Objecting Defendants in their entirety, with prejudice.

Respectfully submitted,

**THOMAS, THOMAS & HAFER LLP**

Dated: 01/22/2025                 By:    /s/ Benjamin C. Frommer
                                         Benjamin C. Frommer, Esquire
                                         Chelsea A. Williams, Esquire
                                         Attorney for Defendant
                                         Bryner Chevrolet, Inc. d/b/a Bryner
                                         Chevrolet and DBP Partners, Inc.

Case ID: 241202765
Control No.: 25015411

**THOMAS, THOMAS & HAFER LLP**          **Attorney for Defendant,**
**By: Benjamin C. Frommer, Esquire**          **Bryner Chevrolet, Inc. d/b/a**
**Attorney Identification No. 319993**          **Bryner Chevrolet and DBP Partners, LP**
**By: Chelsea A. Williams, Esquire**
**Attorney Identification No. 329562**
**1600 JFK Boulevard**
**Four Penn Center, Suite 1060**
**Philadelphia, PA 19103**
**(267) 861-7585 / (267) 861-7599**
**bfrommer@tthlaw.com** / **cwilliams@tthlaw.com**

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANTS BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET AND DBP PARTNERS LP'S PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT**

Case ID: 241202765
Control No.: 25015411

## I.    MATTER BEFORE THE COURT

Presently before the Court are the Preliminary Objections of Defendant, Bryner Chevrolet, Inc. d/b/a Bryner Chevrolet and DBP Partner's (hereinafter "Objecting Defendants"), to Plaintiff's Complaint.

## II.    STATEMENT OF QUESTIONS INVOLVED

**A.    Should Plaintiff's Complaint asserting negligence, wrongful death, and survival action, be dismissed where Plaintiff has failed to demonstrate a legally sufficient claim for negligence against Objecting Defendants and where Pennsylvania has never established a duty of care upon landowners to prevent access to adjacent railway tracks?**

**Suggested Answer:   Yes.**

**B**.    **Should Plaintiff's Allegations and Mentions of Attractive Nuisance against Objecting Defendants be Stricken from the Amended Complaint as the Doctrine is Inapplicable to the Facts of the Case?**

**Suggested Answer**:   **Yes.**

**C.    Should Plaintiff's Allegations and Mentions of Recklessness and Wanton/willful conduct against Objection Defendants be Stricken as Plaintiffs Failed to Allege Specific Facts Establishing Conduct that Would be Deemed Reckless?**

**Suggested Answer:   Yes.**

## III.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff, James Sullivan, Jr. as administrator of the Estate of John Micheal Sullivan, commenced this action, seeking recovery for the damages allegedly incurred as a result of decedent tragically stepping onto train tracks and being struck by a SEPTA train on January 4, 2023, in Jenkintown, Pennsylvania. A true and correct copy of Plaintiff's Complaint is attached hereto as "Exhibit A." Plaintiff further avers that prior to this incident, decent was unfortunately involved in a sextortion plot where he was being threatened to pay unknown sums of money to a group from Nigeria, so explicit photographs would not be released to schoolmates, his family, and the public

Case ID: 241202765
Control No.: 25015411

in general. See Exhibit A at ¶ 70-80. Plaintiff complaint then described that after "unyielding threats from the sextortionists, the Plaintiff's Decedent went to a nearby SEPTA train track, where was killed by a SEPTA train." See Id. at ¶ 81.

Objecting Defendant Bryner Chevrolet, Inc. d/b/a Byner Chevrolet is a car dealership that occupies the property located at 1750 the Fairway in Jenkintown, Pennsyvania. Defendant DBP Partners, LP owns the premises located at 1750 the Fairway in Jenkintown, Pennsylvania. The property owned and maintained by Objecting Defendants abuts train tracks that are used and operated by Amtrak and Septa. Plaintiff alleges that Decedent crossed through Objecting Defendant's property in order to access the SEPTA train tracks were he ultimately died. See Id. at ¶ 87.

Plaintiff has deemed the decedent's death as a homicide. See Id. at ¶ 88. However, Plaintiff's complaint claims that Objecting Defendants observed the decedent "wandering in a distressed fashion in the area of the train tracks." See Id. at ¶ 138. Plaintiff further alleges Observing Defendants were negligent and reckless by observing the Decedent on their property, acting nervously, scared, and distressed in the area of the train tracks before he was struck and did not intervene or call the police. See Id. at ¶ 138 (p). While the Objecting Defendants are constrained to accept as true the well-pled facts averred in Plaintiff's complaint, it is Objecting Defendants understanding and belief that Decedent's death was the result of his intentional conduct (which may or may not have been caused by significant mental health distress).[2]

---

[2] If Plaintiff Decedent's death is deemed a suicide, under McPeake v. William T. Cannon, Esquire, P.C., Plaintiff decedents's death by suicide cannot occasion a wrongful death recovery against Objecting Defendants. See McPeake v. William T. Cannon, Esquire, P.C., 381 Pa. Super. 227. Moving Defendants do not raise their legal demurrer at this time on that particular issue because, as currently pled, the Complaint describes the cause of death as "homicide."

Plaintiff seeks recovery under the theories of negligence, recklessness, and willful/wanton conduct (Count V), wrongful death (Count VI), and survival action (Count VII) alleging that the Objecting Defendant breached a purported duty of care owed to the decedent to erect fencing, disallowing access to the train tracks. See Exhibit A ¶ 139 (e, f, and h). The Complaint further alleges that Objecting Defendant was aware the train tracks created an attractive nuisance to individuals in the area and/or proximity. Id. at ¶136.

Objecting Defendants now submit these Preliminary Objections, as they had no duty of care under Pennsylvania law to affirmatively erect fencing to disallow access to train tracks adjacent to their property, nor can they be held liable for an "attractive nuisance" created by another party and owned, managed, and/or maintained by another party (i.e. SEPTA and/or Amtrak).

## IV.    ARGUMENT

### A. LEGAL STANDARD

Pa.R.C.P. 1028(a)(4) permits a party to object to a pleading based on legal insufficiency in the nature of a demurrer.

The Pennsylvania Supreme Court has stated,

> "[A] demurrer tests the legal sufficiency of the complaint. A trial court may sustain a demurrer, and thereby dismiss a claim, only when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. In determining the merits of a demurrer, all well-pleaded, material facts set forth in the complaint and all inferences fairly deducible from those facts are considered admitted and are accepted by the trial court as true; conclusions of law are neither deemed admitted nor deemed true."

Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006) (citations omitted).

(Followed by Commonwealth v. UPMC, 208 A.3d 898, 908 (Pa. 2019)).

Case ID: 241202765
Control No.: 25015411

In Counts V, VI, and VII, of the Complaint, Plaintiffs attempt to assert liability claims against Objecting Defendants for negligence, wrongful death and survival. To succeed on a negligence claim, a plaintiff must prove four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's breach of duty and the plaintiff's injury; and (4) actual injury. Cooper v. Frankford Health Sys., Inc., 2008 PA Super 248, 960 A.2d 134, 140 n.2 (Pa. Super. Ct. 2008); see also R.W. v. Manzek, 585 Pa. 335, 888 A.2d 740, 746 (Pa. 2005).

The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." Mistick Inc. v. Northwestern Nat'lCas. Co., 2002 PA Super 267, 806 A.2d 39, 42 (Pa. Super. 2002) (citation omitted).

Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. (citation omitted), Cooper v. Frankford Health Care System, Inc., 2008 PA Super 248, 960 A.2d 134, 2008 WL 4615714, 6 (Pa.Super.) (Pa.Super.,2008).

### Preliminary Objection in the Nature of a Motion to Dismiss and/or Strike Plaintiff's Complaint due based upon failure to state a valid claim of negligence

"To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff." Harkins v. Zamichieli, 266 Pa. Super. 401, 405 A.2d 495, 497 (Pa. Super. 1979)(quoting Schott v. Westinghouse Electric Corporation, 436 Pa. 279, 259 A.2d 443, 445 (Pa. 1969).

The sustaining of a demurrer results in the denial of a claim or the dismissal of a suit and should therefore be sustained only in cases that are clear and free from doubt. R.W. v. Manzek,

Case ID: 241202765
Control No.: 25015411

585 Pa. 335, 888 A.2d 740, 749 (Pa. 2005); Bourke v. Kazaras, 2000 PA Super 29, 746 A.2d 642, 643 (Pa.Super.Ct.2000).

### a. Objecting Defendants had no duty to erect fences or barriers on its property because of its proximity to train tracks

Plaintiff avers that decedent walked through the "Premises Defendants'" properties in order to gain access train tracks which abut both properties. See Exhibit A at 87. Further, Plaintiff avers that Objecting Defendants were negligent, reckless, and/or careless by virtue of their failure to install barriers that prevented pedestrians to gain access to the train tracks, failing to install fencing along the tracks, and/or failing to repair the lack of fencing around the train tracks. See Exhibit A at 139. In short: all of Plaintiff's claims against Objecting Defendants hinge on the assertion that Defendants had a duty of care to prevent persons from crossing their property and accessing the adjacent train tracks.

However, no such duty of care exists under Pennsylvania law. The Pennsylvania Commonwealth Court established in Scarborough v Scarborough, that "**it is well settled that the law imposes no duty upon a possessor of adjacent land to erect fencing or provide warnings so as to deter persons from entering a third party's property on which there exists a dangerous condition not created or maintained by the landowner and over which the landowner has no control**." Kearns v. Rollins Outdoor Advertising, Inc., 89 Pa.Commw. 596, (1985); Magner v. Baptist Church, supra; Heller v. Consolidated Rail Corporation, 576 F. Supp. 6 (E.D. Pa.1982), aff'd 720 F.2d 662 (3d Cir.1983); Cousins v. Yaeger, 394 F. Supp. 595 (E.D.Pa.1975) (emphasis added).

The Court went on to state:

"…[I]t would be incongruous to impose **such a duty upon landowners adjacent to a railroad right-of-way when it long has been held that a railroad has no duty to erect fences on its right-of-way to deter trespassers**." Dugan v.

Case ID: 241202765
Control No.: 25015411

<u>Pennsylvania Railroad Company</u>, 387 Pa. 25, 127 (1956); <u>Malischewski v. Pennsylvania Railroad Company</u>, supra. <u>Cousins</u>, 394 F. Supp. at 605. See also <u>Lynch v. National Railroad Passenger Corporation</u>, supra.

As noted above, Objecting Defendants have no legal duty to erect fences or provide warnings to deter a person from entering train tracks which Plaintiff acknowledges in the Complaint are not located on Objecting Defendants' property and which Objecting Defendants have no control over.

While Objecting Defendants have great sympathy for Plaintiff and recognize that Plaintiff may have a cognizable claim under the entirely separate theories posited against the so-called "Social Media Defendants," Objecting Defendants nonetheless aver that this Court should not establish a new and novel theory of liability against every landowner in Pennsylvania whose property happens to abut a railroad track. Indeed – and quite to the contrary – the Courts in this Commonwealth have routinely and uniformly held that there is *no such duty*. <u>See</u> <u>Scarborough</u>, <u>supra</u>.

Simply put: Plaintiff's Complaint fails to state a legally cognizable claim because the underlying factual basis for the claims – that Objecting Defendants failed to erect a fence along the adjacent railroad tracks – is not sufficient to establish a duty of care. to the decedent, let alone claim a duty had been breached. Absent such facts, Plaintiffs' liability claims against Objection Defendants are legally insufficient and should be dismissed pursuant to Pa.R.Civ.P. 1028(a)(4).

**b. Preliminary Objection Pursuant to Pa.RCP. (a)(4): Plaintiff Attempts to Allege the Application of the Attractive Nuisance Doctrine Even though it is Not Applicable to the Facts of the Case**

Plaintiff alternatively claims that Objecting Defendants were aware that the train tracks, = posed an attractive nuisance to individuals in the area. <u>See</u> Complaint at ¶ 136..

Case ID: 241202765
Control No.: 25015411

Under the "attractive nuisance" doctrine, landowners have been held responsible for injuries to children caused by dangerous conditions on the land when children were to be anticipated, and the burden of making the place safe was comparatively slight in view of the serious risk involved. The Supreme Court has adopted the definition of attractive nuisance from the Restatement of the Law of Torts specifically at is applies to children.

> The term has been defined as follows:
>
> A possessor of land is subject to liability for bodily harm to **young children** trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if
> (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and
> (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
> (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

See Bartleson v. Glen Alden Coal Co., 361 Pa. 519 (Pa. 1949).

Plaintiff is attempting to make the claim that Objecting Defendants were aware of the "attractive nuisance" the train tracks create and thus had a duty to protect against that nuisance. However, there is no information within the Complaint that alleges Decedent was a minor at the time of the incident and upon information and belief Decedent had reached the age of majority. At a minimum, allegations related to "attractive nuisance" should be stricken without prejudice for insufficient specificity of pleading (to the extent the age of the Decedent is arguably unclear). However, to the extent that Plaintiff failed to specifically aver that the Decedent was a minor, it can be fairly assumed for purposes of the pleadings that he had reached the age of majority and, as a result, the doctrine of attractive nuisance does not apply to this case.

Case ID: 241202765
Control No.: 25015411

Finally, and setting aside the application of the attractive nuisance doctrine based upon Plaintiff's age, it should further be noted that Plaintiff has specifically averred the train track reside on Defendant SEPTA's property. See Exhibit A at ¶ 123. Consequently, Plaintiff has not, and will not be able to establish, that the train tracks were a condition maintained on Objecting Defendant's property, which is a condition precedent to any attractive nuisance claim.

**WHEREFORE**, Defendants Bryner Chevrolet, Inc. d/b/a Bryner Chevrolet and DPB Partners, LP, respectfully request that this Honorable Court sustain their Preliminary Objections to Plaintiff's Complaint and dismiss Plaintiff's claims of negligence, wrongful death and survival with prejudice.

### Preliminary Objection in The Nature Of A Motion To Dismiss And/or Strike Plaintiffs' Allegation Of Recklessness And Willful/Wanton Conduct Including Any Future Claim Of Punitive Damages Pa.R.C.P. NO. 1028(a)(2)-(4)

In support of their negligence claims against Objecting Defendants, Plaintiff inadequately avers that, the aforesaid incident was caused by the recklessness and willful/wanton conduct of the Objecting Defendants. See Exhibit A at ¶ 139.

[An] actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. United Servs. Auto. Ass'n v. Elitzky, 517 A.2d 982, 989-90 (Pa. Super. Ct. 1986) (citing Restatement (Second) of Torts § 500).

"Reckless indifference to the interests of others", or as it is sometimes referred to, "wanton misconduct", means that "the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and

Case ID: 241202765
Control No.: 25015411

so great as to make it highly probable that harm would follow." McClellan v. HMO, 604 A.2d 1053, 1061 (Pa. Super. Ct. 1992) (citations omitted). Under Pennsylvania law, recklessness or wantonness requires a showing that the actor knew or had reason to know of facts which created a high degree of risk of physical harm to another and that the actor deliberately proceeded to act, or failed to act, in conscious disregard of, or indifference to, that risk. SHV Coal, Inc. v. Cont'l Grain Co., 587 A.2d 702, 704 (Pa. 1991) (discussing the type of recklessness that must be shown for a finding of punitive damages under Pennsylvania law).

In the instant case, Plaintiff's Complaint is devoid of facts demonstrating that Objecting Defendants knew or had reason to know that their conduct created an unreasonable risk of physical harm to another or that such risk was substantially greater than that which is necessary to make its conduct negligent. Further, Plaintiff failed to aver facts tending to show that Objecting Defendants had the state of mind required for a finding of recklessness and gross negligence in that Plaintiff failed to aver any facts tending to show that Objecting Defendants deliberately acted, or failed to act, in conscious disregard of a known high risk of harm to another. Thus, even when read in the light most favorable to Plaintiff, the factual allegations set forth in Plaintiff's Complaint support no more than a claim for ordinary negligence.

Moreover, while Plaintiff's Complaint avers Objecting Defendants acted recklessly, it does not set forth a claim for punitive damages. ***Yet, the failure to do so is not necessarily fatal to a future claim.*** A plaintiff may amend a complaint to include a claim for punitive damages after the expiration of the two-year statute of limitations where the complaint states a basis for the same. Willett v. Evergreen Homes, Inc., 595 A.2d 164 (Pa. Super. Ct. 1991); 5 Std. Pa. Prac. 2d § 24:71 (October 2010). See Pl.'s Compl. Emphasis added.

Case ID: 241202765
Control No.: 25015411

"Gross negligence, as defined by the courts for the purpose of certain statutory provisions, is insufficient as a matter of law to sustain a claim of punitive damages. A showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed." Phillips v. Cricket Lighters, 584 Pa. 179, 883 A.2d 439, 445 (2005) citing SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 705 (1991). To establish the imposition of punitive damages, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to "intentional, willful, wanton or reckless conduct...." Id. at 704 (citation omitted).

From SHV Coal and Phillips, the Pennsylvania Supreme Court has clearly made a distinction between negligence and punitive damages claims, with a plaintiff being required to meet a far lesser burden to establish a negligence claim than that which is imposed in connection with a punitive damages claim. This distinction is an important one. Damages awarded in a negligence action compensate a plaintiff for his or her losses. Punitive damages,  in contrast, are not awarded to compensate the plaintiff for her damages but rather to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious. G.J.D. by G.J.D. v. Johnson, 552 Pa. 169, 713 A.2d 1127, 1129 (1998).

Such a punishment should not be meted out to every defendant who is found to have acted negligently; rather, it should be reserved for those cases in which the defendant has acted in a particularly outrageous fashion. Accordingly, since Plaintiff failed to plead any facts which would support its allegation that Objecting Defendants were reckless, said allegation of recklessness and gross negligence should be stricken from Plaintiff's Complaint so that Plaintiffs cannot assert a future claim for punitive damages.

**WHEREFORE**, it is respectfully requested that this Honorable Court strike and/or dismiss the allegations of recklessness and wanton/willful conduct against Defendants Bryner Chevrolet d/b/a Byner Chevrolet and DBP Partners, LP from Plaintiff's Complaint and any future claims of punitive damages with prejudice.

## V. CONCLUSION

The underlying factual averment against Objecting Defendants is that they allegedly failed to erect a fence to obstruct access to the adjacent railroad tracks where Plaintiff-Decedent tragically lost his life. Plaintiff acknowledges through the Complaint that this tragedy occurred on the property owned by SEPTA, over which Objecting Defendants had absolutely no dominion or control. The sole basis for Plaintiff's theory of liability is that Objecting Defendants allegedly failed to prevent the Decedent from entering upon SEPTA's property.

Pennsylvania law imposes no duty upon Defendants to erect a fence between its own property and SEPTA's. Moreover, Plaintiff's Complaint acknowledges that the Decedent crossed Objecting Defendants' property and entered onto the SEPTA-owned tracks of his own accord and volition. While the Complaint stops short of averring that the Decedent intentionally took his own life, the allegations against the "Social Media Defendants" makes clear that the Decedent's behavior that day was not caused by any alleged act or omission of Objecting Defendants.

Simply put: Objecting Defendant cannot and should be held liable for an act which occurred on another party's property (SEPTA) merely because the Decedent happened to cross Objecting Defendants' property in order to get to those tracks. Plaintiff's Complaint is legally insufficient to support a valid cause of action against Objecting Defendants.

Additionally and alternatively, this Court should strike the insufficiently pled allegations against Objecting Defendants relating to any alleged "attractive nuisance" since (a) the Decedent

Case ID: 241202765
Control No.: 25015411

is not alleged to be a minor at the time of the incident and (b) the incident did not allegedly occur on Objecting Defendants' property. Finally, Objecting Defendants maintain that, at a minimum, there is no valid basis for claims of willful, wanton, or reckless conduct, and those claims should be stricken.

Respectfully submitted,

**THOMAS, THOMAS & HAFER LLP**

Dated: 01/22/2025            By:     /s/ *Benjamin C. Frommer*
                                     Benjamin C. Frommer, Esquire
                                     Chelsea A. Williams, Esquire
                                     Attorney for Defendants
                                     Bryner Chevrolet, Inc. d/b/a Bryner
                                     Chevrolet and DBP Partners, Inc.

**THOMAS, THOMAS & HAFER LLP**
**By: Benjamin C. Frommer, Esquire**
**Attorney Identification No. 319993**
**By: Chelsea A. Williams, Esquire**
**Attorney Identification No. 329562**
**1600 JFK Boulevard**
**Four Penn Center, Suite 1060**
**Philadelphia, PA 19103**
**(267) 861-7585 / (267) 861-7599**
**bfrommer@tthlaw.com / cwilliams@tthlaw.com**

**Attorney for Defendants,**
**Bryner Chevrolet, Inc. d/b/a**
**Bryner Chevrolet and**
**DBP Partners, LP**

| | |
|---|---|
| JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | NO.: 241202765 |
| v. | CIVIL ACTION |
| META PLATFORMS, INC. F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE INC. 1-5, JOHN DOE CORP. 1-5, SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY A/K/A SEPTA, ROBERT MILSON, BRYNER CHEVROLET, INC. D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC. 5-10, JOHN KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT, LLC and JOHN DOE COPR. 5-10, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, Benjamin C. Frommer, Esquire, do hereby certify that a true and correct copy of the foregoing Preliminary Objections was filed this date via the Philadelphia County Court of

Case ID: 241202765
Control No.: 25015411

Common Pleas E-Filing System and thereby deemed served on all counsel of record pursuant to

the Pennsylvania Rules of Civil Procedure and Philadelphia County Local Rules.

**THOMAS, THOMAS & HAFER LLP**

Dated:  01/22/2025                    By:     /s/ *Benjamin C. Frommer*
                                                        Benjamin C. Frommer, Esquire
                                                        Attorney for Defendants
                                                        Bryner Chevrolet, Inc. d/b/a Bryner
                                                        Chevrolet and DBP Partners, LP

Case ID: 241202765
Control No.: 25015411

# EXHIBIT "A"

Case ID: 241202765
Control No.: 25015411

**STAMPONE O'BRIEN DILSHEIMER LAW**
BY:  Kevin P. O'Brien, Esquire
ID No.:  313081
BY:  Tyler Stampone, Esquire
ID No.:  324400
500 Cottman Avenue
Cheltenham, PA 19012
(215)663-0400

*Filed and Attested by the Office of Judicial Records 23 DEC 2024 03:47 pm L. BREWINGTON*

**DICELLO LEVITT**
BY:     Diandra Debrosse, Esquire *(pro hac vice forthcoming)*
        Eli Hare, Esquire *(pro hac vice forthcoming)*
        Grant Patterson, Esquire *(pro hac vice forthcoming)*
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
*Attorneys for Plaintiff*                         THIS IS A MAJOR JURY MATTER

---

James Sullivan, Jr. Administrator                 COURT OF COMMON PLEAS
of the Estate of John Michael Sullivan            PHILADELPHIA COUNTY
619 Edgley Avenue
Glenside, PA 19038

vs.

META PLATFORMS, INC. f/k/a                        DECEMBER TERM, 2024
FACEBOOK, INC.
1 Hacker Way
Menlo Park, California 94025                       NO.:

AND

FACEBOOK HOLDINGS, LLC
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK OPERATIONS, LLC
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK PAYMENTS, INC.
1 Hacker Way
Menlo Park, California 94025

AND

Case ID: 241202765
Control No.: 25015411

FACEBOOK TECHNOLOGIES, LLC
1 Hacker Way
Menlo Park, California 94025

AND

INSTGRAM, LLC
1 Hacker Way
Menlo Park, California 94025

AND

SNAP, INC.
2772 Donald Douglass Loop North
Santa Monica, CA 90405

AND

JOHN DOE INC. 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN DOE CORP 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

SOUTHEASTERN PENNSYLVANIA
TRANSIT AUTHORITY A/K/A
SEPTA
1234 Market Street
Philadelphia, PA, 19107

AND

ROBERT MILSON
1234 Market Street
Philadelphia, PA, 19107

AND

BRYNER CHEVROLET, INC. d/b/a
BRYNER CHEVROLET
1750 The Fairway
Jenkintown, PA 19046

Case ID: 241202765
Control No.: 25015411

AND

DBP PARTNERS, LP
1750 The Fairway
Jenkintown, PA 19046

AND

DB Pete, Inc.,
1750 The Fairway
Jenkintown, PA 19046

AND

JOHN DOE, INC., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN KENNEDY FORD OF JENKINTOWN
1650 The Fairway
Jenkintown, PA 19046

AND

HOPKINS FORD, INC.,
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES, LP
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES
MANAGEMENT, LLC
620 Bustleton Pike
Feasterville Trevose, PA 19053

AND

JOHN DOE CORP., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

Case ID: 241202765
Control No.: 25015411

## PLAINTIFF'S COMPLAINT IN A CIVIL ACTION

**NOTICE**

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance person-ally or by attorney and filing in writing with the court your defense objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, PA  19107
(215) 238-1701

**AVISO**

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea a visado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede pere dinero o sus propiedades u otros derechos importantes para usted.

Lleva esta demanda a un abogado immediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion de Licenciados
de Filadelfia
Servicio de Referencia e
Informacion Legal
One Reading Center
Filadelfia, PA  19107
(215) 238-1701

Case ID: 241202765
Control No.: 25015411

**STAMPONE O'BRIEN DILSHEIMER LAW**
BY:  Kevin P. O'Brien, Esquire
ID No.:  313081
BY:  Tyler Stampone, Esquire
ID No.:  324400
500 Cottman Avenue
Cheltenham, PA 19012
(215)663-0400

**DICELLO LEVITT**
BY:     Diandra Debrosse, Esquire *(pro hac vice forthcoming)*
        Eli Hare, Esquire *(pro hac vice forthcoming)*
        Grant Patterson, Esquire *(pro hac vice forthcoming)*
505 20th Street North, Suite 1500
Birmingham, Alabama 35203
*Attorneys for Plaintiff*                          THIS IS A MAJOR JURY MATTER

---

James Sullivan, Jr. Administrator                 COURT OF COMMON PLEAS
of the Estate of John Michael Sullivan            PHILADELPHIA COUNTY
619 Edgley Avenue
Glenside, PA 19038

vs.

META PLATFORMS, INC. f/k/a                         DECEMBER TERM, 2024
FACEBOOK, INC.
1 Hacker Way
Menlo Park, California 94025                        NO.:

AND

FACEBOOK HOLDINGS, LLC
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK OPERATIONS, LLC
1 Hacker Way
Menlo Park, California 94025

AND

FACEBOOK PAYMENTS, INC.
1 Hacker Way
Menlo Park, California 94025

AND

Case ID: 241202765
Control No.: 25015411

FACEBOOK TECHNOLOGIES, LLC
1 Hacker Way
Menlo Park, California 94025

AND

INSTGRAM, LLC
1 Hacker Way
Menlo Park, California 94025

AND

SNAP, INC.
2772 Donald Douglass Loop North
Santa Monica, CA 90405

AND

JOHN DOE INC. 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN DOE CORP 1-5
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

SOUTHEASTERN PENNSYLVANIA
TRANSIT AUTHORITY A/K/A
SEPTA
1234 Market Street
Philadelphia, PA, 19107

AND

ROBERT MILSON
1234 Market Street
Philadelphia, PA, 19107

AND

BRYNER CHEVROLET, INC. d/b/a
BRYNER CHEVROLET

2

Case ID: 241202765
Control No.: 25015411

1750 The Fairway
Jenkintown, PA 19046

AND

DBP PARTNERS, LP
1750 The Fairway
Jenkintown, PA 19046

AND

DB Pete, Inc.,
1750 The Fairway
Jenkintown, PA 19046

AND

JOHN DOE, INC., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

AND

JOHN KENNEDY FORD OF JENKINTOWN
1650 The Fairway
Jenkintown, PA 19046

AND

HOPKINS FORD, INC.,
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES, LP
1650 The Fairway
Jenkintown, PA 19046

AND

KENNEDY REAL ESTATE ASSOCIATES
MANAGEMENT, LLC
620 Bustleton Pike
Feasterville Trevose, PA 19053

AND

3

Case ID: 241202765
Control No.: 25015411

JOHN DOE CORP., 5-10
A Fictitious Name Designated Pursuant to
The Pennsylvania Rules of Civil Procedure

## PLAINTIFF'S COMPLAINT IN A CIVIL ACTION

1.     Plaintiff's decedent John Michael Sullivan was an individual and citizen of the Commonwealth of Pennsylvania, who suffered a wrongful death on or about January 4, 2023.

2.     Plaintiff, James Sullivan, Jr., was appointed Administrator of the Estate of John Michael Sullivan on April 10th, 2023.  Said estate has a mailing address of 619 Edgley Ave, Glenside, PA 19038.  A copy of the Letters of Administration are attached hereto as Exhibit "A".

3.     Plaintiffs Kathleen Sullivan and James Sullivan, Jr., are adult individuals with a service address of 619 Edgley Ave, Glenside, PA 19038 and who were at all times relevant hereto the parents and natural guardians of Plaintiff's Decedent John Michael Sullivan.

## THE SOCIAL MEDIA DEFENDANTS

4.     Defendant, Meta Platforms, Inc., f/k/a Facebook, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware licensed to transact business in the Commonwealth of Pennsylvania, with a principal place of business and/or a service address located at 1 Hacker Way, Menlo Park, California.

5.     Defendant, Facebook Holdings, LLC is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

4

Case ID: 241202765
Control No.: 25015411

6.      Defendant, Facebook Operations, LLC is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

7.      Defendant, Facebook Technologies, LLC, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

8.      Defendant, Instagram, LLC is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the State of Delaware, with a principal place of business or a service address located at 1 Hacker Way, Menlo Park, California.

9.      Defendant, SNAP, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal organized under the laws of the State of Delaware, with a principal place of business and/or a service address located at 2772 Donald Douglass Loop North, Santa Monica, CA 90405.

10.     Defendant, JOHN DOE Inc., 1-5 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity which has not been able to be identified despite significant investigation, but who was in charge of, or had responsibility for overseeing the design, coding, safety, testing, engineering, warnings, of the Social Media Applications Instagram and Facebook and is identified pursuant to Pa. R.C.P. 2005.

11.     Defendant, JOHN DOE Corp 1-5 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity

Case ID: 241202765
Control No.: 25015411

which has not been able to be identified despite significant investigation, but who was in charge of, or had responsibility for overseeing the design, coding, safety, testing, engineering, warnings, of the Social Media Application SnapChat and is identified pursuant to Pa. R.C.P. 2005.

12.     These Defendants may be referred to throughout this Complaint as "The Social Media Defendants."

## THE SEPTA DEFENDANTS

13.     Defendant, Southeastern Pennsylvania Transit Authority a/k/a SEPTA (and referred to herein as "SEPTA") is a municipal corporation, political subdivision and/or other Commonwealth Agency/entity organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business or address for service located at 1234 Market Street, Philadelphia, PA 19107.

14.     Defendant Robert Milson, is identified as the engineer and/or operator who was in control of the movement of the train and who was at all times within the course and scope of his employment with SEPTA which struck the Plaintiff's Decedent and who has a place of business or address for service located at 1234 Market Street, Philadelphia, PA 19107.

15.     These Defendants may be referred to herein as the "SEPTA Defendants."

## THE PREMISES LIABILITY DEFENDANTS

16.     Defendant, Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1750 The Fairway, Jenkintown, PA 19046.

17.     Defendant, DBP Partners, LP, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity

Case ID: 241202765
Control No.: 25015411

organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1750 The Fairway, Jenkintown, PA 19046.

18.    Defendant, DB Pete, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1750 The Fairway, Jenkintown, PA 19046.

19.    Defendant, JOHN DOE Inc., 5-10 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity which has not been able to be identified despite significant investigation, but who was in charge of, or had responsibility for overseeing the management, maintenance, operations, security, cameras and which was otherwise in control of Bryner Chevrolet located at 1750 The Fairway, Jenkintown, PA 19046 and is identified pursuant to Pa. R.C.P. 2005


20.    Defendant, John Kennedy Ford of Jenkintown, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1650 The Fairway, Jenkintown, PA 19046.

21.    Defendant, Hopkins Ford, Inc., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1650 The Fairway, Jenkintown, PA 19046.

22.    Defendant, Kennedy Real Estate Associates, L.P., is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or

Case ID: 241202765
Control No.: 25015411

other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 1650 The Fairway, Jenkintown, PA 19046.

23.     Defendant, Kennedy Real Estate Management Associates, LLC, is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business or a service address located at 620 Bustleton Pike, Feasterville Trevose, PA 19053.

24.     Defendant, JOHN DOE Corp 5-10 is a corporation, partnership, limited partnership, limited liability partnership, limited liability company, fictitious name and/or other legal entity which has not been able to be identified despite significant investigation, but who was in charge of, or had responsibility for overseeing the management, maintenance, operations, security, cameras and which was otherwise in control of Kennedy Ford located at 1650 The Fairway, Jenkintown, PA 19046 and is identified pursuant to Pa. R.C.P. 2005.

25.     These Defendants may be referred to as the "Premises Liability Defendants."

26.     Venue is proper in Philadelphia County as one or more of the Defendants regularly conduct business in Philadelphia County.  In particular, and without limitation to other Defendants, the Social Media Defendants have millions of users in Philadelphia County.

27.     Venue is proper in Philadelphia County as SEPTA is a Commonwealth Party and because the local and principal office of SEPTA is located in Philadelphia County at 1234 Market Street, Philadelphia, PA 19107.

## FACTS COMMON TO ALL COUNTS

28.     Social media applications are products.  They are designed, coded, engineered, manufactured, produced, assembled, and placed into the stream of commerce.  They were designed to be used or consumed by the public as part of the regular business of social media companies,

Case ID: 241202765
Control No.: 25015411

including the Social Media Defendants.  They are mass-marketed, designed to be used by billions of consumers, and designed and advertised in such a way to appeal to the general public and, in particular, adolescents.

29.    Social media apps are akin to tangible products.  When installed or used on devices, they have a definite appearance and location and are operated by a series of gestures, clicks, swipes, and user-interface actions.  They are both personal, moveable, and downloadable.

30.    According to Tristen Harris, a former Google Design Ethicist, social media product designers maximize capitalizing on user attention by "play[ing] your psychological vulnerabilities (consciously and unconsciously) against you in the race to grab your attention."[1]

31.    Algorithms play a vital role in the race for attention-using machine learning and data science to generate content based on the likelihood that the user will want to see the suggested content.[2]

32.    Social media apps are designed to be addictive.  Based upon their design, interactions with the apps can release large amounts of dopamine into a user's brain's reward pathway—much like highly-addictive substances.[3]

---

[1]    Tristan Harris, *How Technology is Hijacking Your Mind – from a Magician and Google Design Ethicist*, MEDIUM (May 18, 2016) https://medium.com/thrive-global/how-technology-hijacks-peoples-minds-from-a-magician-and-google-s-design-ethicist-56d62ef5edf3), https://medium.com/thrive-global/how-technology-hijacks-peoples-minds-from-a-magician-and-google-s-design-ethicist-56d62ef5edf3.

[2]    Brent Barnhart, *Everything you need to know about social media algorithms*, SPROUT SOCIAL (Mar. 26, 2021), https://sproutsocial.com/insights/social-media-algorithms/.

[3]    Jim Zhao, *et al.*, *Risk Factors Associated with Social Media Addiction: An Exploratory Study*, FRONTIERS IN PSYCHOLOGY (Apr. 14, 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9046602/; Bruce Goldman, *Addictive potential of social media, explained*, STANFORD MEDICINE SCOPE (Oct. 29, 2021), https://scopeblog.stanford.edu/2021/10/29/addictive-potential-of-social-media-explained/; Jena Hilliard, *New Study Suggests Excessive Social Media Use Is Comparable to Drug Addiction*, ADDICTION CENTER (Sept. 4, 2019), https://www.addictioncenter.com/news/2019/09/excessive-social-media-use/;  Sherri   Gordon,

Case ID: 241202765
Control No.: 25015411

33.     Perhaps most tellingly about the negative effects that social media has on children, tech moguls do not let their children use social media.[4]

34.     Addiction to social media is by design: the more an individual interacts with an app, the more money the social media company makes.  This is because each interaction with a user allows more opportunities to monetize that user's interactions to sell advertising access.[5]

35.     The addictive quality of social media usage is further increased when users engage in mental rituals like following certain accounts or posting frequently to stay in touch with friends.[6] social media increasingly replaces physical human interactions, leading to feelings of isolation, loneliness, and fear.[7]

36.     Young people are particularly susceptible to social media addiction than older adults, and young people aged 16 to 25 have the highest rates of social media-related mental illness.[8]

---

*Excessive Social Media Use Comparable to Drug Addiction*, VERYWELLMIND (updated July 17, 2019), https://www.verywellmind.com/excessive-social-media-use-4690882.

[4]     Kristin Conrad, *The Real Reason Tech Moguls Don't Let Their Kids on Social Media*, THE LIST (Dec. 6, 2021, 9:07 AM EST), https://www.thelist.com/677684/the-real-reason-tech-moguls-dont-let-their-kids-on-social-media/.

[5]     Catherine Price, *Trapped—the secret ways social media is built to be addictive (and what you can do to fight back)*, BBC SCIENCE FOCUS MAGAZINE (Oct. 29, 2018), https://www.sciencefocus.com/future-technology/trapped-the-secret-ways-social-media-is-built-to-be-addictive-and-what-you-can-do-to-fight-back/.

[6]     Werner Geyser, *The Real Social Media Addiction Stats for 2023*, INFLUENCER MARKETING HUB (updated Dec. 14, 2022), https://influencermarketinghub.com/social-media-addiction-stats/.

[7]     Alice G. Walton, *Social Media May Make You Feel Socially Isolated: Study*, FORBES (Mar. 6, 2017, 2:06 PM EST), https://www.forbes.com/sites/alicegwalton/2017/03/06/social-media-and-social-isolation-go-hand-in-hand-but-which-comes-first/?sh=23dcc79d1785.

[8]     Michael Simon, *The Alarming Reality of Social Media Addiction Statistics in 2023*, TECHREPORT (May 16, 2023, 3:02 AM), https://techreport.com/statistics/social-media-addiction-statistics/.

Case ID: 241202765
Control No.: 25015411

37.     Chris Said, who has a Ph.D. in psychology from Princeton University and who has worked at both Facebook and Twitter, noted that "[s]ocial media was like a nuclear bomb on teen social life . . . . I don't think there's anything in recent memory, or even distant history, that has changed the way teens socialize as much as social media."[9]

38.     Adolescents spend between five to seven hours per day on social media, and roughly half of them believe that they spend "too much time" on social media.[10]

39.     Social media companies, including the Social Media Defendants, know all of this.

40.     In a Harvard Business Review article discussing social media addiction, for example,

> [P]sychologist Nicholas Kardaras explains that the people behind Facebook and Instagram not only designed their platforms to be wildly addictive but have kept them that way even amid mounting evidence that social media overuse has a horrible effect on people's mental and physical well-being.  (The same is true for Twitter, YouTube, TikTok, and most other social media.)[11]

41.     Social media companies, including the social media Defendants, specifically designed the platforms to be addictive.

42.     In fact, Facebook's founding president, Sean Parker, "said publicly that the company set out to consume as much user time as possible.  He claimed it was 'exploiting a

---

[9]     Michaeleen Doucleff, *The truth about teens, social media and the mental health crisis*, NPR (Apr. 25, 2023, 9:28 AM ET), https://www.npr.org/sections/health-shots/2023/04/25/1171773181/social-media-teens-mental-health.

[10]    Tonya Mosley and Serena McMahon, *Social Media Use Linked to Anxiety, Depression Among Teens, New Study Finds*, WBUR (Jan. 9, 2020), https://www.wbur.org/hereandnow/2020/01/09/social-media-anxiety-depression-teens.

[11]    Kelsey Gripenstraw, *Our Social Media Addiction*, HARVARD BUSINESS REVIEW (Nov.-Dec. 2022), https://hbr.org/2022/11/our-social-media-addiction.

11

Case ID: 241202765
Control No.: 25015411

vulnerability in human psychology.' 'The inventors,' he said, 'understood this consciously and we did it anyway.'"[12]

43.    And social media apps like Snapchat are known as "ranked among the worst social media for mental health."[13]

44.    Social Media Defendants have known for a long time that their products—not only designed to be addictive—*are* addictive.

45.    Former Facebook employee Sandy Parakilas, for example, described social media as "'very similar to a slot machine,'" after he tried to stop using the service following leaving the company in 2012.[14]    Notably, he said "'[i]t literally felt like I was quitting cigarettes.'"[15] Furthermore,

> [D]uring his year and five months at Facebook, he said, others had also recognized this risk.
>
> "There was definitely an awareness of the fact that the product was habit-forming and addictive," he said.
>
> "You have a business model designed to engage you and get you to basically suck as much time out of your life as possible and then selling that attention to advertisers."[16]

---

[12]    Hilary Andersson, *Social media apps are 'deliberately' addictive to users*, BBC NEWS (July 4, 2018), HTTPS://WWW.BBC.COM/NEWS/TECHNOLOGY-44640959.

[13]    *Snapchat Addiction: The Darkside of a Popular Worldwide App*, SOLSTICE (Oct. 26, 2017), https://solsticertc.com/snapchat-addiction-darkside-popular-worldwide-app/    (stating    that "Snapchat ranked among the worst social media for mental health"). *See also* Julie Kelly, *Confronting my daughter's addiction. To Snapchat.*, HUFFINGTON POST (updated Feb. 2, 2017), https://www.huffpost.com/entry/confronting-my-daughters_b_9138986.

[14]    Andersson, *supra* note 88.

[15]    *Id.*

[16]    *Id.*

Case ID: 241202765
Control No.: 25015411

46.    The addictive nature of the applications and platforms is especially damaging for teens and young people.  MRI brain studies show that students who use social media more frequently had increased activation points of their brain, "possibly making them more prone to peer feedback and hypersensitivity and possibly leading to changes in impulse control and regulation, according to ABC News chief medical correspondence Dr. Jennifer Ashton."[17]

47.    *Social media usage's dopamine rush impacts the ventral striatum*.  Between the ages of ten and twelve, changes in the brain make social rewards—compliments on clothing or positive feedback—start to feel more satisfying.  Specifically, receptors for oxytocin and dopamine multiply in a part of the brain called the ventral striatum, making preteens extra sensitive to attention and admiration from others.[18]

48.    Social media provides a mechanism to experience these "social rewards," giving the ventral striatum "a dopamine and oxytocin rush whenever we experience social rewards."[19] And, "[r]ight next door to the ventral striatum lies the ventral pallidum, a region of the brain key for motivating action.  These structures, which lie beneath the more recently evolved cortex, are older parts of the brain that drive instinctual behaviors."[20]

---

[17]    Haley Yamada and Katie Kindelan, *Social media use linked to brain changes in teens, study finds*, ABC NEWS (Jan. 5, 2023, 10:55 AM), https://digital.abcaudio.com/news/social-media-use-linked-brain-changes-teens-study-finds.

[18]    Zara Abrams, *Why young brains are especially vulnerable to social media*, AMERICAN PSYCHOLOGICAL ASSOCIATION (updated Aug. 25, 2022), https://www.apa.org/news/apa/2022/social-media-children-teens.

[19]    *Id.*

[20]    *Id.*

Case ID: 241202765
Control No.: 25015411

49.     Teens continue to seek out approval and acceptance via these "social rewards" on social media and, if they do not receive them, become isolated and feel lonelier.[21]

50.     ***Social media usage creates pressure and negative emotions, and can hinder healthy development of the prefrontal cortex***.  Social media platforms often promote a culture of comparison, where teenagers constantly compare themselves to their peers in terms of appearance, achievements, and social status.  This continuous exposure to idealized and curated representations of others' lives can lead to feelings of inadequacy, low self-esteem, and increased social anxiety.  The prefrontal cortex, involved in self-reflection and emotional regulation, can be impacted by the constant pressure and negative emotions resulting from social comparison, potentially hindering healthy brain development.[22]

51.     ***Social media usage leads to impulsive decision-making and risk-taking behavior***.  The prefrontal cortex is responsible for regulating impulsive behaviors and assessing risks.  Social media platforms often encourage instant gratification, impulsive reactions, and seeking novelty.  This can contribute to a greater inclination towards impulsive decision-making and risk-taking behavior, as teenagers may engage in potentially harmful activities driven by the desire for social validation or the need to conform to online trends.  Such behavior can negatively impact the

---

[21]     Cory Turner, *10 things to know about how social media affects teens' brains*, NPR (Feb. 16, 2023, 12:01 PM ET), https://www.npr.org/2023/02/16/1157180971/10-things-to-know-about-how-social-media-affects-teens-brains; *Written Testimony of Mitch Prinstein, Ph.D., ABPP, Chief Science Officer, American Psychological Association, Protective Our Children Online*, U.S. SENATE COMMITTEE ON JUDICIARY (Feb. 14, 2023), https://www.judiciary.senate.gov/imo/media/doc/2023-02-14%20-%20Testimony%20-%20Prinstein.pdf.

[22]     Michelle Achterberg, *et al.*, *Longitudinal associations between social media use, mental well-being and structural brain development across adolescence*, DEVELOPMENTAL COGNITIVE NEUROSCIENCE (Apr. 2022), https://www.sciencedirect.com/science/article/pii/S1878929322000329?via%3Dihub; Eveline A. Crone and Emily A. Konijn, *Media use and brain development during adolescence*, NATURE COMMUNICATIONS (Feb. 21, 2018), https://www.nature.com/articles/s41467-018-03126-x.

Case ID: 241202765
Control No.: 25015411

development of the frontal cortex, which is responsible for evaluating consequences and exercising self-control.[23]

52.    ***Social media usage reduces face-to-face interactions, retarding the development of social skills***.  Excessive reliance on social media for social interactions can reduce face-to-face interactions, which are crucial for the development of social skills and emotional intelligence.  The prefrontal cortex is involved in understanding and navigating social dynamics, including interpreting facial expressions, body language, and non-verbal cues.  Reduced face-to-face interactions may limit opportunities for teenagers to develop and refine these social skills, potentially affecting the maturation of the frontal cortex, and possibly leading to the development of narcissistic tendencies.[24]

## The Known Prevalence of Sextortion on the Defendant's Social Media Application Products

53.    The use of the Social Media Defendant's products by criminals and predators to target minors and teenagers is well documented and known.  There has never been a larger pool of victims at the fingertips of these predators that through the use of the Defendant's products.

54.    The victims themselves are often addicted and consumed by the product's use, and spend upwards of 8 hours a day on these products which makes them easy targets who are available at all times to be targeted by sexual scammers and extortionists.

---

[23]    *Screen Addiction Affects Physical and Mental Health*, PREMIER HEALTH (May 11, 2023), https://www.premierhealth.com/your-health/articles/health-topics/screen-addiction-affects-physical-and-mental-health.

[24]    Anthony Silard, Ph.D., *The Role of Social Media in Our Empathy Crisis*, PSYCHOLOGY TODAY (July 11, 2022), https://www.psychologytoday.com/us/blog/the-art-living-free/202207/the-role-social-media-in-our-empathy-crisis; Yamila Lezcano LHMC, *How Social Media Affects Mental Health in Adolescents*, PSYCHOLOGY TODAY (Aug. 25, 2021), https://www.psychologytoday.com/us/blog/becoming-resilient/202108/how-social-media-affects-mental-health-in-adolescents.

Case ID: 241202765
Control No.: 25015411

55.     The FBI has warned in reports that "financial sextortion . . . mainly occurs on the digital platforms where children are already spending their screen time, like social med, gaming websites, or video chat applications.  On these platforms, predators often pose as girls of a similar age and use fake accounts to target young boys, deceiving them into sending explicit photos or videos.  The predator then threatens to release the compromising materials unless the victim sends payment."[25]

56.     This is precisely what happened to the Plaintiff's Decedent in the instant case.

57.     Defendants have facilitated and exacerbated the risk of sextortion in the design of their product and its warnings by implementing defective product features that help sexual predators connect with adolescents, teenagers, children, and young people such as the Plaintiff's Decedent, including the lack of meaningful mechanisms to prevent sham accounts (or warn users of the existence of such accounts and scams), default-public profiles, matching and recommending connections between people with no known connection, from high risk areas for criminal activity such as, in this case, Nigeria, and promoting unsolicited messages and interactions from individuals from such areas, or individuals with numerous accounts under the same name, IP address, stock photos, re-used photos and/or images from other numerous other profiles, mass messages from accounts with these characteristics, particularly messages to diverse and far away geographic areas including those which are associated with children, adolescent and young people such as the Plaintiff's Decedent (in this case college campuses), messages from an unconnected

---

[25] International Law Enforcement Agencies Issue Joint Warning about global financial sextortion crisis, FBI (2023), https://www.fbi.gov/news/press-releases/international-law-enforcementagencies-issue-joint-warning-about-global-financial-sextortion-crisis

Case ID: 241202765
Control No.: 25015411

account from such high-risk areas, and other features which easily identify the accounts as sham accounts indicative of criminal activity, sextortion at the top of that list.

58.    Further, Defendant's applications do nothing to prevent, or even warn users about the dangers or risks of interacting with these accounts, or the dangers of sending nude pictures to such accounts which are suspicious for fraudulent activity, and provide no (or at least no easily accessible) design or warning mechanism to report such an account after a scam is initiated.

59.    These individuals, criminals, and organizations have used the Social Media Defendants' applications for this very reason – their design which renders them dangerous and defective, and the lack of warnings or other reasonable safety measures associated with these products provide the perfect conduit and opportunity to engage in sextortion and other fraudulent criminal schemes.

60.    The practice of sextortion and fraudulent activities is well known to the Defendants.

61.    Despite knowledge of the pervasiveness of this problem and the existence of mass numbers of sham accounts being used for sextortion well in advance of the Plaintiff's Decedent's death, it was not until July of 2024, Meta deleted over 60,000 accounts operated by Nigerians which were linked to financial sextortion scams, and other crimes.[26]

62.    Meta identified these accounts, and disabled them using "a combination of new technical signals we've developed to help identify sextorters. . . the majority of these accounts had already been detected and disabled by our enforcement systems and this investigation allowed us

---

[26] https://www.bloomberg.com/news/articles/2024-07-24/meta-removes-63-000-accounts-linked-to-sextortion-scammers?embedded-checkout=true

Case ID: 241202765
Control No.: 25015411

to remove the remaining accounts and understand more about the techniques being used to improve our automated detection."[27]

63.    These "technical signals" were economically and technologically feasible and should have been implemented by the Social Media Defendants well in advance of the Plaintiff's Decedent's sextortion and death.

64.    In simple terms, the Social Media Defendants have known for years about the prevalence of sextortion on their social media applications, yet have taken insufficient steps to design their product with safety features and/or warnings which would protect their users, including those such as the Plaintiff's Decedent who was a prototypical victim for these individuals, a young adult male who was a regular user of the Social Media Defendants' products.

65.    There was nothing preventing these measures, design changes, and/or reasonable warnings from being implemented and integrated into the application products well in advance of January 4, 2023 as they were both technologically available, feasible, and necessary to make these products reasonably safe for use by adolescents, teens, children, and young people such as the Plaintiff's Decedent.

66.    Without these measures, and other reasonable design changes and warnings to the users, the products were unreasonably dangerous and defective under Pennsylvania Law.

67.    The failure to design their applications with sufficient protections which would prevent users from engaging in such pervasive and obviously illegal and fraudulent behavior was a substantial contributing factor and caused the Plaintiff's Decedent's wrongful death.

---

[27] https://about.fb.com/news/2024/07/combating-financial-sextortion-scams-from-nigeria/

Case ID: 241202765
Control No.: 25015411

### Plaintiff's Decedent's Use of the Social Media Application Products

68.    Plaintiff's Decedent has been a social media user for many years, in particular, Instagram, and SnapChat.

69.    He spent much of his spare time interacting online, as described generally above.

70.    In January of 2023 the Plaintiff's Decedent was contacted by a third party through the Instagram app.

71.    This third party was a scammer from Nigeria who was part of an organized criminal operation which targeted teenagers – often minors – through mass Instagram messages in an attempt to get them to "bite" at the bait they sent.

72.    Upon information and belief, Plaintiff's Decedent was targeted based upon his location at a college campus – Kutztown University – where he was a college student.

73.    This conversation began when the Plaintiff's Decedent was targeted by an account from this Nigerian criminal group who were regular "Yahoo Boys", a loosely affiliated criminal group who made their living running these sextortion scams primarily through Instagram, Facebook and Snap.

74.    This first contact made through Instagram Direct Message was one of thousands of messages sent out by the sextortionists, a common and well known tactic to the Social Media Defendants which is highly suspicious for illegal and fraudulent activity.

75.    The Plaintiff's Decedent took the "bait" and responded to the scammers under the pretense that he was conversing with a young woman of his age who was looking to establish a relationship, and asking him for compromising photos of himself, which he eventually sent.

76.    After the scam bait was laid on Instagram, the sextortionists suggested moving the conversation to Snap, where additional compromising photographs of the Plaintiff's Decedent were sent.

19

Case ID: 241202765
Control No.: 25015411

77.    The reason the sextortionists moved the conversation to Snap was because of their knowledge of the defective and dangerous design of Snap where messages "disappear" and the lack of sufficient warnings to users such as the Plaintiff's Decedent that the messages contain nudity and the application lacks a nudity filter which would warn the user that they are sending messages to an account in an area suspicious and associated with criminal activity, scams, outside of the United States, or other warnings to the user of the prevalence of such scams so that the user may be warned about the information in the Social Media Defendants' possession that these photos may be used as part of a scam.

78.    The conversation immediately turned to extortion upon receipt of the compromising photos, with the criminals incessantly threatening to release the photos to the Plaintiff's Decedent's college board on Facebook, harm the Plaintiff's family, and more.

79.    The Plaintiff's Decedent attempted to send the money the sextortionists were requesting, but these attempts were stifled as the transfers were identified as fraudulent, so the Decedent could only send about $2,800 (which itself was spread across 6 or 7 transactions) and the sextortionists were asking for more.

80.    When the Plaintiff's Decedent could not send them further funds, these criminals used the Social Media Defendants' products to threaten Plaintiff's Decedent and his family, including threats to physically harm him, physically harm his family, and release the sensitive photos to Plaintiff's Decedent's family, friends and school.

81.    After these further and unyielding threats from the sextortionists, the Plaintiff's Decedent went to a nearby SEPTA train track, where he was killed by a SEPTA train.

82.    This action was the direct consequence of the horrible pressure, negative emotions, impulsive decision making, and the impact on the social development, emotions, mind and psyche

20

Case ID: 241202765
Control No.: 25015411

of the Plaintiff's Decedent as a result of the design of the Social Media Defendants' algorithms and addictive intention and design.

83.    The Plaintiff's Decedent, a social media user for many years since his early adolescent age, including specifically Instagram, Facebook, and SnapChat, was deeply and negatively impacted by the design of these social media applications which were designed to maximize the amount of time a user is on the application in order to maximize their profits from each user.

84.    Were it not for the impact the Social Media Defendants' application had on the Plaintiff's Decedent's social development, emotions, mind and psyche by way of its addictive design, and lack of warnings about these impacts, the Plaintiff's Decedent would not have suffered the harm he did as set forth herein.

### Plaintiff's Decedent is Killed on SEPTA Tracks, by a SEPTA Train

85.    The Plaintiff's Decedent then went to the train tracks which are owned and operated by the Defendant, SEPTA where he was killed by a train which was owned, operated and under the control of SEPTA and their engineer.

86.    The train was travelling towards Noble Station in Jenkintown, where, upon information and belief, the train intended to stop just several hundred feet away from where the Plaintiff's Decedent was killed, and therefore should have, if the engineer had been operating the train carefully, been able to sound the horn, or otherwise stop the train in order to avoid striking the Plaintiff's Decedent.

87.    He accessed these tracks by traversing the properties of John Kennedy Ford of Jenkintown and Bryner Chevrolet of Jenkintown located at 1650 and 1750 The Fairway, Jenkintown, PA.

Case ID: 241202765
Control No.: 25015411

88.     These properties are owned, managed, controlled maintained by one or more of the Premises Liability Defendants.

89.     Because of the circumstances set forth above, the cause of death is in effect, a homicide.

90.     Upon information and belief, the tracks were accessible by the Plaintiff's Decedent as a result of the failure to maintain and/or fence the area surrounding the tracks.

91.     This area is known to be accessible by pedestrians as it is in the area of a high pedestrian area, a shopping center, several businesses, a residential neighborhood, and a commuter train station.

92.     Upon information and belief there have been numerous complaints and near misses related to potential collisions involving SEPTA trains and pedestrians.

93.     For example, on February 8, 2013, a 20-year-old Ardsley man was struck by a SEPTA commuter train in this area[28].

94.     Again, on April 7, 2014, a 20-year-old man from Jenkintown was struck and killed in and/or about the area of the tracks in this area.[29]

95.     Again, on October 20, 2017, a pedestrian was struck and killed by a SEPTA train at or near the Jenkintown train station.[30]

96.     As there is a high degree of pedestrian activity in the area of the location where this incident occurred, Defendant SEPTA knew or should have known about this activity and should have taken reasonable steps to prevent access to this area of tracks, which they failed to do.

---

[28] https://www.abingtonpd.org/pedestrian-struck-by-train/

[29] https://www.abingtonpd.org/pedestrian-struck-by-train-2/

[30] https://6abc.com/pennsylvania-news-jenkintown-septa-person-hit-by-train/2553315/

22

Case ID: 241202765
Control No.: 25015411

97.     In fact, the incident is, upon information and belief, depicted on video of not only SEPTA, but also one or more of the Premises Liability Defendants who, at the time of the incident and for a sufficient time leading up to it, had one of their employees, agents, workman, and/or contractors watching the Plaintiff's Decedent in real time on surveillance video acting erratically, in an obviously distressed manner in the area of the train tracks, while still on the Premises Liability Defendant's property, yet did nothing while making these observations, did not call the police, go to the Plaintiff's Decedent to discuss his purpose for being there in the area of the tracks, or prevent him from accessing the tracks.

98.     Further, the engineer in charge of the train had a duty to observe and be cautions of pedestrians in the area, to signal his horn and to reduce his speed and apply his brakes in order to avoid posing a harm to pedestrians who were known to be and who were in fact present on and in the area of the tracks.

99.     Additionally, the engineer in charge of the train had a duty to refrain from the negligent, careless, reckless, willful and wanton operation of the train in order to avoid contact with pedestrians in the area of the train and tracks.

100.    SEPTA, acting through their agents and/or employees, including their engineer failed to do so, which caused and/or contributed to the Plaintiff's Decedent's wrongful death.

101.    This Plaintiff's Decedent's wrongful death resulted solely from the negligent, careless, reckless, willful, and/or wanton conduct of the SEPTA Defendants, and/or the negligent, careless, reckless, and outrageous conduct, and the other liability producing conduct, including but not limited to the strict liability of the Social Media Defendants acting jointly and/or severally and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

102.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, Plaintiff's decedent John Michael Sullivan died on January 4, 2023.

23

Case ID: 241202765
Control No.: 25015411

103.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, the Plaintiff's Decedent suffered great conscious physical pain and suffering, trauma, mental anguish, embarrassment and humiliation prior to her death and did suffer consciously for several days prior to her wrongful death.

104.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, Plaintiff's Decedent's daily activities, occupation and usual life's pleasures were forever extinguished.

105.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, Plaintiff's Decedent's earnings, earning capacity and employment opportunities were terminated.

106.    As a direct and proximate result of the conduct described above by the Defendants acting jointly and/or severally, the Estate of John Michael Sullivan incurred liability for medical services, funeral and household expenses.

<div align="center">

**COUNT I**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. META PLATFORMS, INC., F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE, INC., 1-5 AND JOHN DOE CORP., 1-5**
**NEGLIGENCE**

</div>

107.    Plaintiff incorporates by reference the preceding as if the same were set forth fully herein.

108.    The negligence and carelessness of the Social Media Defendants, their agents, servants, workmen, and/or employees, consists of, but is not limited to, the following:

      a.    Failure to design, manufacture, fabricate, assemble, sell and install appropriate safety systems on the Defendant's social media applications;

<div align="center">24</div>

Case ID: 241202765
Control No.: 25015411

b.    Failure to warn users of these products (i.e., Instagram and Snap) that social media is addictive;

c.    Failure to warn users of these products (i.e., Instagram and Snap) of the dangers of contact by unknown users through the direct messaging component of the application including sextortion;

d.    Failure to warn users of these products (i.e., Instagram and Snap) of the existence and prevalence of sextortion on their application through the direct messaging component of the application;

e.    Failure to implement "technical signals" to identify sextorters and their accounts to prevent these sextorters from opening and operating accounts solely for the purpose of conduction illegal sextortion activity;

f.    Failure to warn users that sextortion accounts had been regularly identified and shut down on the application;

g.    Failure to warn users of the characteristics of a sextortion scam message including "highly stylized photos" and "people who exceptionally good looking" or who have "never sent you a message before" despite knowledge that such account characteristics are associated with sextortion activity;

h.    Failure to conduct sufficient investigation into the creation and operation of accounts originated in suspicious locations, including but not limited to Nigeria, which had characteristics of fraudulent or illegal accounts such as; new users sending mass messages to "many, many" users outside of their country or geographic area, "highly stylized photos" and "people who exceptionally good looking" or who have "never sent you a message before"; have little to no followers, comments on their photos, likes on their photos and/or posts; and/or other classic indicators of fraudulent account creation;

i.    Failure to monitor or prevent the creation of accounts with such characteristics as addressed above, or to prevent the operation of same;

j.    Failure to monitor or prevent the creation of, or prevent the operation of accounts of individuals, IP addresses, or other characteristics which the Defendants knew or should have known had previously been associated with account activity which was identified, or should have been identified as fraudulent;

k.    Allowing the creation of numerous and/or countless accounts by individuals or groups of individuals which can only be used for fraudulent or criminal activity;

Case ID: 241202765
Control No.: 25015411

l.  Otherwise require verification from the account creator and/or operator that would ensure the account is being created by a real person for a non-criminal and/or fraudulent purpose when creating an account with the characteristics set forth above in these sub-paragraphs;

m.  Failure to design and/or implement warnings before a user is permitted to send compromising images, including reminders and/or warnings to users that, among other things, the recipient user may not be who they say they are; may be a criminal; may use the images for sextortion; may forward the images or publish them without your consent and/or knowledge; and that the users profile and account should be viewed carefully in case they're not who they say they are;

n.  Failure to otherwise design and/or implement other reasonable nudity protection measures and/or warnings;

o.  Failure to provide a quick dedicated option for help and/or immediate resource to an individual who has been contacted through the application with threats to share private images;

p.  Failure to warn users when receiving messages from accounts with characteristics identified herein and with other characteristics suspicious for fraudulent/ criminal activity that such accounts may be associated with fraudulent activity, originate outside the country and/or from suspicious areas;

q.  Failure to warn users using geofencing of the location of direct messages;

r.  Failure to reasonably restrict the sharing of nude images;

s.  Failure to supply and/or post adequate notices or warnings of the risks and dangers of the product in the materials which describe the operation and use of the products and in the applications themselves;

t.  Failure to place or install warning notices in an obvious and/or conspicuous place in the application;

u.  Failure to manufacture, fabricate, assemble, sell and distribute products with adequate safety materials, manuals, instructions, markings, signs, warnings and safety devices;

v.  Failure to design algorithms to limit addictive engagement;

w.  Failure to warn of the health effects of use and extended use of the application;

26

Case ID: 241202765
Control No.: 25015411

x.    Failure to implement default protective limits regarding the time and length and frequency of use;

y.    Failure to implement opt-in restrictions to the length and frequency of use;

z.    Failure to implement self-limiting tools, including but not limited to session time notifications warnings, or reports;

aa.    Failure to create a beginning and end to a user's feed;

bb.    Failure to implement appropriate geofencing that would warn users when messages were coming from out of the country, or from specific suspicious areas;

cc.    Distributing defective products to the general public;

dd.    Advertising a defective product to the general public;

ee.    Failure to assemble the products so as to prevent injuries to the Plaintiff's Decedent and other users;

ff.    Failure to design a product with adequate materials and safety devices;

gg.    Failure to inspect said products prior to the sale, distribution or purchase of said product.

109.    Prior to placing these products (i.e., Instagram and Snap) into the stream of commerce, Defendants knew or should have known with adequate design, inspection and/or testing that these products (i.e., Instagram and Snap) were in a defective and dangerous condition and that because of these defects, these products (i.e., Instagram and Snap) could not be used safely for the purposes for which they were intended. Defendants also knew that continued offering and use of these products (i.e., Instagram and Snap) would result in further injuries to persons such as Plaintiff's Decedent.

110.    The negligence, carelessness, recklessness and outrageous conduct of the Social Media Defendants its agents, servants, workmen, and/or employees, as set forth herein was the proximate and sole cause of the injuries and damages to the Plaintiff's Decedent and expenses incurred as set forth above.

27

Case ID: 241202765
Control No.: 25015411

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5, and John Doe Corp 1-5 jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

**COUNT II**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. META PLATFORMS, INC., F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE, INC., 1-5 AND JOHN DOE CORP., 1-5**
**STRICT LIABILITY**

111.    Plaintiff incorporates by reference the preceding as if the same were set forth fully at length herein.

112.    At all times relevant hereto, the Defendants' social media applications, Instagram and Snap were advertised, marketed, manufactured, designed, fabricated, assembled, sold, distributed and/or otherwise placed into the stream of commerce by the Social Media Defendants during and in the ordinary course of their business.

113.    These social media application products as well as their components (including their algorithms and any associated warnings) did reach the Plaintiff's Decedent, an intended foreseeable user and cause injuries and the wrongful death in a condition substantially unchanged from that in which they were advertised, marketed, manufactured, designed, fabricated, assembled, sold, distributed and/or otherwise placed into the stream of commerce.

114.    The injuries, damages and wrongful death sustained by the Plaintiff's Decedent as set forth above, were the direct result of the defective and dangerous conditions existing at the time

28

Case ID: 241202765
Control No.: 25015411

of the advertising, marketing, design, manufacture, fabrication, assembly, sale and/or distribution by the Social Media Defendants, including without limitation that the social media application products did not contain an adequate sufficient design protections to prevent individuals such as the sextortionists from Nigeria from utilizing these applications to widely target victims such as the Plaintiff's Decedent and many others with mass automated messages targeted by their age, location around schools and other vulnerable areas from another country known to be associated with high degrees of illegal and fraudulent criminal extortion activity and/or otherwise warn users about these dangers which were known to the Defendants for a sufficient period of time in advance of the incident involving the Plaintiff's Decedent.

115.    Defendants are strictly liable pursuant to Section 402(a) of the Restatement of Torts, Second as said products were defective and unreasonably dangerous at the time they were distributed and Defendants failed to warn Plaintiff's Decedent, and other foreseeable users of the aforementioned defects and dangers.

116.    Prior to the incident involving the Plaintiff's Decedent and/or the use of social media application products, the Social Media Defendants knew or should have known with adequate design, inspection and/or testing that the products were in a defective and dangerous condition and that because of the defects, the products could not be used safely for the purposes for which they were intended.  Defendants also knew that continued offering for use of the products would result in further injuries to persons such as Plaintiff.

117.    The social media application products, as advertised, marketed, manufactured, designed, fabricated, assembled, sold, distributed, and/or otherwise placed into the stream of commerce by the Social Media Defendants also failed to contain proper warnings and instructions regarding the use of and all dangers associated with the use and operation of these products.

Case ID: 241202765
Control No.: 25015411

118.    The social media application products were also defective due to inadequate warnings or instructions because, after the manufacturer knew or should have known of the risk of injury (including the risk of exposure to the highly pervasive fraudulent criminal activity, scams, and/or sextortion) to users and/or persons similarly situated as the Plaintiff, Defendants failed to provide adequate warnings to users and persons subjected to these products (i.e., Instagram and Snap) as set forth at length above regarding the risks of sextortion for the reasons set forth at length above and herein, and continued to advertise, market, manufacture, design, fabricate, assemble, sell, distribute and/or otherwise place into the stream of commerce these products, i.e., Instagram and Snap.

119.    The dangers of these products (i.e., Instagram and Snap) that caused and/or contributed to Plaintiff's Decedent's death were unknowable and unacceptable to the average or ordinary consumer, and therefore they failed to satisfy the Customer Expectation Test.

120.    A reasonable person would conclude the probability and seriousness of the harms caused by the defectiveness of these products (i.e., Instagram and Snap) as set forth above, outweighed the burden or costs of taking precautions, and therefore they failed to satisfy the Risk-Utility test.

121.    As a result of the aforementioned defects, and/or other dangerous propensities of the products, including improper warnings and instructions on these products (i.e., Instagram and Snap) and in the operations/use manuals, the Plaintiff's Decedent was caused to sustain severe injuries, damages and suffer a wrongful death as set forth herein.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5, and John Doe Corp 1-5

Case ID: 241202765
Control No.: 25015411

jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

**COUNT III**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. META PLATFORMS, INC., F/K/A FACEBOOK, INC., FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, FACEBOOK PAYMENTS, INC., FACEBOOK TECHNOLOGIES, LLC, INSTAGRAM, LLC, SNAP, INC., JOHN DOE, INC., 1-5 AND JOHN DOE CORP., 1-5**
**BREACH OF WARRANTY**

122.    Plaintiff incorporates by reference the preceding as if the same were set forth fully herein.

123.    The Social Media Defendants expressly and impliedly warranted the product was safe and fit for the particular purpose for which they were made.

124.    The Social Media Defendants' breach of contract/warranty consisted, *inter alia*, of selling defective and dangerous products.

125.    Plaintiff's Decedent relied on the skill, judgment, representations, and foregoing implied and express warranties of the Social Media Defendants.   Said warranties and representations were false in that the aforementioned these products (i.e., Instagram and Snap) were not safe; were un-merchantable; and were unfit for the ordinary purpose and uses for which they were intended and caused Plaintiff's injuries.

126.    Prior to the time the these products (i.e., Instagram and Snap) were used by Plaintiff's Decedent, the Social Media Defendants had implied warranted to the general public that said these products (i.e., Instagram and Snap) were of merchantable quality and safe and fit for the use for which they were intended.

127.    The general public, Plaintiff's Decedent are unskilled in the research, manufacture, design, fabrications, assembly, sale and/or distribution of the aforementioned these products (i.e.,

31

Case ID: 241202765
Control No.: 25015411

Instagram and Snap) and reasonably relied on the skill, judgment and implied warranty of the Social Media Defendants in using the aforementioned these products (i.e., Instagram and Snap).

128.     These products (i.e., Instagram and Snap) were neither safe for their intended use nor of merchantable quality as warranted by the Social Media Defendants, in that they had dangerous propensities when put to their intended use and would cause severe injuries to the users.

129.     The aforementioned breach of warranty was the proximate cause of the injuries and damages sustained by the Plaintiff's Decedent as set forth herein.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5, and John Doe Corp 1-5 jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

## COUNT IV
### JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. SEPTA AND ROBERT MILSON
### NEGLIGENCE, RECKLESSNESS, AND WILLFUL/WANTON CONDUCT

130.     Plaintiff reavers and incorporates the preceding paragraphs as though set forth at length.

131.     Defendants were aware that these train tracks established an attractive nuisance to individuals in the area and/or proximity.

132.     Defendants were aware of the existence of numerous other pedestrian strikes on the tracks by trains in this vicinity, yet did nothing to obstruct access to the tracks on their property or safely control the movement of the train despite this knowledge.

Case ID: 241202765
Control No.: 25015411

133.    The negligence, carelessness, recklessness and/or willful/ wanton conduct of

Defendants consisted of, but it not limited to:

    a.  Failure to exercise reasonable care to eliminate the danger or otherwise to protect Plaintiff's Decedent.

    b.  failure of its employees, agents, ostensible agents and servants to conduct and operate the train in a safe manner, including traveling at speeds in excess of speed limits in place by law;

    c.  failure of its employees, agents, ostensible agents and servants to monitor the safety of pedestrians and train passengers in and around the tracks where this incident occurred;

    d.  failure of its employees, agents, ostensible agents and servants to observe pedestrians on the tracks;

    e.  failure of its employees, agents, ostensible agents and servants to observe pedestrians on the tracks in a reasonable time;

    f.  failure to apply speed limiting devices including but not limited to brakes in sufficient time so as to avoid striking the Plaintiff's Decedent;

    g.  failure to brakes apply speed limiting devices including but not limited to brakes in sufficient time so as to provide the Plaintiff's Decedent reasonable opportunity to take evasive action and avoid being struck;

    h.  failure to slow the train down after its employee(s), agents and/or ostensible agents witnessed Plaintiff's Decedent on the tracks in the foreground as the train approached the location of the incident;

    i.  failure to stop the train in time to avoid striking Plaintiff's Decedent;

    j.  failure to blow the whistle of the train to warn Plaintiff's Decedent of impending danger;

    k.  failure to install any kind of barriers and/or fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

    l.  failure to repair the dangerous condition of the lack of fencing surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

33

Case ID: 241202765
Control No.: 25015411

m.  failure to post warning signs along the train tracks;

n.  failure to repair holes in fences surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

o.  failure to install fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

p.  creating a dangerous condition;

q.  creating an attractive nuisance;

r.  operating the train at too great of a speed approaching the tracks where the incident occurred despite knowledge of the risks of pedestrians on the tracks;

s.  failing to exercise ordinary care to avoid injuring others;

t.  failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on the risks associated with pedestrians on the tracks;

u.  failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on how to safely observe pedestrians on the train tracks;

v.  failure to warn its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor of the existence of prior complaints or knowledge on behalf of SEPTA of pedestrians on the train tracks in the vicinity of the location of the incident;

w.  failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on how to use horns and/or audio warning devices; and

x.  failure to inspect the condition of the fences in the area of the tracks where the incident occurred.

34

Case ID: 241202765
Control No.: 25015411

41.     The negligence and/or carelessness of the Defendants as set forth herein was a proximate and sole cause of the injuries and damages to Plaintiff's Decedent, John Michael Sullivan and the expenses incurred as set forth above.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants SEPTA, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, costs and such other further relief the court shall deem appropriate.

**COUNT V**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. BRYNER CHEVROLET, INC., D/B/A BRYNER CHEVROLET, DBP PARTNERS, LP, DB PETE, INC., JOHN DOE INC., 5-10, KENNEDY FORD OF JENKINTOWN, HOPKINS FORD, INC., KENNEDY REAL ESTATE ASSOCIATES, LP, KENNEDY REAL ESTATE MANAGEMENT ASSOCIATES, LLC, JOHN DOE CORP., 5-10**
**NEGLIGENCE, RECKLESSNESS, AND WILLFUL/WANTON CONDUCT**

134.    Plaintiff reavers and incorporates the preceding paragraphs as though set forth at length.

135.    It is alleged and therefore averred that prior to January 4, 2023, Defendants had actual knowledge of the dangers associated with the proximity of their property and business to the exposed and unfenced train tracks adjacent to their property.

136.    Defendants were aware that these train tracks established an attractive nuisance to individuals in the area and/or proximity.

137.    Defendants were aware of the existence of numerous other pedestrian strikes on the tracks by trains yet did nothing to obstruct access to the tracks on their property.

138.    Defendants were aware of the presence of the Plaintiff's Decedent on their property for a sufficient period of time in which they observed him wandering in a distressed fashion in the

Case ID: 241202765
Control No.: 25015411

area of the train tracks to take reasonable steps to intervene and prevent him from being struck by the train.

139.    The negligence, carelessness, recklessness and/or willful/ wanton conduct of Defendants consisted of, but it not limited to:

a.  Failure to exercise reasonable care to eliminate the danger or otherwise to protect Plaintiff's Decedent.

b.  failure of its employees, agents, ostensible agents and servants to monitor the safety of pedestrians in and around the tracks where this incident occurred;

c.  failure of its employees, agents, ostensible agents and servants to observe pedestrians in the area of the train tracks;

d.  failure of its employees, agents, ostensible agents and servants to observe pedestrians in and around the tracks in a reasonable time;

e.  failure to install any kind of barriers and/or fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

f.  failure to repair the dangerous condition of the lack of fencing surrounding the tracks in and around the tracks where the incident occurred despite knowledge pedestrians were accessing the train tracks from the locations which lacked fencing;

g.  failure to post warning signs along the train tracks;

h.  failure to install fencing along its tracks in the immediate areas surrounding the tracks where the incident occurred to prevent anticipated pedestrians from entering the tracks;

i.  failure to monitor surveillance cameras;

j.  failure to intervene with the Plaintiff's Decedent;

k.  failure to restrict Plaintiff's Decedent from accessing the tracks;

l.  failure to remove the Plaintiff's Decedent from the area of the tracks;

m.  failure to take reasonable steps to protect the Plaintiff's Decedent from the hazard associated with the unfenced tracks;

Case ID: 241202765
Control No.: 25015411

n. creating a dangerous condition;

o. creating an attractive nuisance;

p. observing the Plaintiff's Decedent on their property, acting nervously, scared, and distressed in the area of the train tracks for a significant period of time before he was struck and failing to intervene, call the police, or make contact with the Plaintiff's Decedent;

q. failing to exercise ordinary care to avoid injuring others;

r. failure to properly train its employees, agents, ostensible agents and servants, including but not limited to its Engineer and Conductor on the risks associated with pedestrians on the tracks;

s. failure to warn its employees, agents, ostensible agents and servants, of the existence of prior complaints or knowledge of pedestrians on the train tracks in the vicinity of the location of the incident; and

t. failure to inspect the condition of the fences in the area of the tracks where the incident occurred.

42. The negligence and/or carelessness of the Defendants as set forth herein was a proximate and sole cause of the injuries and damages to Plaintiff's Decedent, John Michael Sullivan and the expenses incurred as set forth above.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, DBP Partners, LP., DB Pete Inc., John Doe Inc., 5-10, John Kennedy Ford of Jenkintown, Hopkins Ford, Inc., Kennedy Real Estate Associates, LP, Kennedy Real Estate Management Associates, LLC, John Doe Corp 5-10, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, costs and such other further relief the court shall deem appropriate.

### COUNT VI
### JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL SULLIVAN VS. ALL DEFENDANTS
### <u>WRONGFUL DEATH</u>

Case ID: 241202765
Control No.: 25015411

50.    Plaintiff reavers and incorporates the preceding paragraphs as though set forth herein at length.

51.    Plaintiff brings this action pursuant to the Wrongful Death Act 42 Pa. C.S.A. Section 8301 and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

52.    The names and last known addresses of all persons who may be entitled by law to recover damages, as well as their relationship to Decedent John Michael Sullivan are as follows:

    a.    James Sullivan, Jr., father
          619 Edgley Avenue
          Glenside, PA 19038

    b.    Kathleen Sullivan, mother
          619 Edgley Avenue
          Glenside, PA 19038

53.    As a direct and proximate result of the foregoing, the Decedent's Wrongful Death beneficiaries have been, continue to be, and will in the future be deprived of his counsel, services, companionship and society.

54.    As a direct and proximate result of the Defendants' liability producing conduct as set forth above, which is incorporated herein, John Michael Sullivan's Wrongful Death beneficiaries suffered, are suffering and will, for an indefinite period of time in the future, suffer damages, injuries and losses, including but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received from him, including monies which he would have provided for items such as clothing, food, shelter, medical care, education and entertainment, recreation and gifts

55.    As a direct and proximate result of the Defendants' negligent and/or careless conduct as set forth above, which is incorporated herein, John Michael Sullivan's Wrongful Death beneficiaries have been caused to incur and pay various expenses from medical treatment, hospital

38

care, custodial care, nursing care and medications, and funeral and other expenses related to his death.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5 and John Doe Corp., 1-5, SEPTA, Robert Milson, Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, DBP Partners, LP., DB Pete Inc., John Doe Inc., 5-10, John Kennedy Ford of Jenkintown, Hopkins Ford, Inc., Kennedy Real Estate Associates, LP, Kennedy Real Estate Management Associates, LLC, and John Doe Corp 5-10, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

<div align="center">

**COUNT VII**
**JAMES SULLIVAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN MICHAEL**
**SULLIVAN VS. ALL DEFENDANTS**
**<u>SURVIVAL ACTION</u>**

</div>

56.     Plaintiff reavers and incorporates the preceding paragraphs as though set forth herein at length.

57.     Plaintiff brings this action on behalf of the Estate of John Michael Sullivan, by virtue of the Survival Act, 42 Pa.C.S.A. §8302, and claims all benefits of the Survival Act on behalf of John Michael Sullivan's Estate and other persons entitled to recover under law.

58.     As a direct and proximate result of the Defendants' liability producing conduct as set forth above, which is incorporated herein, Plaintiff claims on behalf of the Estate of John Michael Sullivan, all damages suffered by the Estate by reason of the death of John Michael Sullivan, including without limit the generality of the following:  the severe injuries to John

<div align="center">39</div>

Case ID: 241202765
Control No.: 25015411

Michael Sullivan which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other tangible losses which John Michael Sullivan suffered prior to his death, the loss of past, present, and future earning capacity suffered by John Michael Sullivan from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained; expenses for medical care, the loss and total limitation and deprivation of his normal activities until the time of his death.

WHEREFORE, Plaintiff James Sullivan Jr., Administrator of the Estate of John Michael Sullivan, demands judgment against Defendants, Meta Platforms, Inc., f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebooks Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, SNAP, Inc., John Doe, Inc., 1-5 and John Doe Corp., 1-5, SEPTA, Robert Milson, Bryner Chevrolet, Inc., d/b/a Bryner Chevrolet, DBP Partners, LP., DB Pete Inc., John Doe Inc., 5-10, John Kennedy Ford of Jenkintown, Hopkins Ford, Inc., Kennedy Real Estate Associates, LP, Kennedy Real Estate Management Associates, LLC, and John Doe Corp. 5-10, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars in compensatory damages, punitive damages, (against the Social Media Defendants only), costs and such other further relief the court shall deem appropriate.

Respectfully submitted,

**STAMPONE O'BRIEN DILSHEIMER LAW**

BY:_____/s/_____
KEVIN P. O'BRIEN, ESQUIRE
TYLER STAMPONE, ESQUIRE
Attorneys for Plaintiff

**DICELLO LEVITT**

BY:_____/s/_____
DIANDRA DEBROSSE, ESQUIRE
ELI HARE, ESQUIRE

40

Case ID: 241202765
Control No.: 25015411

# VERIFICATION

James Sullivan, Jr., Administrator of the Estate of John Michael Sullivan states that he is the Plaintiff

herein, that he is acquainted with the facts set forth in the foregoing pleading, that the same are true

and correct to the best of his information, knowledge and belief and that this statement is made subject

to the penalties of 18 Pa.C.S.A. Section 4904 relating to unsworn falsifications to authorities.


DocuSigned by:

Jim Sullivan

F5FC6F6E905B4A5...

James Sullivan, Jr., Administrator of the
Estate of John Michael Sullivan

Dated  12/20/2024

Case ID: 241202765
Control No.: 25015411

EXHIBIT A

## SHORT CERTIFICATE
## COMMONWEALTH OF PENNSYLVANIA
## COUNTY OF MONTGOMERY

I, D. Bruce Hanes, Register of Wills in the County of Montgomery, in the Commonwealth of Pennsylvania, DO HEREBY CERTIFY that on the 10th day of April 2023 Letters of Administration on the Estate of JOHN MICHAEL SULLIVAN ,

deceased, were granted to
**JAMES SULLIVAN JR**

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record in my office.

File number: 46-2023-X1168

Date of Death: 1/4/2023

Social Security Number: 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

Given under my hand and seal of office this
**10th day of April 2023**

Montgomery County Register of Wills





Civil Docket Report

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 241202765 |
| **Case Caption:** | ESTATE OF JOHN MICHAEL SULLIVAN ETAL VS META PLATF |
| **Filing Date:** | Monday , December 23rd, 2024 |
| **Court:** | MAJOR JURY-COMPLEX |
| **Location:** | CITY HALL |
| **Jury:** | JURY |
| **Case Type:** | PRODUCT LIABILITY |
| **Status:** | WAITING TO LIST CASE MGMT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

| Motion | Assign/Date | Control No | Date/Received | Judge |
|---|---|---|---|---|
| PRELIMINARY OBJECTIONS | *pending* | 25015411 | 27-JAN-2025 | COHEN, DENIS P |

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | OBRIEN, KEVIN PATRICK |
| **Address:** | 500 COTTMAN AVE. CHELTENHAM PA 19012 (215)663-0400 kobrien@stamponelaw.com | **Aliases:** | *none* | |
| | | | | |
| 2 | 1 | | ADMINISTRATOR - PLAINTIFF | SULLIVAN JR., JAMES |
| **Address:** | 619 EDGLEY AVENUE GLENSIDE PA 19038 | **Aliases:** | *none* | |
| | | | | |

| 3 | | | DEFENDANT | SNAP INC |
|---|---|---|---|---|
| **Address:** | 2772 DONALD DOUGLASS LOOP NORT SANTA MONICA CA 90405 | **Aliases:** | *none* | |
| | | | | |
| 4 | | | DEFENDANT | DOE 1-5, JOHN |
| **Address:** | 000 PHILADELPHIA PA 000000 | **Aliases:** | *none* | |
| | | | | |
| 5 | | | DEFENDANT | JOHN DOE CORP 1-5 |
| **Address:** | 000 PHILADELPHIA PA 000000 | **Aliases:** | *none* | |
| | | | | |
| 6 | 28 | | DEFENDANT | SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY |
| **Address:** | 1234 MARKET STREET PHILADELPHIA PA 19107 | **Aliases:** | SEPTA | |
| | | | | |
| 7 | 28 | | DEFENDANT | MILSON, ROBERT |
| **Address:** | 1234 MARKET STREET PHILADELPHIA PA 19107 | **Aliases:** | *none* | |
| | | | | |
| 8 | 26 | | DEFENDANT | BRYNER CHEVROLET INC |
| **Address:** | 1750 THE FAIRWAY JENKINTOWN PA 19046 | **Aliases:** | BRYNER CHEVROLET | |
| | | | | |
| 9 | 26 | | DEFENDANT | DBP PARTNERS LP |
| **Address:** | 1750 THE FAIRWAY JENKINTOWN PA 19046 | **Aliases:** | *none* | |
| | | | | |
| 10 | | | DEFENDANT | DB PETE INC |
| **Address:** | 1750 THE FAIRWAY JENKINTOWN PA 19046 | **Aliases:** | *none* | |
| | | | | |
| 11 | | | DEFENDANT | JOHN DOE INC 5-10 |

| | | | | |
|---|---|---|---|---|
| **Address:** | 000<br>PHILADELPHIA PA 00000 | **Aliases:** | *none* | |
| | | | | |
| 12 | | | DEFENDANT | JOHN KENNEDY FORD OF JENKINTOWN |
| **Address:** | 1650 THE FAIRWAY<br>JENKINTOWN PA 19046 | **Aliases:** | *none* | |
| | | | | |
| 13 | 1 | | PLAINTIFF | SULLIVAN ESTATE OFJOHN MICHAEL |
| **Address:** | 619 EDGLEY AVENUE<br>GLENSIDE PA 19038 | **Aliases:** | *none* | |
| | | | | |
| 14 | | | DEFENDANT | HOPKINS FORD INC |
| **Address:** | 1650 THE FAIRWAY<br>JENKINTOWN PA 19046 | **Aliases:** | *none* | |
| | | | | |
| 15 | | | DEFENDANT | KENNEDY REAL ESTATE ASSOCIATES LP |
| **Address:** | 1650 THE FAIRWAY<br>JENKINTOWN PA 19046 | **Aliases:** | *none* | |
| | | | | |
| 16 | | | DEFENDANT | KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT LLC |
| **Address:** | 620 BUSTLETON PIKE<br>FEASTERVILLE TREVOSE PA 19053 | **Aliases:** | *none* | |
| | | | | |
| 17 | | | DEFENDANT | JOHN DOE CORP 5-10 |
| **Address:** | 000<br>PHILADELPHIA PA 00000 | **Aliases:** | *none* | |
| | | | | |
| 18 | | | DEFENDANT | META PLATFORMS INC |
| **Address:** | 1 HACKER WAY<br>MENLO PARK CA 94025 | **Aliases:** | FACEBOOK INC FKA | |

| 19 | | | DEFENDANT | FACEBOOK HOLDINGS LLC |
|---|---|---|---|---|
| **Address:** | 1 HACKER WAY MENLO PARK CA 94025 | **Aliases:** | *none* | |

| 20 | | | DEFENDANT | FACEBOOK OPERATIONS LLC |
|---|---|---|---|---|
| **Address:** | 1 HACKER WAY MENLO PARK CA 94025 | **Aliases:** | *none* | |

| 21 | | | DEFENDANT | FACEBOOK PAYMENTS INC |
|---|---|---|---|---|
| **Address:** | 1 HACKER WAY MENLO PARK CA 94025 | **Aliases:** | *none* | |

| 22 | | | DEFENDANT | FACEBOOK TECHNOLOGIES LLC |
|---|---|---|---|---|
| **Address:** | 1 HACKER WAY MENLO PARK CA 94025 | **Aliases:** | *none* | |

| 23 | | | DEFENDANT | INSTAGRAM LLC |
|---|---|---|---|---|
| **Address:** | 1 HACKER WAY MENLO PARK CA 94025 | **Aliases:** | *none* | |

| 24 | 1 | | ATTORNEY FOR PLAINTIFF | STAMPONE, TYLER J |
|---|---|---|---|---|
| **Address:** | STAMPONE LAW 500 COTTMAN AVE CHELTENHAM PA 19012 (215)663-0400 TStampone@stamponelaw.com | **Aliases:** | *none* | |

| 25 | | | TEAM LEADER | COHEN, DENIS P |
|---|---|---|---|---|
| **Address:** | 656 CITY HALL PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 26 | | | ATTORNEY FOR DEFENDANT | FROMMER, BENJAMIN C |
|---|---|---|---|---|

| Address: | THOMAS, THOMAS & HAFER<br>1600 JFK BLVD<br>SUITE 1060<br>PHILADELPHIA PA 19103<br>(215)564-2928<br>bfrommer@tthlaw.com | Aliases: | *none* | |
| --- | --- | --- | --- | --- |
| | | | | |
| 27 | 26 | | ATTORNEY FOR DEFENDANT | WILLIAMS, CHELSEA A |
| Address: | THOMAS, THOMAS & HAFER, LLP<br>4 PENN CENTER, SUITE 1060<br>1600 JFK BOULEVARD<br>PHILADELPHIA PA 19103<br>(267)861-7599<br>cwilliams@tthlaw.com | Aliases: | *none* | |
| | | | | |
| 28 | | | ATTORNEY FOR DEFENDANT | NALENCZ, TARA G |
| Address: | 1234 MARKET STREET, 5TH FLOOR<br>OFFICE OF GENERAL COUNSEL<br>SEPTA<br>PHILADELPHIA PA 19107<br>(215)580-7565<br>tnalencz@septa.org | Aliases: | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
| --- | --- | --- | --- |
| 23-DEC-2024 03:17 PM | ACTIVE CASE | | |
| **Docket Entry:** | E-Filing Number: 2412051470 | | |
| | | | |
| 23-DEC-2024 03:17 PM | COMMENCEMENT CIVIL ACTION JURY | OBRIEN, KEVIN PATRICK | |
| **Documents:** | Click link(s) to preview/purchase the documents<br>Final Cover | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | *none.* | | |

| 23-DEC-2024 03:17 PM | COMPLAINT FILED NOTICE GIVEN | OBRIEN, KEVIN PATRICK | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Sullivan Complaint.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. | | |

| 23-DEC-2024 03:17 PM | JURY TRIAL PERFECTED | OBRIEN, KEVIN PATRICK | |
|---|---|---|---|
| **Docket Entry:** | 12 JURORS REQUESTED. | | |

| 23-DEC-2024 03:17 PM | WAITING TO LIST CASE MGMT CONF | OBRIEN, KEVIN PATRICK | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

| 31-DEC-2024 09:09 AM | AFFIDAVIT OF SERVICE FILED | | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>SEPTA full.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY BY PERSONAL SERVICE ON 12/30/2024 FILED. | | |

| 31-DEC-2024 09:10 AM | AFFIDAVIT OF SERVICE FILED | | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Milson Full aff.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON ROBERT MILSON BY PERSONAL SERVICE ON 12/30/2024 FILED. | | |

| 09-JAN-2025 02:20 PM | AFFIDAVIT OF SERVICE FILED | | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>20250109_140435_006149_Part4.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |

| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON KENNEDY REAL ESTATE ASSOCIATES LP BY SHERIFF SERVICE MONTGOMERY ON 01/02/2025 FILED. | | |
|---|---|---|---|
| | | | |
| 09-JAN-2025 02:22 PM | AFFIDAVIT OF SERVICE FILED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>20250109_140435_006149_Part5.pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON HOPKINS FORD INC BY SHERIFF SERVICE MONTGOMERY ON 01/02/2025 FILED. | | |
| | | | |
| 09-JAN-2025 02:24 PM | AFFIDAVIT OF SERVICE FILED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>20250109_140435_006149_Part6.pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON JOHN KENNEDY FORD OF JENKINTOWN BY SHERIFF SERVICE MONTGOMERY ON 01/02/2025 FILED. | | |
| | | | |
| 09-JAN-2025 02:25 PM | AFFIDAVIT OF SERVICE FILED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>20250109_140435_006149_Part7.pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON DB PETE INC BY SHERIFF SERVICE MONTGOMERY ON 01/02/2025 FILED. | | |
| | | | |
| 09-JAN-2025 02:27 PM | AFFIDAVIT OF SERVICE FILED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>20250109_140435_006149_Part8.pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON DBP PARTNERS LP BY SHERIFF SERVICE MONTGOMERY ON 01/02/2025 FILED. | | |
| | | | |
| 09-JAN-2025 02:29 PM | AFFIDAVIT OF SERVICE FILED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>20250109_140435_006149_Part9.pdf | 🛒 **Click HERE to purchase all documents** related to this one docket entry | |

| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON BRYNER CHEVROLET INC BY SHERIFF SERVICE MONTGOMERY ON 01/02/2025 FILED. | | |
|---|---|---|---|
| | | | |
| 14-JAN-2025 02:58 PM | AFFIDAVIT OF SERVICE FILED | | |
| Documents: | ⚠ Click link(s) to preview/purchase the documents<br>20250114_145424_006170.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON KENNEDY REAL ESTATE ASSOCIATES MANAGEMENT LLC BY SHERIFF SERVICE BUCKS ON 01/08/2025 FILED. | | |
| | | | |
| 16-JAN-2025 02:18 PM | AFFIDAVIT OF SERVICE FILED | OBRIEN, KEVIN PATRICK | |
| Documents: | ⚠ Click link(s) to preview/purchase the documents<br>Aff Serv Sullivan.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON META PLATFORMS INC, INSTAGRAM LLC, FACEBOOK TECHNOLOGIES LLC, FACEBOOK PAYMENTS INC, FACEBOOK OPERATIONS LLC AND FACEBOOK HOLDINGS LLC BY CERTIFIED MAIL ON 01/04/2025 FILED. (FILED ON BEHALF OF JOHN MICHAEL SULLIVAN ESTATE OF AND JAMES SULLIVAN) | | |
| | | | |
| 21-JAN-2025 01:10 PM | ENTRY OF APPEARANCE | FROMMER, BENJAMIN C | |
| Documents: | ⚠ Click link(s) to preview/purchase the documents<br>EOA - BCF and CAW.PDF | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | ENTRY OF APPEARANCE OF CHELSEA A WILLIAMS AND BENJAMIN C FROMMER FILED. (FILED ON BEHALF OF BRYNER CHEVROLET INC) | | |
| | | | |
| 22-JAN-2025 05:23 PM | ENTRY OF APPEARANCE | FROMMER, BENJAMIN C | |
| Documents: | ⚠ Click link(s) to preview/purchase the documents<br>Sullivan EOA - BCF and CAW - DBP Partners, LP.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| Docket Entry: | ENTRY OF APPEARANCE OF CHELSEA A WILLIAMS AND BENJAMIN C FROMMER FILED. (FILED ON BEHALF OF DBP PARTNERS LP) | | |
| | | | |
| 24-JAN-2025 02:20 PM | ENTRY OF APPEARANCE | NALENCZ, TARA G | |

| **Documents:** | ⚠ Click link(s) to preview/purchase the documents<br>SEPTA EOA-Sullivan-Estate.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** |
|---|---|---|

| **Docket Entry:** | ENTRY OF APPEARANCE OF TARA G NALENCZ FILED. (FILED ON BEHALF OF ROBERT MILSON AND SOUTHEASTERN PENNSYLVANIA TRANSIT AUTHORITY) |
|---|---|

| 27-JAN-2025<br>09:12 AM | PRELIMINARY OBJECTIONS | FROMMER,<br>BENJAMIN C | |
|---|---|---|---|

| **Documents:** | ⚠ Click link(s) to preview/purchase the documents<br>Sullivan POs w-Exhibit.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** |
|---|---|---|

| **Docket Entry:** | 11-25015411 PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT FILED. RESPONSE DATE: 02/18/2025 (FILED ON BEHALF OF DBP PARTNERS LP AND BRYNER CHEVROLET INC) |
|---|---|

▶ Case Description    ▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

E-Filing System        Search Home